IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | | |
|---|---|---|
| LORETTA S. BELARDO, ANGELA TUITT-SMITH, BERNARD A. SMITH, YVETTE ROSS-EDWARDS, AVON CANNONIER, ANASTASIA M. DOWARD, DARYL RICHARDS, EVERTON BRADSHAW, RODELIQUE WILLIAMS-BRADSHAW, PAMELA GREENIDGE and WINSTON GREENIDGE, on behalf of themselves and all others similarly situated, ) ) ) ) ) ) ) ) ) ) ) | 2018-CV-8 CLASS ACTION | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BANK OF NOVA SCOTIA, Defendant. | ) ) ) ) ) | |

## REPLY TO OPPOSTION TO RENEWED MOTION TO DISMISS

The First Amended Complaint ("FAC") alleges that Scotiabank has "perpetrated a cover-up and a charade" because "there was no force-placed policy" and they were all actually uninsured. *FAC* ¶¶ 27-28. The FAC fails because Plaintiffs have alleged no actual facts to plausibly support these unfounded conclusions. This is a challenge by Scotiabank under FED. R. CIV. P. 12 to the sufficiency of the FAC under FED. R. CIV. P. 8(a) as interpreted by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 570).[1] The FAC fails that test.

---

[1] The FAC filed on April 27, 2018, is actually Plaintiffs' fourth attempt to state a claim. Plaintiffs commenced another action on February 14, 2018, amended the complaint in that action on March 14, 2018, to remove the class allegations, and then voluntarily dismissed that action on March 20, 2018, so they could have another opportunity to

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Reply to Opposition to Renewed Motion to Dismiss
Page **2** of **9**

### I. The Legal Distinction Between Facts, Naked Assertions, and Conclusions

*Twombly* instructs that "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. Under *Twombly*, to survive a motion to dismiss for failure to state a claim upon which relief can be granted, the trial court must undertake a three-step analysis.

> First, the court must take note of the elements a plaintiff must plead to state a claim so that the court is aware of each item the plaintiff must sufficiently plead. *Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. These conclusions can take the form of either legal conclusions couched as factual allegations or naked [factual] assertions devoid of further factual enhancement.* Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief. If there are sufficient remaining facts that the court can draw a reasonable inference that the defendant is liable based on the elements noted in the first step, then the claim is plausible.

*Fleming v. Cruz*, 62 V.I. 702,713-714 (V.I. 2015)(emphasis added) (*quoting Pollara v. Chateau St. Croix, LLC*, 58 V.I. 455, 471 (V.I. 2013)); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Cesar Castillo, Inc. v. Healthcare Enterprises, L.L.C.*, CV 2012-108, 2016 WL 5660437, at *2 (D.V.I. Sept. 27, 2016). "We are required to reject conclusions and demand factual allegations that would, if true, permit us to infer a plausible right to relief." *Joseph v. Bureau of Corrections*, 54 V.I. 644, 654 (V.I. 2011) (*citing Iqbal*, 556 U.S. at 679). Factual allegations are entitled to deference, but "unsupported conclusions and unwarranted inferences

---

re-plead without leave of court. *See Richards, et al v Bank of Nova Scotia,* Civ. No. 2018-cv-04. The case was re-filed as a class action on March 20, 2018, with claims for violation of RESPA, breach of contract and fraud. [D.E. 1]. In response to Scotiabank's motion to dismiss under Rules 8, 9 and 12, [D.E. 3] Plaintiffs filed a fourth version of the complaint, and have attempted to avoid the more stringent requirements of Rule 9(b) by deleting the fraud claim and replacing it with a claim under the Virgin Islands Consumer Protection Act, based upon the same allegations. [D.E. 5].

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Reply to Opposition to Renewed Motion to Dismiss
Page **3** of **9**

are not entitled to the presumption of truthfulness". *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).

