## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

LORETTA S. BELARDO, ANGELA TUITT-SMITH, BERNARD A. SMITH, YVETTE ROSS-EDWARDS, AVON CANNONIER, ANASTASIA M. DOWARD, DARYL RICHARDS, EVERTON BRADSHAW, RODELIQUE WILLIAMS-BRADSHAW, PAMELA GREENIDGE and WINSTON GREENIDGE, on behalf of themselves and all others similarly situated,

                              Plaintiffs,

        v.

BANK OF NOVA SCOTIA,

                          Defendant.

1:18-CV-00008

CLASS ACTION

JURY TRIAL DEMANDED

## OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Plaintiffs' seemingly endless stream of revised and reinvented complaints based upon the same essential set of facts that began nearly one year ago, on February 14, 2018, when Plaintiffs filed their complaint in Case No. 18-cv-00004, followed by a first amended complaint, on March 14, 2018, followed by a voluntary dismissal on March 20, 2018, so that Plaintiffs could avoid the requirement to obtain leave of court to file a second amended complaint by commencing a new action. The complaint that commenced this action was Plaintiffs' third attempt to state a claim. Scotiabank filed its motion to dismiss on April 12, 2018. (ECF 3). Instead of addressing the merits, Plaintiffs filed a First Amended Complaint (the fourth iteration) on April 27, 2018. (ECF 5). Briefing on Scotiabank's Renewed Motion to Dismiss was completed on July 17, 2018. (ECF 15). On August 17, 2018, Plaintiffs filed a motion for leave to

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **2** of **21**

present "new" evidence in a sur-reply. Briefing was completed on that motion on September 28, 2018. (ECF 21).

Three months passed. After a flurry of appearances by new lawyers, Plaintiffs filed their Motion for leave to file a second amended complaint on December 28, 2018. The proposed Second Amended Complaint (the "SAC") is Plaintiffs' *fifth* attempt to state a plausible claim. Enough is enough. The SAC contains no new factual allegations that plausibly support their claims under RESPA[1] or the mortgage contract. Absent evidence of a RESPA violation or a breach of the mortgage contract, all of the other proposed tort-based or fraud-based claims must fail. The motion for leave to file the SAC should be denied because it is futile. In the alternative, no further amendments should be considered until the Court has resolved Scotiabank's renewed motion to dismiss the FAC.

## I.     The Second Amended Complaint Is Founded Upon False Allegations

In the face of demonstrable evidence to the contrary, Plaintiffs continue to falsely claim that Scotiabank failed to obtain force placed insurance ("FPI"), leaving them uninsured when Hurricanes Irma and Maria struck in September 2017. The "new" allegations upon which the SAC is based are either demonstrably false, or based on hearsay and speculation.[2] Ironically, the existence of a coverage dispute between Scotiabank and its insurance company mandates the conclusion that Scotiabank purchased FPI, which means Plaintiffs cannot state a facially plausible claim under RESPA or the mortgage contracts.

---

[1] The Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(g).
[2] Some of the "fact" allegations are so clearly false that a violation of Fed. R. Civ. P. 11 is apparent.

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **3** of **21**

Plaintiffs contend that all of their mortgages contain the same terms as a sample mortgage attached as Exhibit 3 to the SAC (ECF 28-3)[3]. SAC ¶¶ 28-33, 71, 79, 86, 93, 100, 108, 116, 124. These allegations are false. **None of the Plaintiffs' mortgages contain the insurance language in Exhibit 3.** Copies of the insurance provisions in each of the Plaintiffs' mortgage contracts, with their initials on the pages, are attached hereto as **Exhibits 1-8.** All of the Plaintiffs' mortgages provide:

6.3    Should Mortgagor fail at any time to maintain such insurance coverage, Mortgagee may, but shall not be required, to obtain such of the coverages as Mortgagee may then elect with insurance companies of its choosing and make the required premium payment with any interest and penalties then owing.

6.6    If all or any part of the Property and any other property which is mortgaged or which secures the Mortgagee under the terms of a security document is destroyed or damaged at any time by any cause whatsoever while any loan or obligation secured hereby is outstanding, the Mortgagee, in its absolute discretion, may apply the proceeds of any insurance policy or any part thereof, either to the reduction or satisfaction of the amounts secured by this mortgage, or the construction, restoration or repair of the Property, in such manner as the Mortgagee may elect in tis complete discretion.

6.8    Unless otherwise agreed in writing, any damage to the Property covered by insurance or any application of insurance proceeds to any amount secured by this Mortgage shall not extend or postpone the payment of amounts due under the Note.

