IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| LORETTA S. BELARDO, ANGELA TUITT-SMITH, BERNARD A. SMITH, YVETTE ROSS-EDWARDS, AVON CANNONIER, ANASTASIA M. DOWARD, DARYL RICHARDS, EVERTON BRADSHAW, RODELIQUE WILLIAMS-BRADSHAW, PAMELA GREENIDGE, and WINSTON GREENIDGE on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>v.<br><br>BANK OF NOVA SCOTIA<br>           Defendant. | 2018-CV-8<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE
TO FILE SECOND AMENDED CLASS ACTION COMPLAINT**

BNS objects that the proposed Second Amended Complaint ("SAC") is futile.[1] The opposition brief, however, gives mere lip service to the appropriate legal test. BNS fails to accept the factual matters alleged by Plaintiffs as true, and it inappropriately draws every inference in *its favor* rather than in Plaintiffs' favor. Despite BNS's protestations, Plaintiffs allege sufficient facts that support the reasonable inference that BNS debited Plaintiffs' escrow accounts to purchase hazard insurance, but then never actually purchased that insurance. Federal law and Virgin Islands' contract law and tort law afford Plaintiffs a remedy.

**1.  The proposed SAC is not futile.**

---

[1] BNS also appears to object on the basis that it will be prejudiced because Plaintiffs are engaging in delay, in bad faith, and with dilatory motives. *See* BNS Opposition, Rec. Doc. 36, at pp. 10, 11. But BNS fails to adduce any evidence in support. It relies solely on the intimation of counsel, which is not evidence. As noted in the motion, amendment sooner rather than later serves judicial efficiency, especially where there has been no discovery and no scheduling order has been entered.

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

An amended complaint is only futile when it would fail to state a claim upon which relief could be granted.[2] A defendant has a heavy burden in demonstrating futility.[3] Because courts are to employ a Rule 12(b)(6) analysis when considering whether amendment is futile,[4] the court must accept the factual matter asserted in the complaint as true. And it must draw the reasonable inferences from those accepted facts in the plaintiff's favor.[5]

BNS's primary argument regarding futility is that the allegations of the proposed SAC are false. But whether all allegations in a complaint are indisputably accurate is not the standard at the Rule 12(b)(6) stage. *Twombly* counseled that on Rule 12(b)(6) the Court assume "'the allegations in the complaint are true (even if doubtful in fact).'"[6] Of course, it is Plaintiffs' contention that the allegations in the proposed SAC (as well as the allegations in its previous pleadings) are true. But the veracity of those allegations are not presently at issue before the Court. **This is not summary judgment or trial.**

---

[2] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

[3] *Lewis v. United Food & Commercial Workers Local Union 464A*, No. 2:14-CV-07467-JLL, 2015 WL 4414586, at *3 (D.N.J. July 17, 2015) (internal citations omitted).

[4] *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

[5] *Speaks v. Gov't of Virgin Islands*, No. CIV A 2006-168, 2009 WL 167330, at *1 (D.V.I. Jan. 14, 2009) (". . . all reasonable inferences are drawn in favor of the non-moving party."); *Frorup-Alie v. V.I. Hous. Fin. Auth. (VIHA)*, No. CIV. NO. 200-0086, 2003 WL 23515136, at *2 (D.V.I. Oct. 26, 2003) ("All reasonable inferences are drawn in favor of Plaintiff.").

[6] *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007), *as amended* (Nov. 20, 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). *See also Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) ("We take as true all the factual allegations of the Third Amended Complaint and the reasonable inferences that can be drawn from them, *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (2010), but we disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 129 S.Ct. at 1949. "To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sheridan,* 609 F.3d at 262 n. 27 (quoting *Iqbal,* 129 S.Ct. at 1949). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*").

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

BNS has resorted to attacking the proposed SAC as "false" at several points, knowing that the appropriate legal standard is whether the complaint states a claim upon which relief can be granted. Plaintiffs allege that BNS charged them lender-placed insurance by deducting premiums from their escrow accounts, but then failed to actually purchase insurance with that money. Plaintiffs also allege that, in the wake of the Hurricanes, BNS engaged in a systematic disinformation campaign which caused Plaintiffs to have an inaccurate understanding of the insurance coverage available, which caused Plaintiffs to forgo, among other things, non-insurance disaster assistance.