In response to a Rule 12(b)(1) motion, "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right [she] claims, rather than facts that are merely consistent with such a right." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). Suspicions are not a substitute for a factual basis to form a belief that a wrong has been committed by the defendant. Plaintiffs must be able to state some factual grounds for their suspicions, failing which the complaint must be dismissed. *See Friedberg v. Barefoot Architect, Inc.*, 2016 WL 5660336 (D.V.I. September 28, 2016)(applying Rule 9(b))[2].

The determination as to whether a particular allegation is a fact or a legal conclusion depends upon the context. For example, in the context of a products liability claim, there is a general consensus that when the plaintiff alleges that a product is "defective in design", he or she has asserted a legal conclusion, not a fact. *Bodley v. Foster Wheeler Energy Corp.*, 2011 WL 1576673 (D.V.I. April 26, 2011) (*citing United States v. Stephens*, 445 F.2d 192, 198 (3d Cir. 1971) ("a naked claim of defective design" in a products liability case is a "[c]onclusory averment [ ] ... and a statement of the ultimate legal principle" which requires "necessary specifics to support it .")); *Ojeda v. Louisville Ladder Inc.,* 2010 WL 5065253, at *2 (11th Cir. Dec.13, 2010) (plaintiff's statement that the ladder was defective because of its "improper design, shape, size, and configuration" was a legal conclusion); *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (noting that court's conclusion that product was not defective

---

[2] Plaintiffs contend that because they have dropped the fraud count and replaced it with a claim under the VICPA, the stricter standard of Rule 9(b) should not be applied. Scotiabank stands by its arguments in the Memorandum of Law (D.E. 10) at pages 7-9 that 9(b) applies to the VICPA claim, however, even under Rule 8, the FAC fails.

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Reply to Opposition to Renewed Motion to Dismiss
Page **4** of **9**

in design was a legal conclusion). Thus, although in a Rule 12 analysis a plaintiff is entitled to inferences in his or her favor, such inferences must be supported by sufficient factual material. *Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir.2000) (the court "need not accept as true unsupported conclusions and unwarranted inferences.").

The analysis is case specific because some claims will demand more factual detail than others. *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 320 (3d Cir. 2010). The determination of plausibility "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786-87 (*quoting Iqbal*, 556 U.S. at 679). Nor can a plaintiff maintain a claim "by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement [did not support the claim]." *Mele v. Federal Reserve Bank of New York*, 359 F.3d 251, 256 n. 5 (3d Cir. 2004) (*citing In re Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1977)). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *In re Burlington Coat Factory*, 114 F.3d at 1426 (citations omitted).

## II. The FAC Fails the Plausibility Test

Once the facts, which are entitled to deference, are separated from the conclusions and the "naked assertions", which must be disregarded, it is clear that the FAC fails to state a plausible claim for relief.

First, the facts. Plaintiffs do not dispute that Scotiabank had the right to procure force placed insurance ("FPI") to protect its interest in their properties, nor do they allege that

Belardo, et al. v. Bank of Nova Scotia, Case No. 2018-CV-8
Reply to Opposition to Renewed Motion to Dismiss
Page **5** of **9**

Scotiabank failed to send the required notices under RESPA.[3] They do not allege that the FPI premiums were excessive. Plaintiffs acknowledge that Scotiabank directed its borrowers to provide damage estimates and that Scotiabank sent a letter dated January 30, 2018, advising borrowers that they were insured under Scotiabank's master policy *effective August 1, 2018*. FAC ¶ ¶ 24, 26. Plaintiffs contend that Scotiabank failed to follow up on their claims, yet they contradict themselves by acknowledging that insurance adjusters were sent to inspect their properties. *Opp. to Renewed Motion to Dismiss*, at p. 2; *FAC* ¶ 28, 29.[4]

Plaintiffs' Opposition to the Renewed Motion to Dismiss simply repeats their unsubstantiated allegation that Scotiabank was "retroactively obtaining insurance" but actually failed to obtain coverage for the USVI properties, despite acknowledging that all of them were instructed to submit claims of loss and all of them received the January 30, 2018 letter expressly informing them that Scotiabank had purchased FPI coverage *effective August 1, 2017*.[5] *See Opp*. at p. 1, 5; *FAC* ¶ 21.