The Belardo, Ross-Edwards, Cannonier, Doward, Richards and Bradshaw mortgages  also state:

6.2    …..In the event that the Mortgagee elects to force place property insurance over the Property to protect its security due to the Mortgagor's failure to obtain and maintain property insurance as provided in Section 6.1 above, the Mortgagor acknowledges and agrees that such force placed insurance coverage shall be in such amount as the Mortgagee shall in its sole and absolute discretion determine is necessary to protect its security and repayment of the obligations of the Mortgagor  to the Mortgagee. Such coverage may or may not be sufficient to pay the

---

[3] Plaintiffs  attached this same misleading exhibit to the original complaint, a defect which was not directly addressed in the motion to dismiss, because neither mortgage supports plaintiffs' claims.

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **4** of **21**

Mortgagor's obligations to the Mortgagee, Further, the proceeds of any claim on force placed property insurance shall be solely for the benefit of the Mortgagee, and the Mortgagee shall have the sole and absolute right to settle any claims involving force placed insurance and the Mortgagor shall have no claim or any right to such proceeds unless the net proceeds therefrom exceed the total of the Mortgagor's obligations to the Bank.

Plaintiffs allege they were charged a premium for force placed property insurance, which by definition is an admission that each of the plaintiffs breached their obligation under the mortgage to maintain property insurance. SAC ¶¶ 72, 80, 87, 94, 101, 109, 117, 125.  Plaintiffs do not allege a RESPA claim based upon Scotiabank's initial exercise of its right to purchase FPI to protect its security. The Plaintiffs breached their obligations to maintain property insurance years ago, and repeatedly ignored notices warning them of the limits of coverage under FPI and encouraging them to protect their property by purchasing private insurance.[4] All of the Plaintiffs have been on notice that FPI was only for Scotiabank's protection, was placed at Scotiabank's absolute discretion and was cancellable at any time. None of the Plaintiffs had any justifiable expectation of the receipt of the proceeds of an FPI claim for repairs, nor did they have any reasonable expectation of a right to participate in the adjustment of an FPI claim.

The SAC alleges that Scotiabank was obligated to maintain force placed insurance on Plaintiffs' properties, but failed to do so after August 1, 2017. SAC ¶¶ 41-42.[5] This allegation is

---

[4] The fact that each plaintiff was under FPI is essential to the SAC, and therefore Scotiabank may provide the court with copies of the FPI notices to demonstrate why the SAC could not survive a Rule 12 motion to dismiss. For example, the Smiths failed to renew their insurance in 2005, and the Bradshaws in 2007. Mr. Richards has been in breach of his insurance requirement since at least 2013, and Ms. Doward has been in breach of her insurance obligation since at least 2011. *See*, **Exhibits 9, 10, 11, and 12**, attached hereto.

[5] Nor are Plaintiffs entitled to rely on the FPI placed by Cenlar. On July 18, 2017, as part of the transfer of servicing from Cenlar to Scotiabank PR, notice was given to each borrower of cancellation of the FPI policies, effective August 1, 2017. Scotiabank elected to secure FPI coverage with Integrand, effective August 1, 2017, but was not required to do so by the mortgage contracts, or RESPA. A sample copy of the notice to Ms. Doward is attached as **Exhibit 13**. All FPI borrowers had ample time to secure private insurance before Hurricanes Irma and Maria hit in September 2017, yet not one of the Plaintiffs made any effort to do so.

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **5** of **21**

directly contrary to the express language of the mortgages, under which Scotiabank has sole and complete discretion to purchase FPI, or not. It is also factually incorrect, as demonstrated by the very existence of the Integrand lawsuit.[6] The Plaintiffs (except Ms. Belardo) allege that without insurance proceeds they cannot repair their homes SAC ¶¶ 84, 91, 98, 106, 114, 122, 130, however, the mortgages expressly and unequivocally state that if Scotiabank elects to purchase FPI, the proceeds of a claim will be applied to the loan balance, or repairs, at Scotiabank's sole and absolute discretion. Ms. Belardo's allegations appear crafted to avoid disclosing her mortgage has been paid off and released. Ms. Belardo alleges that she should not have been required to continue making mortgage payments after her home was damaged. SAC ¶ 77. This claim clearly fails, because Ms. Belardo's mortgage expressly and unequivocally states that an event of loss or damage "shall not extend or postpose the payment of amounts due".[7]

Plaintiffs allege that the insurance claims have not been processed and the proceeds have not been applied to pay down the mortgages or repair the mortgaged properties. Yet Plaintiffs simultaneously allege that the adjusters sent by Scotiabank undervalued the claims, and allege that they have refrained from making repairs due to uncertainty over the amount of coverage. SAC ¶¶ 60-68. These allegations are both inconsistent and misleading. Obviously, Plaintiffs concede that the FPI claims were adjusted—how else could they have a factual basis to complain about the adjuster's valuation methods? Again, these misleading allegations would allow Scotiabank to provide documents regarding the adjustment and payment of the claims as part of a Rule 12 motion. Scotiabank notified all FPI borrowers, including the Plaintiffs, of the amount

---

[6] As discussed *infra*, there is no dispute that Scotiabank had an insurance policy. It was only after the premiums were remitted to the broker, the notices were issued to the borrowers, claims were submitted, and the Endorsements were issued, that a dispute arose between Scotiabank and Integrand over the scope of the FPI coverage.