Under this set of *accepted-as-true* facts, the law invariably provides a remedy. When you charge a customer for a product, you have to buy the product. If you don't buy the product you promised, you are responsible for the losses sustained as a result. And then when you mislead them after the fact, you are responsible for their further injury.

**2.     Plaintiffs allegations state several claims for relief.**

   **a.     Plaintiffs state a claim for breach of the covenant of good faith and fair dealing.**

In their proposed SAC, Plaintiffs state a claim for relief for breach of the covenant of good faith and fair dealing. BNS does not respond to this newly articulated cause of action, nor does it argue that this particular portion of the proposed SAC is futile. These new allegations alone warrant granting Plaintiffs leave to amend.

   **b.     Plaintiffs state a RESPA claim.**

It is difficult to imagine a more adequately pled violation of RESPA [12 U.S.C. § 2605(m)] than the factual allegations made by Plaintiffs in this action. Plaintiffs do not merely allege a coverage dispute. Rather, they allege that BNS failed to obtain lender-placed insurance for their

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

properties beginning on August 1, 2017 when the ASIC Policy was terminated.[7] Further, Plaintiffs allege that despite not purchasing lender-placed insurance coverage for Plaintiffs' properties after August 1, 2017, BNS and the Scotiabank de Puerto Rico, Inc. ("BNS-PR") continued to charge Plaintiffs and class members for lender-placed coverage.[8]

According to BNS, "RESPA . . . only prohibits unreasonable charges for premiums."[9] This is, of course, not an accurate statement of the law. RESPA demands that all charges related to lender-based insurance be "<u>bona fide and reasonable</u>."[10] Quite tellingly, BNS's opposition does not once use the term "bona fide." Plaintiffs allege that BNS took premiums from its borrowers for insurance that it never actually purchased. **Insurance that does not exist is not bona fide**.[11] And if the insurance is non-existent, premiums charged to the borrower for the non-existent insurance cannot be reasonable. Plaintiffs' factual allegations, accepted as true on Rule 12(b)(6) review, more than plausibly state a claim that BNS's charges were neither *bona fide* nor *reasonable*.

    c.    **Plaintiffs state a breach of contract claim.**

At the outset, Plaintiffs point out that a dispute exists here regarding which contracts were breached. In their proposed SAC, Plaintiffs allege breach of contracts containing language found in the BNS Mortgage Agreement.[12] BNS, by contrast, has attached exhibits to its opposition which it claims are the operative mortgage contracts. For the reasons described above, Plaintiffs allege that

---

[7] Proposed SAC, Rec. Doc. 29-1, at ¶¶ 38–41.

[8] Proposed SAC, Rec. Doc. 29-1, at ¶ 42.

[9] BNS Opposition, Rec. Doc. 36, at p. 14.

[10] 12 U.S.C. § 2605(m).

[11] Black's Law Dictionary contains the following definition of bona fide: "1. Made in good faith; without fraud or deceit. 2. Sincere; genuine." Black's Law Dictionary (10th ed. 2014).

[12] *See* Exhibit A to Proposed SAC (BNS Mortgage Agreement), Rec. Doc. 29-3.

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

the breach of contract is the breach of the BNS Mortgage Agreement—*not* a breach of any of the unauthenticated documents attached to BNS's opposition.

However, momentarily setting aside the distinctions between the language of the BNS Mortgage Agreement and the documents attached to BNS's opposition, no version of the contracts contain language that would permit BNS to charge its borrowers for lender-placed insurance and then simply not use the collected funds to purchase insurance.

The main thrust of BNS's argument is that the mortgage contracts entered into by BNS and its borrowers did not obligate BNS "to provide any particular amount or form of coverage."[13] This may be true, and Plaintiffs do not quibble with BNS's position that once a borrower's insurance coverage lapsed, BNS had the discretion to choose whether to require Plaintiffs to pay premiums for lender-placed insurance.

However, once BNS decided to charge its borrowers for lender-placed insurance, it did not have the discretion to decide whether to actually purchase the promised coverage. Plaintiffs' central allegation is that BNS charged its borrowers for a product it did not procure. No provision of any of the various contractual provisions permit such a result. **Theft is neither a contractual right nor an exercise of discretion.**[14]

The cases cited by BNS are inapposite; in fact, both cases are consistent with Plaintiffs' position that the discretion enjoyed by the lender is limited to deciding whether to require the

---

[13] BNS Opposition, Rec. Doc. 36, at p. 14.