On November 10, 2017, all borrowers were given the following instructions on how to submit a claim of loss:

> If your property was affected by the impact of Hurricanes Irma or Maria you must notify Scotiabank in order to review the applicable insurance

---

[3] The Real Estate Settlement Procedures Act; 12 U.S.C. § 2605.

[4] Plaintiffs contend that no adjusters inspected their properties until after Scotiabank was sued. This claim is irrelevant and also misleading. The timing is apparently a reference to a prior action that was filed on February 14, 2018, but not served on Scotiabank until mid-March, after which it was amended and then dismissed. This action was filed on March 20, 2018, and then amended in response to Scotiabank's motion to dismiss. The adjusters began inspections of the force placed properties in March 2018, around the same time that Scotiabank was served with the first action.

[5] Plaintiffs make a frivolous assertion that by attaching an actual copy of the January 30, 2018 letter that was specifically referenced in the FAC, Scotiabank has taken this matter out of Rule 12. *Opp*.at p. 8. Scotiabank has an absolute right under well-established precedent to provide the court with any document referenced in the FAC without converting a Rule 12 motion into a Rule 56 motion. *Mele v. Federal Reserve Bank of New York*, 359 F.3d 251, 256 n. 5 (3d Cir. 2004) (*citing In re Burlington Coat Factory,* 114 F.3d 1410, 1426 (3d Cir. 1977)).

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Reply to Opposition to Renewed Motion to Dismiss
Page **6** of **9**

information. It is necessary that you send us an email to claims.insurance@scotiabank.com. The following information must be included: loan number, borrower full name and contact information (telephone number and email address), if different from borrower please include claimant's full name and contact information, also provide estimate of damages and repair costs from a contractor or inspector.

If you need assistance in estimating damages and repair costs, at Scotiabank we can help you. Simply mark under the option that says "I request assistance in making an estimate of damages" and return this document to claims.insurance@scotiabank.com. Upon receipt of your request, a bank representative will contact you to explain the process. If you do not have email service, you can deliver the documents at your nearest branch.

The notice sent to all FPI borrowers on January 30, 2018, contained specific information

regarding the coverage applicable to each property covered FPI.  The notice is captioned:

**NOTICE OF RENEWAL OF LENDER PLACED INSURANCE EFFECTIVE AUGUST 1, 2017**

**Policy Number #CP0280097411**

And each borrower was advised:

Your mortgage agreement requires you to maintain continuous hazard insurance coverage on your property in an amount acceptable to the lender, naming the lender as an additional insured party. Because we did not have evidence that you had purchased or renewed hazard insurance on the property listed above, effective August 1, 2017, we have insured your property under our master policy, and we have added the related monthly premium cost to your mortgage loan escrow account.

This coverage protects only the value of the lender's interest in the property pursuant to the mortgage loan. This insurance may not cover the fill value of your dwelling, and does not apply to contents or personal property.

A monthly premium of $[amount] equivalent to an annual premium of $[amount] has been charged to your escrow account established for your mortgage loan. Please refer to the attached addendum for details of your coverage.

The addendum provided details of the FPI coverage for the borrowers' properties:

INSURANCE COVERAGE ADDENDUM
(Details of insurance coverage under the Lender's master policy)

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Reply to Opposition to Renewed Motion to Dismiss
Page **7** of **9**

> Perils:
>
> Special (windstorm, fire, vandalism, theft), Earthquake, Flood
>
> Limits of Insurance:
>
> 90% of Insurable Value defined as the lesser of Appraised Value, Building Replacement Cost or current mortgage loan principal.
>
> Deductibles:
>
> $2,500 for risk of physical loss per occurrence except,
> Earthquake which is 5% applicable separately to the insurance limit; and
> Windstorm which is 2% applicable separately to the insurance limit; and
> Flood $5,000 per occurrence

Plaintiffs contend, without any basis in fact, that the invitation to assist with claims and the January 30, 2018 notice were part of an elaborate "sham" and they insist that Scotiabank is only *pretending* to have obtained insurance. They contend, with no factual basis, that the information about the policy number, premium charges, and coverage details was all fabricated.