[7] Ms. Belardo is no longer a borrower and as such has no further interest in this matter and should be dismissed.

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **6** of **21**

recommended by the adjuster and offered the opportunity for a review. The Smiths, Bradshaws, Greenidges, Mr. Richards, and Ms. Doward declined a review, and received and cashed initial disbursements made to them for the express purpose of repairs. Ms. Ross Edwards and Ms. Belardo declined a review or repairs, and asked Scotiabank to apply the proceeds to their mortgage loans. Only Ms. Cannonier submitted her own estimate, which has been reviewed by the adjuster, resulting in an increase in the recommended amount.[8]

## II.      The False Allegations About the Integrand Coverage Dispute

The Plaintiffs have repackaged Integrand Assurance Company's allegations  in a complaint filed in Puerto Rico as "facts" to support their proposed SAC.  Plaintiffs have not provided the Court with Scotiabank's Counterclaims, which reveal that the only undisputed "facts" which can properly be gleaned from the Integrand case are that Scotiabank procured Commercial Policy #CPO280097411 from Integrand, that Scotiabank timely submitted the schedule of values for force placed and repossessed properties in the Virgin Islands in accordance with the Policy, along with payment for the estimated premiums, that Integrand issued Endorsements for the USVI properties for August and September 2017 and began to process claims, and it was only later (after the November 10, 2017 and January 30, 2018 notice letters) that Integrand tried to rescind the Endorsements and deny coverage.[9]

---

[8] **Exhibit 14** letter to Ms. Belardo  confirming pay off of loan. **Exhibit 15** letter to Ms. Ross Edwards confirming application of the proceeds to her loan balance. **Exhibit 16** letter and check to  Ms. Doward confirming  application of a portion of the proceeds to bring her loan current, and payment of the rest for repairs**. Exhibits 17, 18, 19 and 20**, letters and checks to  the Smiths, the Bradshaws, the Greenidges, and Mr. Richards, with disbursements for repairs. The adjuster reviewed the estimate from Ms. Cannonier's contractor  and has recommended a revised settlement. Due to the status of her loan, disbursements may only be made jointly to Ms. Cannonier and a licensed contractor.

[9] Counterclaim of Scotiabank PR and Scotiabank to Integrand's Complaint, certified translation attached hereto as **Exhibit 21**, at pages 26-38, ¶¶ 6,8,11, 14-19, 27-29, 31-32, 37, 41-43, 69, 75-79.

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **7** of **21**

Plaintiffs have  no direct personal knowledge of the facts  and cannot state a facially plausible claim by simply repeating disputed allegations made by a non-party in another action. For purposes of deciding a motion to dismiss (or evaluating whether the SAC is futile), unverified disputed allegations made by a non-party in a complaint filed in another lawsuit are not facts entitled to be taken as true, but are only unsubstantiated hearsay, which is not sufficient to support a viable claim. *Accord, Arrowood Indem. Co. v. Hartford Fire Ins.* Co., 774 F.Supp.2d 636, 648 (D. Del. 2011) (Under Rule 56 a witness with no direct personal knowledge cannot offer more than his own "arguments and opinions based on evidence and pleadings from other actions" to avoid summary judgment.).

Before a court can assume the truth of factual allegations made in another judicial proceeding, Fed R. Evid. Rule 201(b) requires that the proponents to  show  the facts they seek to put before the Court are (1) not subject to  reasonable dispute; and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).  For example, a court may properly take judicial notice of the dates on which certain actions were taken, as these are the type of  "facts readily ascertainable from the public court record and not subject to reasonable dispute". *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012); *citing Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994); *see also In re Warfarin Sodium Antitrust Litig*., 214 F.3d 395, 398 (3d Cir. 2000).  It was reversible error for a district court to decide a motion to dismiss based upon judicial notice of "facts from a prior unrelated proceeding and from a private document submitted in that proceeding." *Gen. Elec. Capital Corp.*,  128 F.3d at 1077.