[14] Any interpretation of the mortgage agreements that would permit BNS to take premiums and not purchase the promised policy would be unconscionable, and unenforceable as a matter of Virgin Islands public policy. *See* 11A V.I.C. § 2-302. If the Court is inclined to accept BNS's construction, then Plaintiffs pray they be "afforded a reasonable opportunity to present evidence as to [the mortgage agreements'] commercial setting, purpose and effect to aid the court in making the determination." *Id.* at (2).

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

borrower to pay for lender-placed insurance upon the lapse of borrower-purchased coverage.[15] However, the case before the Court is entirely different. Plaintiffs do not allege that BNS lacked the right to elect whether to charge Plaintiffs for lender-placed insurance—only that once BNS elected to procure insurance, and then charged Plaintiffs for that insurance, BNS was obligated to actually purchase the coverage for which it collected premiums.

Moreover, BNS's arguments regarding third-party beneficiary status have no bearing on Plaintiffs' breach of contract claims. BNS maintains that Plaintiffs are not third-party beneficiaries to the Integrand Policy, and nearly all of the cases cited in this section of BNS's opposition address third-party beneficiary status to insurance contracts.[16] While BNS has engaged in an interesting academic exercise, it is entirely untethered to allegations of the proposed SAC. Plaintiffs are **not** claiming breach of the Integrand Policy.

BNS never argues—nor can it—that Plaintiffs are third-party beneficiaries of the individual mortgage agreements that they entered into with BNS. Those mortgage agreements obligated BNS to purchase lender-placed insurance if it charged Plaintiffs premiums for same. Plaintiffs have alleged that BNS breached those mortgage agreements when it charged Plaintiffs for lender-placed insurance but then failed to actually purchase the coverage. Whether Plaintiffs were also third-party beneficiaries of the Integrand Policy has no bearing whatsoever on whether BNS breached the mortgage agreements it entered into with Plaintiffs.

---

[15] *See Custer v. Homeside Lending, Inc.*, 858 So. 2d 233, 240 (Ala. 2003) (noting that, unlike in the instant matter, plaintiffs alleged that the lender "force-plac[ed] flood insurance in amounts that exceeded outstanding mortgage loan balances"; *Thomas & Cheryl Koziol, Inc. v. Lasalle Nat. Bank*, No. A-0849-12T2, 2014 WL 1660381, at *1 (N.J. Super. Ct. App. Div. Apr. 28, 2014) (unpublished) (where the servicer only placed property insurance, but not flood insurance, while the mortgaged property was in foreclosure proceedings, the borrower was not in possession of the premises, and there is no mention of whether the borrower's escrow account had been debited premiums for flood insurance).

[16] *See* Section D of BNS's Opposition, Rec. Doc. 36, at pp. 15–18 (entitled "The Plaintiffs Remaining Claims Fail Because They Are Not Parties Or Intended Beneficiaries Under FPI").

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

### d. Plaintiffs state claims for negligent and fraudulent misrepresentation.

The only element of Plaintiffs' fraudulent and negligent misrepresentation claims that BNS argues is unsatisfied is the requirement that Plaintiffs demonstrate justifiable reliance.[17] BNS is correct that courts in the Virgin Islands have required plaintiffs to demonstrate justifiable reliance upon a misrepresentation resulting in injury. However, BNS ignores Plaintiffs' allegations.

Specifically, Plaintiffs allege that BNS supplied them false and misleading information in the following ways:

> 1) directing Plaintiffs and class members to provide damage estimates in the wake of Hurricanes Irma and Maria and advising that BNS would forward the estimates to its insurer when lender-placed insurance was not available for the properties; 2) repeatedly making false representations to Plaintiffs and class members advising that they were insured and assuring Plaintiffs and class members that their claims were being processed when, in fact, Plaintiffs' properties were not insured; 3) sending the January 30, 2018 form letter to Plaintiffs and class members providing misinformation regarding the coverage available at the time of the hurricanes; and 4) sending Plaintiffs and class members the February 21, 2018 letter which fails to disclose the lack of available lender-placed coverage.[18]

Plaintiffs also allege that they justifiably relied upon BNS's multiple and repeated misrepresentations, and that they were justified in their reliance because BNS is in the business of issuing mortgages and is responsible for acquiring lender-placed insurance on properties when it

---

[17] BNS Opposition, Rec. Doc. 36, at pp. 18–19; *Isaac v. Crichlow*, No. CV SX-12-CV-065, 2015 WL 10568556, at *10 (V.I. Super. Feb. 10, 2015) (finding that the soundest rule for the Virgin Islands is to accept the definition of fraudulent misrepresentation of the Restatement (Second) of Torts § 525, which provides the following definition: "[o]ne who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation").