Plaintiffs' only support for this theory are their "naked assertions" consisting of undocumented claims by unidentified persons about the alleged statements or actions of other unidentified persons, none of which directly contradict any of the facts set forth in the November and January notices. These are not "facts", entitle to deference, but merely rumors and suspicions, which are not sufficient to meet the plausibility standard. For example, Plaintiffs contend that certain unidentified adjusters "were given copies of expired FPI policies". No documentation or detail was provided to support this odd allegation.[6] Certain unidentified

---

[6] It would have been very unusual for a professional insurance adjuster to bring a copy of the policy to the physical inspection and even more unusual for an adjuster to share this information with a homeowner who is not a party to the policy. Even if plaintiffs could prove that someone incorrectly provided an adjuster with a copy of the wrong

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Reply to Opposition to Renewed Motion to Dismiss
Page **8** of **9**

Plaintiffs claim to have received communications that mistakenly identified Marsh Saldana as the insurance company, rather than the insurance agent, a common mistake, but again, not one that supports the conclusion that there is no insurance. To the contrary, the identification of an insurance agent more plausibly suggests that there is a corresponding insurance policy that was procured by that agent. The FAC alleges that these communications identified the policy as "CP 0280097411" which is the Scotiabank master policy that was identified to all FPI borrowers in the January 30, 2018 notice. Finally, certain Plaintiffs allege that an unidentified employee of Marsh told them they were "not covered" by insurance placed through Marsh, or that they were "not insured". Again, this is entirely consistent with FPI, under which the sole named insured is the lender. The alleged third party statements by unidentified employees of Marsh are not sufficient to support a plausible claim that the insurance policy identified in the January 30, 2018 notice does not exist, that the premium charges and coverage detailed therein were fabricated, and that the insurance adjusters who inspected plaintiffs' properties were not really adjusters, but players in an elaborate sham perpetrated by Scotiabank.

      Moreover, Plaintiffs have failed to allege how any of these supposed events caused them actionable harm. They concede that they did not obtain their own insurance, they concede that Scotiabank had the right, but not the obligation to force place insurance to protect its interest, and they concede that the claims have indeed been accepted and adjusted.

---

policy that does not plausibly support the conclusion that the insurance specifically identified in the January 30, 2018 notice did not exist.

Case: 1:18-cv-00008-WAL-GWC   Document #: 15   Filed: 07/17/18   Page 9 of 9

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Reply to Opposition to Renewed Motion to Dismiss
Page **9** of **9**

### III. Conclusion

The FAC fails under the plausibility test under *Iqbal* and *Twombly*, and must be dismissed. Since this is Plaintiffs' second action, and their fourth attempt to state a claim, the dismissal should be with prejudice and without leave to amend again.

DATED: July 17, 2018               Respectfully Submitted,

**DUDLEY RICH LLP**


By: ___/s/ *Carol Ann Rich*___
Carol A. Rich, Esq., V.I. Bar No. 171
Malorie Winne Diaz, Esq., V.I. Bar No. R2049
5194 Dronningens Gade, Suite 3
St. Thomas, VI 00802
Telephone: (340) 774-7676
Telecopier: (340) 776-8044
crich@dudleylaw.com
mdiaz@dudleylaw.com

*Attorneys for Bank of Nova Scotia*


### CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of July 2018, I electronically filed the foregoing **Reply to Opposition to Renewed Motion to Dismiss** with the Clerk of the Court using CM/EFC system, which will send a notification of such (NEF) to the following:

Vincent Colianni, II
Vincent A. Colianni
1138 King Street
Christiansted, St. Croix
mailbox@colianni.com

___/s/ *Carol Ann Rich*___