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **8** of **21**

Thus, although courts may take judicial notice of the actions of other courts or the contents of filings in other courts, a request to take judicial notice of hearsay statements in such filings to prove the truth of the matters asserted is improper. Even the ability of a court to take judicial notice of findings of fact from another court proceeding is limited to facts "not subject to reasonable dispute." *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016), *citing General Electric,* 128 F.3d at 1082, *quoting* Fed. R. Evid. 201(b); *see also Hennessy v. Penril Datacomm Networks, Inc*., 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."). In short, there is a difference between existence and truth. *Colonial Leasing Co., Inc. v. Logistics Control Group Int'l*, 762 F.2d 454, 459 (5th Cir. 1985).

Scotiabank's Answer and Counterclaim in the Puerto Rico action confirms that the allegations in the SAC are disputed, and therefore cannot be relied upon as "facts" to survive a Rule 12 motion. Taking the Integrand complaint and Scotiabank's Counterclaim together, the Court may only take notice of the existence of the dispute, and the following basic facts that are not in dispute: On November 30, 2016, through Marsh Saldana, Scotiabank's an insurance broker, Integrand issued Commercial Insurance Policy #CP-028097411-01-000000 (the "Policy"). The Policy includes a coverage endorsement for Forced Place Dwellings or Commercial Properties pursuant to the Forced Placement Coverage Commercial Property and Dwelling Insurance & Commercial Liability Insurance Endorsement (the "FPI Coverage"). The Policy covered certain of Scotiabank's Virgin Islands properties from inception. The insureds may add or subtract properties from FPI Coverage by including them, or not, on a FPI schedule that is submitted to Integrand each month. The monthly values report adds or subtracts properties

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **9** of **21**

for the *previous* month. In other words, a report submitted in September adds or subtracts properties for the month of August.[10]

The Mandatory Premium and Coverage Conditions Endorsement  governs the process for payment of additional premiums over the course of the Policy based upon the coverage changes in the values reports. Scotia PR submitted the monthly values reports to Marsh for both Puerto Rico and the USVI, accompanied by payments for the estimated premiums.[11] Marsh then submitted the values reports to Integrand, and Integrand issued the monthly endorsements to Marsh, each of which included an invoice amount for the premium. Integrand issued separate monthly endorsements for the Puerto Rico and USVI properties. Upon receipt of the endorsements, the premium payments were sent to Integrand. Scotia PR took over the servicing of certain Scotiabank USVI mortgages as of August 1, 2017,  and as a result, added the mortgaged properties for which FPI was desired during the subsequent month, in accordance with the Endorsement.  Obviously, on  August 1, 2017, no one knew that Hurricanes Irma and Maria would slam into Puerto Rico and  the USVI in September 2017.

On January 31, 2018, Integrand issued all of the Endorsements for August and September, 2017  for Puerto Rico and the USVI, including Endorsements 63, 64, & 68, reflecting USVI Forced Placement, Foreclosed and Repossessed coverage for the insurable values from the September 2017 report. Marsh received the Endorsements on February 2, 2018, and the premiums were remitted to Integrand. After the claims process began, Integrand attempted to rescind the Endorsements, and on March 19, 2018, Integrand filed the declaratory judgment

---

[10] **Exhibit 21,** at pages 26-38,  ¶¶ 6,8,11, 14-19, 27-29, 31-32, 37, 41-43, 69, 75-79.
[11] Scotiabank therefore issued payment for the premiums with the report, and properly charged the mortgage escrow accounts for this expense.

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **10** of **21**

action in Puerto Rico. After Integrand breached its obligations under the Policy, Scotiabank and Marsh mitigated the damage by working with licensed professional adjusters to process Scotiabank's claims under the FPI Endorsements. As stated in the Counterclaim, Scotiabank has submitted these claims to Integrand for payment, and to protect its interests in the mortgaged properties, Scotiabank advanced payment of the proceeds pending collection from Integrand. Regardless of the outcome of the Integrand litigation, the Plaintiffs, and all of the other FPI borrowers, have not suffered and will not suffer any damages.

The Standard FPI Policy limits and general conditions, as stated in the January 30, 2018 notices, are the same for all borrowers. The insured value is based upon the lower of appraised value, replacement cost, or net loan balance. All windstorm claims are subject to a 2% deductible. These terms are generally unchanged from the coverage that Scotiabank obtained under the policies that were in effect through July 31, 2017. All Plaintiffs were advised of the amount recommended by the adjuster and Scotiabank's procedures for disbursement of funds.[12]

### III.    The SAC Is Futile, Untimely and Prejudicial

This is the Plaintiffs' fifth attempt to state a claim that can survive a Rule 12 motion. The odyssey began almost one year ago, when Plaintiffs filed their original complaint on February 14, 2018. Some counts have been added, deleted, and then added back again. Scotiabank has already incurred the cost of preparing two motions to dismiss, and an opposition to the motion for leave to file a sur-reply. Enough is enough. No more amendments should be permitted until

---

[12] Scotiabank elected, in its discretion, to apply the same procedures equally to all borrowers for application of all insurance proceeds (whether force placed or private).