[18] Proposed SAC, Rec. Doc. 29-1, at ¶¶ 179.

Case: 1:18-cv-00008-WAL-GWC Document #: 41 Filed: 02/12/19 Page 8 of 16

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

collects premiums for same from its borrowers.[19] Finally, Plaintiffs allege that based on their justifiable reliance, Plaintiffs have:

> 1) continued making mortgage payments on the properties under the false but justified belief that BNS had acquired insurance on the properties; 2) refrained from attempting to take ameliorative action to repair damage to their homes until learning what would be covered by insurance; and 3) continued to pay premiums for lender-placed insurance under the false but justified belief that BNS had purchased the insurance it was contractually obligated to purchase.[20]

The instant matter is entirely distinguishable from the sole case cited by BNS, *Brown v. Am. Modern Home Ins. Co.*, where the plaintiffs alleged that they were beneficiaries of a lender-placed insurance policy, and the court's determination turned on that allegation.[21] Here, by contrast, Plaintiffs allege that BNS violated their individual mortgage agreements, as reflected in the BNS Mortgage Agreement, by taking Plaintiffs' money for lender-placed insurance and then failing to actually purchase the promised policy. Plaintiffs were justified in relying on BNS to use the money it debited from Plaintiffs' escrow account to purchase lender-placed insurance.

  e.  **Plaintiffs state a claim for unjust enrichment.**

BNS argues that Plaintiffs' claims are governed by RESPA and the mortgage contracts, and therefore, an unjust enrichment claim cannot also be pursued.[22] However, courts in the Virgin Islands recognize that "a court may not construe a [plaintiff's] first claim as an admission against

---

[19] Proposed SAC, Rec. Doc. 29-1, at ¶¶ 182.

[20] Proposed SAC, Rec. Doc. 29-1, at ¶¶ 183.

[21] No. CV 16-16289, 2017 WL 2290268, at *2 (E.D. La. May 25, 2017).

[22] *See* BNS Opposition, Rec. Doc. 36, at p. 19.

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

another alternative or inconsistent claim."[23] And plaintiffs are entitled to maintain an unjust enrichment claim when it forms an alternate basis for relief.[24]

Here, Plaintiffs' proposed SAC satisfies the elements of an unjust enrichment claim, and Plaintiffs seek this relief in the alternative.[25] Thus, Plaintiffs should be permitted to proceed with the unjust enrichment cause of action as an alternative basis upon which relief can be granted.

3. **The "Gist of the Action" does not warrant dismissal, in whole or in part.**

As this Court has counseled, "Caution must be exercised in dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry."[26] Several open factual questions exist in this case that make a "Gist of the Action" ruling premature. It is for this reason that the gist of the action is better considered at the summary judgment stage, and is inappropriate at this time.[27]

Additionally, the "Gist of the Action" doctrine does not bar tort claims when, despite the existence of contractual duties, "a separate or independent event has occurred which gives rise to the

---

[23] *Jefferson v. Bay Isles Assocs., L.L.L.P.*, No. ST-09-CV-186, 2011 WL 3853332, at *12 (V.I. Super. Feb. 1, 2011).

[24] *Id.*

[25] In support of its position, BNS cites *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012), which notes that plaintiffs are generally able to "plead both a breach-of-contract claim and an unjust-enrichment claim only where there is some dispute as to whether a valid, enforceable written contract exists." Here, as evidenced by the briefing for this motion to amend, there is a significant dispute regarding whether the governing contracts speak to this particular situation—whether BNS can contractually take premiums but not buy insurance. This case is in too nascent a stage for dismissal of the alternative claim of unjust enrichment at this time, and risks delay if discovery reveals that Plaintiffs' claims do not lie in contract.

[26] *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 567 (D.V.I. 2004).

[27] *See Addie v. Kjaer*, No. CIVIL 2004-135, 2009 WL 482497, at *2 (D.V.I. Feb. 23, 2009) (noting that fact-intensive motions are inappropriate for motion-to-dismiss review and stating that "[t]he summary judgment stage is precisely the right time to address the applicability of the gist of the action doctrine.").