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **11** of **21**

the Court rules on the renewed motion to dismiss, as a ruling in Scotiabank's favor on that motion will render the latest proposed amendment futile.

### A.  Legal Standard For Leave To Amend

The decision to grant or deny a motion for leave to amend a complaint rests within the trial court's discretion. *Dole v. Arco Chemical Co.*, 921 F.2d 484, 486 (3d Cir. 1990); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir. 1984). Pursuant to Rule 15(a), the general rule is that "leave shall be freely given when justice so requires." The policy favoring liberal amendments is not, however,  unbounded. *Dole*, 921 F.2d at 487. The court may refuse to allow an amendment that fails to state a cause of action. *Adams v. Gould Inc.,* 739 F.2d 858, 864 (3d Cir. 1984) *cert. denied*, 469 U.S. 1122 (1985), *citing Massarsky v. General Motors Corp*., 706 F.2d 111, 125 (3d Cir. 1983). "[A]t some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams*, 739 F.2d at 868. Delay may become undue when a movant has had previous opportunities to amend a complaint. *Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d  Cir. 2001). Leave to amend may be denied if the amendment would be futile, that is, if the additional claims would not withstand a motion to dismiss. *Glaziers and Glass Workers Union Local No. 252 Annuity Fund v. Janney Montgomery Scott, Inc.,* 155 F.R.D. 97, 100 (E.D.Pa. 1994) (citations omitted).

Leave may be denied for reasons such as "'undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment.'" *Becker v. Univ. of Neb*., 191 F.3d 904, 907–08 (8th Cir. 1999) (*quoting Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992)).  "It is not an

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **12** of **21**

abuse of discretion to refuse leave to amend when the proffered amendment merely restates the same facts using different language, or reasserts a claim previously determined." *Wakeen v. Hoffman House, Inc.,* 724 F.2d 1238, 1244 (7th Cir. 1983) *citing Kasey v. Molybdenum Corporation of America,* 467 F.2d 1284, 1285 (9th Cir.), *cert. denied*, 409 U.S. 1063 (1972). Delay is a factor "when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263 (3d Cir. 2008); *Rhodes v. Amarillo Hospital Dist*., 654 F.2d 1148, 1154 (5th Cir. 1981); *Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir. 1981). The retention of a new counsel who suggests different or more creative claims based upon the same set of facts is not an excuse for the delay in filing of an amended complaint. *See, Summit Office Park, Inc. v. United States Steel Corp*., 639 F.2d 1278, 1284 (5th Cir. 1981) (The intent of Rule 15(a) "is to assist the disposition of litigation on the merits of the case rather than have pleadings become ends in themselves.").

The SAC's sufficiency is evaluated under FED. R. CIV. P. 8(a) as interpreted by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570); *see Zimmerman*, 873 F.3d at 417–18; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A plaintiff must "plead more than the possibility of relief to survive a motion to dismiss," *Fowler*, 578 F.3d at 210, and cannot rely merely on "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 570. A complaint that offers only "labels and conclusions," or "naked assertion[s]" devoid of "further factual enhancement," is insufficient. *Iqbal*, 556 U.S. at

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **13** of **21**

678 (*quoting Twombly,* 550 U.S. at 555, 557). The complaint must supply more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Unreasonable conclusions are entitled to no weight. Conclusory allegations are not facts and are entitled to no deference. After separating the factual and legal elements of a claim, the court should disregard legal conclusions, and then determine if the well-pleaded facts are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 210-11. Plaintiffs have the minimal burden of alleging facts that would, if true, entitle them to some form of relief. *See id.* Under these standards, the motion for leave to file the SAC should be denied.

### B.  The SAC Fails to State A Claim Under RESPA

The only actual facts pled in the SAC establish that Scotiabank complied with RESPA and the terms of the mortgages in the placement of the FPI and in the manner in which the losses have been handled since the storms. The mere existence of a coverage dispute between Scotiabank and its FPI insurer is not sufficient to state a claim under RESPA.  Plaintiffs' contentions in the SAC, like the FAC, are contrary to the actual language of the November 10, 2017 and January 31, 2018 notice letters, and the only undisputed facts that can be gleaned from the Integrand lawsuit. The January 2018 letter accurately stated that Scotiabank had procured has force-placed coverage with an effective date of August 1, 2017. *See January 30, 2018 Letter.* The letter clearly states "Notice of Renewal of Lender Placed Insurance Effective August 1, 2017".