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

tort."[28] This case involves several causes of action, many of which revolve around BNS's and BNS-PR's tortious conduct *after* the mortgage contracts were breached. In particular, the negligent misrepresentation, fraudulent misrepresentation, and negligence claims involve conduct that is separate and distinct from any breach of the mortgage contracts; conduct that occurred for more than a year **after** BNS breached the contract. Because these claims are independent from BNS's contract breaches, they are not vulnerable to dismissal under the gist of the action doctrine.

The "Gist of the Action" doctrine, as applied in the Virgin Islands, prevents "plaintiffs from re-casting ordinary breach of contract claims into tort claims."[29] The case presently before the Court is anything but an ordinary breach of contract matter. Plaintiffs have alleged that BNS and BNS-PR undertook a disinformation campaign to hide their failure to obtain coverage. These allegations do not arise out of the breach of the mortgage agreements themselves, but constitute entirely separate tortious conduct that caused distinct injuries to Plaintiffs. Courts generally hold that "the gist of the action doctrine does *not* apply when the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive the plaintiff . . . ."[30] Such is the case here, and the "Gist of the Action" doctrine cannot be used to defeat these causes of action.[31]

---

[28] *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 528 (W.D. Pa. 2011).

[29] *Edwards v. Marriott Hotel Mgmt. Co. (Virgin Islands), Inc.*, No. ST-14-CV-222, 2015 WL 476216, at *6 (V.I. Super. Jan. 29, 2015).

[30] *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 725 (E.D. Pa. 2014) (emphasis in original) (applying Pennsylvania law).

[31] *See V.I. Port Auth. v. Callwood*, No. ST-11-CV-305, 2014 WL 905816, at *5 (V.I. Super. Feb. 28, 2014) ("Allowing a claim for fraudulent misrepresentation that induces one to enter into a contract is the soundest application of the gist of the action doctrine because such misrepresentation implicates the larger social policies of a tort action (e.g., society's desire to avoid fraudulent inducement." (internal citations omitted); *See also Woodson v. Akal*, No. ST-16-CV-399, 2017 WL 3587370, at *4 (V.I. Super. Aug. 17, 2017) (holding that a tortious interference claim was not barred by gist of the action doctrine).

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

"It is especially inappropriate to dismiss a tort claim as duplicative of a contract claim when the contours of the agreement at issue are not clear."[32] By its own argument, BNS demonstrates that the contours of the agreements made between Plaintiffs and BNS are disputed.[33] Based on these factual disputes, it would be premature to foreclose those causes of action at this early stage of litigation.[34] The nature and extent of BNS's and BNS-PR's tortious conduct will become more clear through discovery, and the Court should presently decline to dismiss Plaintiffs' claims on this basis.

**4. The exhibits attached to BNS's Opposition cannot and should not be considered.**

To its opposition brief, BNS appends 21 exhibits. But consideration of this extrinsic evidence on Rule 12(b) review is inappropriate under the circumstances. By asking the Court to consider exhibits extrinsic to the proposed SAC, BNS is attempting to convert Plaintiffs' motion for leave to amend into a motion for summary judgment. And because no discovery has yet occurred in this case, summary judgment is not appropriate at the present.

When analyzing a motion to dismiss, courts are generally limited to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."[35] A "district court's reliance on facts alleged outside [the] complaint constitutes a procedural error under Rule 12(b)(6)."[36] Pursuant to Rule 12(d),[37] if a court considers matters outside the pleadings, it must

---

[32] *Id.*

[33] *See* Section 2(c), *supra.*

[34] *Charleswell*, 308 F. Supp. 2d at 567 ("Even when the facts asserted in support of tort and contract claims are similar, courts in this district have been reluctant to dismiss claims on this basis without a factually intensive inquiry."); *Geesey v. CitiMortgage, Inc.*, 135 F. Supp. 3d 332, 353 (W.D. Pa. 2015) (declining to dismiss claims under the gist of the action doctrine when "the contours of the Mortgage and Note between the parties are not clear") (noting "that this issue will be better reviewed pursuant to a summary judgment motion").

[35] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *see also* Fed. R. Civ. P. 10(c) ("A copy of the written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[36] *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016).