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **14** of **21**

There is nothing illegal, suspicious or particularly unusual about retroactive insurance coverage under large commercial policies that provide lenders with force placed coverage for multiple mortgaged properties included in a portfolio. *See, Rapp v. Green Tree Servicing, LLC*, 2013 WL 3992442, at * 6 (D. Minn. Aug. 5, 2013); *LaCroix v. U.S. Bank*, N.A., No. 11–CV– 3236, 2012 WL 2357602, at *5 (D. Minn. June 20, 2012). Backdating policies is a common practice that ensures that the property is continuously covered. *See Webb v. Chase Manhattan Mortg. Corp.,* No. 2:05–cv–0548, 2008 WL 2230696, at *19 (S.D. Ohio May 28, 2008).

RESPA does not require lenders to procure FPI—it only prohibits unreasonable charges for premiums. *See*, 12 U.S.C. §2605 (m). Plaintiffs do not allege that they were over charged for FPI insurance premiums. They cannot truthfully allege that Scotiabank refused to process the FPI claims. Plaintiffs cannot allege that FPI coverage should not have been procured, or was placed without notice. Because the SAC still fails on its face to state a claim under RESPA, the amendment is futile.

### C.  The SAC Fails to State a Claim for Breach of Contract

The Scotiabank mortgages expressly provide that the Scotiabank is permitted to insure the property, or not, in the amount it chooses. There is no obligation to provide any particular amount or form of coverage. *See Custer v. Homeside Lending, Ind*., 858 So.2d 233, 249 (Ala. 2003); *see also Thomas and Cheryl Koziol, Inc. v. Lasalle Nat. Bank*, A-0849-12T2, 2014 WL 1660381, at *3 (N.J. Super. Ct. App. Div. Apr. 28, 2014) (unreported) (holding that the language of the mortgage permitting the lender to purchase insurance to protect its interest in the property, and not the borrower's interest, did not place an obligation on the lender to procure insurance to protect the borrower's interests). Moreover, the Integrand coverage action confirms that

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **15** of **21**

Scotiabank did in fact purchase FPI, effective as of August 1, 2017, and that Integrand did indeed issue Endorsement for the USVI FPI coverage.

### D.  The Plaintiffs Remaining Claims Fail Because They Are Not Parties Or Intended Beneficiaries Under FPI

The Plaintiffs were not parties to the prior FPI contract or the Integrand contract, nor are they third party beneficiaries. To qualify as third party beneficiaries, the Plaintiffs would have to be able to allege that the policy contains an 'excess loss' or 'residual payment' clause or a clause providing that the insurer will adjust all personal property losses with, and pay any such proceeds to, the homeowner-borrower". *See*, *Alvarado v. Lexington Ins. Co*., 389 S.W.3d 544, 554 (Tex. Ct. App. 2012). Courts have "denied third-party beneficiary status when the insurance policy states (1) that it does not provide coverage for loss of use, personal liability, or personal property, (2) that the mortgagee is the sole insured, (3) that the policy is intended to protect the mortgagee's interest only and not the borrower's, or (4) that all losses will be adjusted with and made payable to the named insured, the mortgage company." *Id*. at 555 (collecting cases).

The Scotiabank mortgages provide that the Mortgagee is permitted, but not required,  to insure the property in the amount it chooses, in its absolute discretion. Because Scotiabank was not required to insure the property for more than necessary to protect its interest, it follows that the plaintiffs were merely  incidental beneficiaries,  not  intended third party beneficiaries of the FPI. *See, Custer v. Homeside Lending, Ind*., 858 So.2d 233, 249 (Ala. 2003); *see also, Thomas and Cheryl Koziol, Inc. v. Lasalle Nat. Bank*, 2014 WL 1660381, at *3 (N.J. Super. Ct. Apr. 28, 2014) (holding that the language of the mortgage permitting the lender to purchase insurance to protect its interest in the property, and not the borrower's interest, did not place an obligation on

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **16** of **21**

the lender to procure insurance to protect the borrower's interests). As third parties that only receive an incidental benefit from the FPI contract, Plaintiffs are not an intended beneficiaries and have no rights to enforce the contract. RESTATEMENT (SECOND) OF CONTRACTS § 302(2). *See e.g., Lake v. Massachusetts Bay Transp. Auth.,* 844 N.E.2d 263, 269, n.11 (Mass. App. Ct. 2006) (collecting cases).