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

treat a motion to dismiss as "one for summary judgment under Rule 56." However, courts are understandably reluctant to convert a motion to dismiss into a motion for summary judgment when case is in its early stages and no discovery has yet been propounded.[38] That same concern is present in this matter, and the Court should (1) not convert this proceeding into a motion for summary judgment, and (2) not consider BNS's twenty-one exhibits when analyzing Plaintiffs' motion for leave to amend.

Only in very narrow circumstances will a court consider documents extrinsic to the complaint on Rule 12(b) review.[39] The extrinsic document must be "*integral to or explicitly relied* upon in the complaint."[40] But in this case, the exhibits attached to BNS's opposition are neither integral to nor explicitly relied upon in Plaintiffs' proposed SAC. In the proposed SAC, Plaintiffs allege that

---

[37] Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

[38] *See Capitol First Corp. v. Todd*, No. CIV A 04-6439 MLC, 2006 WL 3827329, at *6 (D.N.J. Dec. 27, 2006) ("The Court also declines, in light of the absence of discovery in the case, to convert OMS and Troster's [Rule 12(b)(6)] motion into a motion for summary judgment."); *King v. Doe*, No. CIV. 10-573 JBS/AMD, 2011 WL 2669221, at *4 (D. Del. July 6, 2011) ("A lack of discovery may direct the Court against conversion.") (citation omitted)); *Aruanno v. Booker*, No. CIV A 08-305 (JLL), 2008 WL 5070540, at *3 (D.N.J. Nov. 24, 2008) ("Here, the Court follows the lead of the *Harvey* and *Sindram* courts and decides against converting the present motion into one for summary judgment. Given that the plaintiff is proceeding *pro se* and that no discovery has yet taken place, the Court looks only to the face of the complaint and evaluates the present motion under Fed. R. Civ. P. 12(b)(6)."); *Black v. N. Hills Sch. Dist.*, No. CIV.A. 06-807, 2007 WL 2728601, at *1 (W.D. Pa. Sept. 17, 2007) ("However, courts have held that exercise of the court's discretion is not warranted where there has been little or no discovery conducted by the parties.").

[39] *See Schmidt v. Skolas*, 770 F.3d 241, 249–50 (3d Cir. 2014) (finding the district court's reliance on documents extrinsic to the complaint in its motion-to-dismiss analysis improper).

[40] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

BNS breached the BNS Mortgage Agreement, a copy of which is attached as Exhibit A to the proposed SAC.[41]

BNS argues that the mortgage contracts entered into between Plaintiffs and BNS are different than the BNS Mortgage Agreement attached as Exhibit A to the proposed SAC.[42] In support, BNS attaches eight *partial* documents which it claims are mortgage contracts entered into by Plaintiffs and BNS.[43] Never mind that none of these exhibits are authenticated as required by Rule 901 of the Federal Rules of Evidence; they **are not integral to and are not explicitly relied upon** in the proposed SAC.

Whether the documents attached to BNS's opposition constitute the agreements between Plaintiffs and BNS is a quintessential question of fact, to be determined after the parties have engaged in discovery, and not in a motion to dismiss.

5. **The Integrand lawsuit simply confirms that a coverage dispute exists and that Integrand has not provided coverage for damage to Plaintiffs' properties.**

BNS devoted nearly four pages of its opposition to litigating the merits of the *Integrand* lawsuit, even though Plaintiffs have only included a reference to it in their proposed SAC to demonstrate that (a) a coverage dispute exists regarding the availability of lender-placed coverage for Plaintiffs' properties; and (b) BNS was aware of a coverage dispute at the very same time that it was telling Plaintiffs that their properties were covered.[44] Plaintiffs are not asking this Court to rule on the merits of the *Integrand* lawsuit or even, as BNS asserts, to "assume the truth of factual allegations

---

[41] *See* Proposed SAC, Rec. Doc. 29-1, at pp. 3-4; Rec. Doc. 28-3 (copy of the BNS Mortgage Agreement).

[42] *See* BNS Opposition, Rec. Doc. 36, at pp. 3–4.

[43] Exhibits 1-8 to BNS's Opposition, Rec. Docs. 36-1 through 36-8.

[44] *See* Proposed SAC, Rec. Doc. 29-1, at ¶ 58 ("The *Integrand* First Amended Complaint confirms that there is a dispute regarding the availability of coverage for Plaintiffs' and class members' claims and that, as a result, most Plaintiffs and class members did not receive sufficient insurance money to either repair their homes or pay down their mortgages.").