This is because force-placed homeowners are not third-party beneficiaries when the homeowner does not receive a direct benefit from the policy under the policy's own terms. There is no third-party beneficiary status when the insurance policy states (1) that it does not provide coverage for loss of use, personal liability, or personal property, (2) that the mortgagee is the sole insured, (3) that the policy is intended to protect the mortgagee's interest only and not the borrower's, or (4) that all losses will be adjusted with and made payable to the named insured, the mortgage company. *See, Williams v. Certain Underwriters at Lloyd's of London*, 398 Fed.Appx. 44, 48–49 (5th Cir. 2010) (not designated for publication) (policy specified that mortgagee was sole insured and all benefits were payable directly to mortgagee); *Lumpkins v. Balboa Ins. Co*., 812 F.Supp.2d 1280, 1283–84 (N.D.Okla. 2011) (policy provided no coverage for contents, personal effects, personal living expenses, fair rental value or liability and stated that contract was only with named insured and only intended to protect named insured's interest); *Barrios v. Great Am. Assurance Co., Civil Action* No. H–10–3511, 2011 WL 3608510, at *4 (S.D.Tex. Aug. 16, 2011) (slip op.) (policy specified that, unless homeowners coverage was specifically added by endorsement, homeowner-mortgagor was not insured under policy); *Williams v. Fid. Nat'l Ins. Co*., Civil Action No. 07–4428, 2009 WL 2922310, at *3 (E.D.La. Sept. 8, 2009) (not designated for publication) (policy specified that, despite insurable interests

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **17** of **21**

of homeowner, only mortgagee was insured under policy); *Simpson v. Balboa Ins. Co.,* Civil Action No. 2:08cv281KS-MTP, 2009 WL 1291275, at *3–4 (S.D.Miss. May 7, 2009) (policy provided no coverage for loss of use, personal liability, or personal property and no right of borrower to participate in claim adjustment); *Jones v. Proctor Fin. Ins. Corp.,* Civil Action No. 06–9503, 2007 WL 4206863, at *3 (E.D.La. Nov. 21, 2007) (not designated for publication) (policy provided no coverage for personal property, and adjustment of and payment for loss would be made solely to mortgagee); *Paulk v. Balboa Ins. Co*., No. 1:04CV97, 2006 WL 1994864, at *3 (S.D.Miss. July 14, 2006) (not designated for publication) (same); *see also Scheaffer v. Balboa Ins. Co.,* 1 So.3d 756, 759 (La.Ct.App.2008) (notice of premium informed borrower that he was not insured under policy, that he was not entitled to receive proceeds, and that policy protected only mortgagee's interest).

Mere payment of the force-placed-policy premiums by the homeowner-borrower, without more, does not confer third-party-beneficiary status on the borrower. *See Scheaffer*, 1 So.3d at 760; *Lee*, 2008 WL 2622997, at *3 ("Mere payment or reimbursement of insurance premiums by a plaintiff to an insurance provider does not create a right to recovery under an insurance policy when the plaintiff is not the named insured and is nowhere named in the policy."); *Ged v. Select Portfolio Servicing, Inc.*, 2016 WL 3033683, at *5 (D. N. J. May 26, 2016) (mortgagor was not a third party beneficiary under force placed flood insurance policy purchased by lender, and had no claim based upon alleged failure to receive notice of cancelation of policy which occurred when the mortgage loan was paid off); *Alba v. Meritplan Insurance Company*, 2013 WL 12106885, at *5  (S.D. Tex Sept. 11, 2013) (mortgagor is merely an incidental beneficiary under a mortgagee's force placed policy with no right to assert a claim based upon the adjustment of a

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **18** of **21**

covered loss).   "[A]  third party cannot enforce a contract if the third party benefits only incidentally from it." *Duque v. Wells Fargo, N.A*., 462 S.W.3d 542, 547 (Tex App 2015), *quoting City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011); *Lumpkins v. Balboa Ins. Co*., 812 F.Supp.2d 1280 (N. D. Oak 2011) (Borrower was not a third party beneficiary under insurance policy procured by the lender, for the benefit of the lender, under which the lender was the only named insured).

Plaintiffs are merely incidental beneficiaries, not third-party beneficiaries, of the force-placed insurance contract, because the policies are only intended to insure the lender's collateral. *Simpkins v. American Modern Home Insurance Company*, 2018 WL 1383843, at WL page *3 (E.D. Va. March 16, 2018), *citing Williams v. Certain Underwriters at Lloyd's of London*, 398 Fed.Appx. 44, 45 (5th Cir. 2010). Because the  Plaintiffs were not third-party beneficiaries of the force-placed insurance policy, they  are without standing to sue for an alleged breach of the policy, or to complain about the standards used by the adjusters. *Id.*; *see also  William v. AES Corp*., 28 F. Supp. 3d 553, 569 (E.D. Va. 2014).