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

made in another judicial proceeding."[45] Plaintiffs have simply alleged the existence of lender-placed coverage-related lawsuit involving BNS to put to bed any denial by BNS regarding the existence of a coverage dispute.[46] Despite BNS's protestations to the contrary, the Court is well-within its authority to take judicial notice of the existence of the *Integrand* lawsuit.[47]

**6.     Conclusion**

Leave should be freely granted. The proposed Second Amended Complaint is far from futile. It pleads more than sufficient factual matter, accepted as true, and drawing all reasonable inferences therefrom, that BNS acted contrary to the law and owes Plaintiffs recompense.

- BNS **violated RESPA** because it took premiums and did not buy insurance. REPSA requires any charges be "bona fide" and "reasonable", and BNS's collection of premiums was neither.

- BNS **breached the mortgage contracts** it entered into with Plaintiffs. The mortgage contracts require BNS to dedicate any insurance proceeds to the repair of the collateral (Plaintiffs' hurricane-damaged homes) or to paying off the balance of the mortgage. BNS did failed to satisfy that requirement when it forget to purchase the insurance for which took premiums.

---

[45] *See* BNS Opposition, Rec. Doc. 36, at p. 7.

[46] *See* BNS's renewed motion to dismiss the First Amended Complaint., Rec. Doc. 10, at p. 13 ("Plaintiffs ask this Court to accept their wholly unsupported and bizarre conclusion that the only possible explanation for the delay in the processing of Scotiabank's FPI claims must be a plot to cover up the inexplicable failure to place the FPI coverage.") (emphasis removed from original).

[47] *See, e.g., Allied Nut & Bolt, Inc. v. NSS Indus., Inc.*, 920 F. Supp. 626, 629 (E.D. Pa. 1996) (taking judicial notice of a complaint filed in a separate state court action and noting that "this court may take judicial notice of it as it is a pleading in a court proceeding and as neither party has disputed its authenticity"); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) ("To determine what issues were actually litigated in the *Wal–Mart* courts, we take judicial notice of Plaintiffs' briefs in those courts and the transcript of the *Wal–Mart* fairness hearing."); *In re Advanced Packaging & Prod. Co.*, 426 B.R. 806, 824 (C.D. Cal. 2010) (taking judicial notice of a docket in a separate matte); *Nero AG v. MPEG LA, L.L.C.*, No. 10-CV-3672-MRP-RZ, 2010 WL 4366448, at *8 (C.D. Cal. Sept. 14, 2010) (taking judicial note, for purposes of a motion to dismiss, of several documents including a complaint in a separate action).

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

- BNS separately engaged in **tortious conduct.** The proposed SAC alleges facts that plausibly suggest that BNS engaged in a disinformation campaign to prevent Plaintiffs from learning of the big mistake—BNS did not purchase the insurance for which it took premiums—and that this disinformation caused Plaintiffs not to seek other avenues of disaster relief, which avenues were only available if there was no insurance coverage that would otherwise provide coverage.

**DATED**: February 1, 2019                    Respectfully submitted,

/s/Vincent Colianni, II
Vincent Colianni, II (V.I. Bar No. 768)
Vincent A. Colianni (V.I. bar No. 13)
**COLIANNI & COLIANNI**
1138 King Street
Christiansted, VI 00820
Telephone: (340) 719-1766
Facsimile: (340) 719-1770
mailbox@colianni.com


/s/Korey A. Nelson
Korey A. Nelson (V.I. Bar No. 2012)
C. Jacob Gower (*pro hac vice*)
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
jgower@burnscharest.com


/a/J. Russell B. Pate
J. Russell B. Pate, Esq. (V.I. Bar No. 1124)
**THE PATE LAW FIRM**
P.O. Box 890
St. Thomas, USVI 00804
Telephone: (340) 777-7283
Facsimile: (888) 889-1132
pate@sunlawvi.com

*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8
Plaintiffs' Reply in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 1st day of February, 2019, I electronically filed the foregoing with the Clerk of the Court using CM/ECF System, which will send a notification of such filing (NEF) to the following:

Carol A. Rich, Esq.
Malorie Winne Diaz, Esq.
5194 Dronningens Gade, Suite 3
St. Thomas, VI 00802
crich@dudleylaw.com
mdiaz@dudleylaw.com               /s/Vincent Colianni, II