The claims for negligent and fraudulent misrepresentation fail because Plaintiffs cannot establish the necessary element of reasonable justifiable reliance resulting in damages.  Plaintiffs were repeatedly advised that lender placed insurance was solely for the protection of the lender's interest, and were repeatedly encouraged to protect themselves by obtaining their own homeowner's insurance.  The only promise that was made to Plaintiffs was that if a portion of a premium was unearned, due to cancelation of the lender placed policy, the unearned premium would be refunded to the escrow account.  A similar claim, captioned as one  for "detrimental reliance", was rejected in *Brown v. American Modern Home Insurance Company*,  2017 WL

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **19** of **21**

2290268 (E.D. La. May 25 2017). The same analysis applies here. The only promise made to the Plaintiffs arises from the terms of the mortgage contracts, and the language makes clear that (a) Scotiabank did not promise to obtain insurance; and (b) Plaintiffs were expressly advised that any lender placed insurance would be for the sole benefit of the lender, and the proceeds, if any, would be applied at the lender's sole discretion.

Nor can there be a claim for unjust enrichment when the parties' relationship arises from an express written  contract. An unjust enrichment claim cannot arise from the lender's exercise of the right to force place insurance. *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F.Supp.2d 504, 515-16 (E.D. Pa 2012) (applying Pennsylvania law). Plaintiffs' claims, if any, are governed by the terms of the mortgage and by the statutory requirements of RESPA. There is a specific remedy under RESPA for an unreasonable charge for force placed insurance.  The same events cannot be used to support a tort claim for unjust enrichment.

Plaintiffs' tort claims also will fail because the tort claims are precluded by the gist of the action doctrine. In *Pollara v. Chateau St. Croix, LLC*, SX-06-CV-423, 2016 WL 2865874 (V.I. Super. May 3, 2016), the Superior Court conducted a detailed Banks analysis and concluded that the gist of the action doctrine represents the soundest rule for the Virgin Islands. *Id*. at *6. "The application of the gist of the action doctrine arises '... out of the concern that tort recovery should not be permitted for contractual breaches.'" *Id*. at *4 (*quoting Addie v. Kjaer*, 60 V.I. 881, 898 (3d Cir. 2013)). It applies when "claims are: '(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contact claim or the success of which is wholly dependent on the terms of a contract.'"

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **20** of **21**

*Id*. at *6 (quoting *Kjaer*, 60 V.I. at 898 (*citing Etoll, Inc. v. Elias/Savion Adver., Inc*., 811 A.2d

10, 19 (Pa. Super. Ct. 2002) (internal citations omitted)). Although a party to a contract is not

automatically barred from bringing a tort action, the party must prove there are separate or

independent events giving rise to the tort. *Id*. at *4.  Applying the gist of the action doctrine to

this case, it is indisputable that all of the plaintiffs' tort claims arise solely out of the terms of

their mortgage contracts.  All of the actions of Scotiabank and its loan servicers were taken  in

furtherance of Scotiabank's rights under the mortgages to require the borrowers to maintain

hazard insurance, and the mortgagee's right, but not the obligation, to force place insurance to

protect the Bank's interests if the borrowers failed to comply with their obligation.

**IV      Conclusion**

For all of the foregoing reasons, the Motion for leave to file the Second Amended

Complaint should be denied.

DATED: January 18, 2019                          Respectfully Submitted,

                                                 **DUDLEY RICH LLP**

                                                 By:  __/s/ Carol  Ann  Rich_____
                                                 Carol A. Rich, Esq., V.I. Bar No. 171
                                                 Malorie Winne Diaz, Esq., V.I. Bar No. R2049
                                                 5194 Dronningens Gade, Suite 3
                                                 St. Thomas, VI 00802
                                                 Telephone: (340) 774-7676
                                                 Telecopier: (340) 776-8044
                                                 crich@dudleylaw.com
                                                 mdiaz@dudleylaw.com

                                                 *Attorneys for Bank of Nova Scotia*

*Belardo, et al. v. Bank of Nova Scotia*, Case No. 2018-CV-8
Opposition to Motion for Leave to File Second Amended Complaint
Page **21** of **21**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of January, 2019, I electronically filed the foregoing

**Opposition to Motion For Leave to File Second Amended Complaint** with the Clerk of the

Court using CM/EFC system, which will send a notification of such (NEF) to the following:


Vincent Colianni, II
Vincent A. Colianni
1138 King Street
Christiansted, St. Croix
mailbox@colianni.com

**Harry Richard Yelton, Esq.**
**Charles Jacob Gower, Esq.**
**Warren Burns**
**BURNS CHAREST LLP**
**365 Canal Street, Suite 1170**
**New Orleans, LA 70130**

*/s/Carol Ann Rich_____*