## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| LORETTA S. BELARDO, ANGELA TUITT-SMITH, BERNARD A. SMITH, YVETTE ROSS-EDWARDS, AVON CANNONIER, ANASTASIA M. DOWARD, DARYL RICHARDS, EVERTON BRADSHAW, RODELIQUE WILLIAMS-BRADSHAW, PAMELA GREENIDGE, and WINSTON GREENIDGE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF NOVA SCOTIA, SCOTIABANK DE PUERTO RICO, INC. <br> Defendants. | 2018-CV-8 <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

## SECOND AMENDED CLASS ACTION COMPLAINT

1.      Plaintiffs bring this class action on behalf of Virgin Islands homeowners who have or had mortgages with the Bank of Nova Scotia ("BNS") serviced by Scotiabank de Puerto Rico, Inc. ("BNS-PR") and who were harmed when BNS and BNS-PR charged them for, but never purchased, lender-placed hazard insurance.

## NEED FOR ACTION

2.      This case involves egregious conduct on the part of BNS and BNS-PR that left hundreds of homeowners in the Virgin Islands without hazard insurance when Hurricanes Irma and Maria devastated the Territory.

3.      BNS exacerbated the situation by refusing to acknowledge its failure to procure hazard insurance and by engaging in a systematic misinformation campaign that left Plaintiffs and class members without an accurate understanding of their insurance coverage.

4.      The conduct of BNS and BNS-PR left Plaintiffs and class members without the

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

resources they need to repair their homes, without a reduction in the amount of their mortgage loans,
and without accurate information regarding the status of insurance claims.

5.      After waiting for more than a year without receiving insurance proceeds to which they
are entitled, Plaintiffs and class members have suffered enough.

6.      This Court must act to prevent BNS and BNS-PR from continuing their
misinformation campaign and avoiding their responsibilities to class members.

7.      Plaintiffs, on behalf of themselves and similarly situated borrowers, seek recovery of
all damages and relief, equitable and legal, as well as attorneys' fees and costs, as permitted by
applicable law.

## PARTIES

8.      Plaintiff Loretta S. Belardo is a citizen of St. Croix, Virgin Islands.

9.      Plaintiff Angela Tuitt-Smith is a citizen of St. Croix, Virgin Islands.

10.     Plaintiff Bernard A. Smith is a citizen of St. Croix, Virgin Islands.

11.     Plaintiff Yvette Ross-Edwards is a citizen of St. Croix, Virgin Islands.

12.     Plaintiff Avon Cannonier is a citizen of St. Thomas, Virgin Islands.

13.     Plaintiff Anastasia M. Doward is a citizen of St. Croix, Virgin Islands.

14.     Plaintiff Daryl Richards is a citizen of St. Croix, Virgin Islands.

15.     Plaintiff Everton Bradshaw is a resident of St. Croix, Virgin Islands.

16.     Plaintiff Rodelique Williams-Bradshaw is a citizen of St. Croix, Virgin Islands.

17.     Plaintiff Winston Greenidge is a citizen of St. Croix, Virgin Islands.

18.     Plaintiff Pamela Greenidge is a citizen of St. Croix, Virgin Islands.

19.     Defendant Bank of Nova Scotia is a multinational bank. BNS is incorporated in
Canada, with its principal place of business in Toronto, Ontario.

20.     Defendant Scotiabank de Puerto Rico, Inc. is incorporated in Puerto Rico, with its

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

principal place of business in Puerto Rico.

## JURISDICTION AND VENUE

21.     This is an action under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(m). This Court therefore has subject matter jurisdiction under 28 U.S.C. § 1331.

22.     The Court has supplemental jurisdiction over Plaintiffs' territorial law claims under 28 U.S.C. § 1367.

23.     The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this action is a class action within the meaning of 28 U.S.C. § 1332(d) as there are over 100 members in the class, diversity exists and the amount in controversy of all the class claims exceeds $5 million, exclusive of costs and interest.

24.     The Court has personal jurisdiction over BNS because the corporation regularly conducts business in the Virgin Islands and has sufficient minimum contacts with the Virgin Islands.

25.     The Court has personal jurisdiction over BNS-PR because the corporation regularly conducts business in the Virgin Islands, services loans issued to properties located in the Virgin Islands, and has sufficient minimum contacts with the Virgin Islands.

26.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A.     The BNS Mortgage Agreement

27.     BNS holds thousands of mortgages throughout the Virgin Islands, and issues residential home mortgages on St. Croix, St. Thomas, and St. John.

28.     BNS and its borrowers enter into a standard mortgage agreement (the "BNS Mortgage Agreement") prepared by BNS. All of the borrowers' agreements contain substantially the same terms and conditions. A true and correct copy of the BNS Mortgage Agreement is attached hereto as Exhibit

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

"A."

29.     The BNS Mortgage Agreement requires the borrower to maintain hazard insurance on the property securing the mortgage.

30.     If a borrower's hazard insurance policy lapses, the BNS Mortgage Agreement provides that BNS "may obtain insurance coverage, at Lender's option and Borrower's expense."  Exhibit A, p. 7.  The insurance referred to in this provision is often called "lender-placed insurance," and is also known as creditor-placed or force-placed insurance.

31.     The BNS Mortgage Agreement only permits BNS to collect premiums for lender-placed insurance on its borrowers' properties if, and only if, BNS uses the premiums **to obtain insurance coverage** for the properties.

32.     The BNS Mortgage agreement also contains the following provisions addressing the use of insurance proceeds in the event that the property becomes damaged:

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by the Lender, **shall be applied to restoration or repair of the Property**, if the restoration or repair is economically feasible and Lender's security is not lessened.
>
> . . .
>
> If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds **shall be applied to the sums secured by this Security Instrument**, whether or not then due, with the excess, if any, paid to Borrower.

Exhibit A, p. 8 (emphasis added).

33.     Thus, if the borrower's property suffers a loss, the BNS Mortgage Agreement requires BNS to either: a) apply any insurance proceeds to restoration or repair of the property; or b) in the event that restoration or repair is not economically feasible or BNS's security would be lessened, apply the insurance proceeds to the sums secured by the mortgage.

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

**B.    BNS charged Plaintiffs for, but never obtained, insurance.**

34.    At some point prior to August 1, 2017, BNS began collecting premiums for lender-placed insurance from Plaintiffs and class members.

35.    By collecting premiums for lender-placed insurance from Plaintiffs and class members, BNS was contractually obligated to use the premiums to obtain insurance coverage for the properties.

36.    BNS does not actually purchase lender-placed insurance for the borrower. Rather, BNS has a master policy already in place and adds each borrower's property to the master policy.

37.    Before August 1, 2017, BNS had a master policy (the "ASIC Policy") through American Security Insurance Company ("ASIC").  BNS obtained lender-placed insurance coverage for its Virgin Islands mortgages through the ASIC Policy.

38.    Effective August 1, 2017, BNS changed its loan servicer for its Virgin Islands mortgages from New Jersey-based Cenlar Corporation ("Cenlar") to BNS-PR.

39.    When BNS switched loan servicers on August 1, 2017, the ASIC Policy terminated.

40.    When the ASIC Policy terminated, Plaintiffs' and class members' properties were left without hazard insurance coverage.

41.    BNS and BNS-PR were both responsible for ensuring that Plaintiffs' and class members' properties were covered under a master insurance policy issued to BNS-PR and BNS.

42.    Even though neither BNS nor BNS-PR purchased lender-placed insurance coverage for Plaintiffs' and class members' properties after August 1, 2017, BNS and BNS-PR continued to charge Plaintiffs and class members–or had already charged them–premiums for lender-placed insurance coverage.

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

## C.   Despite paying premiums for lender-placed insurance, Plaintiffs' properties were insured when the Hurricanes struck.

43.     On September 6, 2017, Hurricane Irma struck the Virgin Islands, and Hurricane Maria struck the Virgin Islands on September 20, 2017, causing widespread destruction.

44.     After Hurricanes Irma and Maria struck the Virgin Islands, BNS's borrowers who had been paying premiums for lender-placed insurance and whose properties were damaged in the hurricanes contacted BNS to make claims under BNS's lender-placed policy.

45.     BNS directed its borrowers to provide it with damage estimates and stated that it would forward the estimates to its insurer. These statements were misleading because the Virgin Islands borrowers were not enrolled under BNS's forced placed policy.

46.     When the borrowers later inquired about the status of their claims, BNS continued to falsely represent that the borrowers were insured, assuring them that their claims were being processed. And when borrowers requested insurance certificates for the lender-placed coverage, BNS refused to comply. Borrowers had received certificates under the expired ASIC Policy, but no certificates were provided for any active policy.

47.     On January 30, 2018, BNS sent a form letter to its Virgin Islands borrowers who had paid premiums for lender-placed insurance. A true and correct copy of the January 30, 2018 form letter is attached hereto as Exhibit "B."

48.     The January 30, 2018 form letter contains the following statement:

> Because we did not have evidence that you had purchased or renewed hazard insurance on the property listed above, effective August 1, 2017, we have insured your property under our master policy, and we have added the related monthly premium cost to your mortgage loan escrow account.

*See* Exhibit B.

49.     This statement from the January 30, 2018 form letter is misleading because it advises that the Virgin Islands borrowers were covered under BNS's master policy effective August 1, 2017

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

when, in fact, no such coverage was available to the Virgin Islands borrowers as of August 1, 2017 and the Virgin Islands borrowers were not covered under BNS's master policy when Hurricanes Irma and Maria hit the Virgin Islands.

50.     On February 21, 2018, BNS sent a form letter to its Virgin Islands borrowers with lender-placed insurance. A true and correct copy of the February 21, 2018 form letter is attached hereto as Exhibit "C."

51.     The February 21, 2018 form letter states that BNS was making efforts to process lender-placed claims.  The letter also advises that BNS had remitted the claim to its insurance agent and states: "Once the insurance company completes its review, they may settle the claim, have an adjuster visit your property for an inspection or request additional information . . . ."

52.      The February 21, 2018 letter is false and misleading in that it fails to disclose that there was no lender-placed policy covering the borrowers' properties at the time when the Hurricanes struck.

**D.     The *Integrand* Lawsuit**

53.     On March 19, 2018, Integrand Assurance Company ("Integrand") filed suit against BNS and BNS-PR in the Superior Court of Puerto Rico in an action entitled *Integrand Assurance Co. v. Scotiabank of Puerto Rico, Inc., and Bank of Nova Scotia* (the "*Integrand* lawsuit"), Civ. No. SJ2018CV01442 (P.R. Super. Ct. Mar. 19, 2018).  A true and correct copy of the certified translation of the First Amended Complaint, filed April 19, 2018, is attached hereto as Exhibit "D."

54.     The *Integrand* lawsuit is a declaratory judgment action wherein Integrand seeks a declaration regarding the extent of available coverage under an insurance policy (the "Integrand Policy") that it issued to BNS-PR for the policy period November 30, 2016 to November 30, 2017.

55.     According to the *Integrand* First Amended Complaint, the Integrand Policy was issued to BNS-PR and BNS as named insureds and was initially negotiated to provide BNS and BNS-PR

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

with lender-placed coverage for a portfolio of approximately eight lender-placed *commercial* properties in the Virgin Islands with an estimated value of $1,394,850.  *See* Exhibit D, at ¶¶ 28–29.

56.    However, "after the passage of Hurricanes Irma and Maria, [BNS-PR] illegally and unilaterally added a new portfolio for a value of [$]67.6 million for the month of September 2017 in the Virgin Islands, when the estimated and reported value before the passage of the hurricanes for Force-placed of the Virgin Islands was always approximately around [$]1.3 million (amount estimated when the contract was negotiated)." Exhibit D, ¶ 33.

57.    The *Integrand* First Amended Complaint alleges that the increase in BNS's Virgin Islands lender-placed portfolio in the aftermath of Hurricanes Irma and Maria is attributable to either BNS's or BNS-PR's unilateral cancellation of "another portfolio of approximately [$]67.6 million that they had with another(other) insurance company(companies) that was(were) not Integrand." Integrand alleges that this portfolio was administered by Cenlar on behalf of BNS.  Exhibit D, ¶ 35.

58.    The *Integrand* lawsuit confirms that there is a dispute regarding the availability of coverage for Plaintiffs' and class members' claims and that, as a result, most Plaintiffs and class members did not receive sufficient insurance money to either repair their homes or pay down their mortgages.

**E.    BNS has continued to misrepresent to Plaintiffs and class members its failure to maintain lender-placed coverage.**

59.    Prior to the filing of this lawsuit, no adjusters had inspected any of Plaintiffs' properties in connection with damage from Hurricanes Irma and Maria.

60.    After the original complaint was filed in this case, BNS hired its own adjusters to inspect and prepare estimates for Plaintiffs' homes. The fact that BNS had to hire its own adjusters instead of relying on the adjusters of its lender-placed insurer is further evidence that the Virgin Islands properties were not covered by insurance at the time Hurricanes Irma and Maria made landfall.

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

61.     The adjuster inspections did not comport with industry standards for the inspection of residential properties after natural disasters, particularly hurricanes.

62.     The adjusters relied on erroneous assumptions regarding material and labor costs in the Virgin Islands, particularly in the wake of a natural disaster.  These erroneous assumptions resulted in the adjusters wildly undervaluing repair costs.

63.     In addition, BNS provided its adjusters with the ASIC policy to use in adjusting the Virgin Islands claims. This is further evidence that the Virgin Islands properties were not covered by insurance  at the time of the Hurricanes, as the ASIC Policy had expired on August 1, 2017.

64.     BNS has perpetrated a cover-up and charade for more than one year— and continues to do so.

65.     In reliance on BNS's false statements and omissions, Virgin Islands borrowers delayed taking legal action against BNS and either did not attempt to obtain other sources of funds, such as applying for government disaster relief assistance, or could not obtain government assistance because of requirements that they first exhaust their homeowner's insurance benefits.

66.     Plaintiffs also refrained from making repairs until they learned the extent of coverage they would receive for their claims based on BNS's repeated representations that Plaintiffs and class members were covered.

67.     As of the time of this filing, nearly fourteen months since Hurricanes Irma and Maria made landfall on the Virgin Islands, most Plaintiffs and class members have not received the necessary insurance proceeds from BNS's and BNS-PR's lender-placed insurer to either a) repair their homes or b) apply to the sums secured by their mortgages.

68.     Despite BNS's and BNS-PR's egregious failures to maintain insurance coverage for Plaintiffs' properties, BNS and BNS-PR continued to charge Plaintiffs and class members premiums for lender-placed insurance for months after the Hurricanes, and BNS has not reduced the total loan

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

amount for most Plaintiffs and class members.

69.     As a result of BNS's failure to perform its statutory and contractual obligation to maintain lender-placed coverage for its borrowers who paid for it, the borrowers have suffered damages, including the cost of repairs to their homes, the loss of use of their homes, payment for mortgages that should have been extinguished, emotional distress, annoyance, and inconvenience.

## CLASS REPRESENTATIVES

**A.     Plaintiff Loretta Belardo**

70.     Loretta S. Belardo owns a home on St. Croix at 246 Estate Campo Rico. She has a mortgage with BNS secured by her property.

71.     Belardo entered into a mortgage agreement with BNS containing language found in the BNS Mortgage Agreement when she received her home loan.

72.     Belardo paid premiums to BNS and BNS-PR for lender-placed insurance for her property, and believed that her property was covered under BNS' and BNS-PR's lender-placed insurance policy.

73.     BNS continued to charge Belardo for lender-placed insurance after August 1, 2017, even though her property was no longer covered after that date.

74.     Belardo's home was damaged by Hurricane Maria. Belardo promptly notified BNS of the damage and asked BNS to submit a claim to its lender-placed insurer.

75.     During the first week of November 2017, Patricia Clendenen, a BNS manager, told Belardo she had lender-placed insurance and that she should submit an estimate and photos to BNS.

76.     When Belardo later inquired about the status of her claim, BNS assured Belardo that her claim was being processed. That statement was false.

77.     BNS required Belardo to make mortgage payments for months after the Hurricanes despite the fact that the mortgage should have been extinguished.

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

**B.      Plaintiffs Angela Tuitt-Smith and Bernard A. Smith**

78.      Angela Tuitt-Smith and Bernard A. Smith own a home on St. Croix at 66-B Mars Hill,

Frederiksted. They have a mortgage with BNS secured by their property.

79.      The Smiths entered into a mortgage agreement with BNS containing language found

in the BNS Mortgage Agreement when they received their home loan.

80.      The Smiths paid premiums to BNS and BNS-PR for lender-placed insurance for their

property, and believed that their property was covered under BNS' and BNS-PR'S lender-placed

insurance policy. BNS continued to charge the Smiths for lender-placed insurance after August 1.

2017, even though their property was no longer covered after that date.

81.      The Smiths' home was damaged in Hurricane Maria.

82.      On November 2, 2017, the Smiths called BNS's St. Thomas branch to make an

insurance claim and spoke with Ms. Bertrand. Bertrand told the Smiths that they had lender-placed

insurance coverage and that they should submit an estimate. The Smiths submitted an estimate but

did not hear back from BNS.

83.      In a letter dated November 13, 2017, BNS informed the Smiths that their property

was insured by Marsh Saldana. The letter identifies Marsh Saldana as an insurance carrier, not an

insurance broker. When the Smiths contacted Marsh Saldana, they were told they were not insured. A

true and correct copy of the November 13, 2017 letter is attached hereto as Exhibit "E."

84.      The Smiths cannot afford to repair the damage to their home without the insurance

proceeds.

**C.      Plaintiff Yvette Ross-Edwards**

85.      Yvette Ross-Edwards owns a home on St. Croix at 16B Estate Whim. She has a

mortgage with BNS secured by her property.

86.      Ross-Edwards entered into a mortgage agreement with BNS containing language

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

found in the BNS Mortgage Agreement when she obtained her home loan.

87.    Ross-Edwards paid premiums to BNS and BNS-PR for lender-placed insurance for her property, and believed that her property was covered under BNS' and BNS-PR's lender-placed insurance policy.

88.    Ross-Edwards has paid premiums to BNS and BNS-PR for lender-placed insurance between August 1, 2017 and present.

89.    Ross-Edwards' home was damaged by Hurricane Maria. Ross-Edwards promptly notified BNS of the damage and asked BNS to submit a claim to its lender-placed insurer.

90.    BNS informed Ross-Edwards that it would process her claim and asked her for an estimate of her damages. BNS failed to disclose to Ross-Edwards that there was no lender-placed insurance covering her property.

91.    Ross-Edwards cannot afford to repair the hurricane damage to her home without the insurance proceeds.

**D.    Plaintiff Avon Cannonier**

92.    Avon Cannonier owns a home on St. Thomas at 14-45 Estate Frenchman's Bay. She has a mortgage with BNS secured by her property.

93.    Cannonier entered into a mortgage agreement with BNS containing language found in the BNS Mortgage Agreement when she received her home loan.

94.    Cannonier paid premiums to BNS and BNS-PR for lender-placed insurance for her property, and believed that her property was covered under BNS' and BNS-PR's lender-placed insurance policy.

95.    Cannonier has paid premiums to BNS and BNS-PR for the insurance between August 1, 2017 and present.

96.    Cannonier's home was damaged by Hurricane Irma. She called BNS on September 18,

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

2017 to make an insurance claim. A BNS representative told her she had lender-placed insurance with ASIC. Cannonier contacted ASIC on October 2, 2017 and filed a claim.

97.     On October 30, 2017, ASIC told Cannonier that her property was insured by Marsh Saldana, not ASIC. Cannonier then contacted Marsh Saldana and submitted a damage estimate and photos. Marsh Saldana later informed Cannonier that her property was not insured.

98.     Cannonier cannot afford to repair the hurricane damage to her home without the insurance proceeds.

**E.     Plaintiff Anastasia Doward**

99.     Anastasia Doward owns a home on St. Croix at 32 EB Whim Estate. She has a mortgage with BNS secured by her property.

100.     Doward entered into a mortgage agreement with BNS containing language found in the BNS Mortgage Agreement when she received her home loan.

101.     Doward paid premiums to BNS and BNS-PR for lender-placed insurance for her property, and believed that her property was covered under BNS' and BNS-PR's lender-placed insurance policy.

102.     BNS and BNS-PR continued to charge Doward for lender-placed insurance after August 1. 2017, even though her property was no longer covered after that date.

103.     Doward's home was damaged by Hurricane Maria. Doward promptly notified BNS of the damage and asked BNS to submit a claim to its lender-placed insurer.

104.     BNS told Doward to submit an estimate and photos and it would process her claim.

105.     When Doward later inquired about the status of her claim, BNS assured Doward that her claim was being processed. That statement was false.

106.     Doward cannot afford to repair the damage to her home without the insurance proceeds.

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

### F.      Plaintiff Daryl Richards

107.    Daryl Richards owns a home on St. Croix at 40 Estate La Grange. He has a mortgage with BNS secured by his property.

108.    Richards entered into a mortgage agreement with BNS containing language found in the BNS Mortgage Agreement when he received his home loan.

109.    Richards paid premiums to BNS and BNS-PR for lender-placed insurance for his property, and believed that his property was covered under BNS' and BNS-PR's lender-placed insurance policy.

110.    BNS and BNS-PR continued to charge Richards for lender-placed insurance after August 1, 2017, even though his property was no longer covered after that date.

111.    Richards' home was damaged by Hurricane Maria. Richards promptly notified BNS of the damage and asked BNS to submit a claim to its lender-placed insurer.

112.    During the last week of October 2017, Patricia Clendenen, a BNS manager, told Richards that his property was covered by a lender-placed insurance policy and that he should submit an estimate and photos to BNS.

113.    When Richards later inquired about the status of his claim, BNS stalled, assuring Richards that his claim was being processed. That statement was false, as there was no insurance covering his property.

114.    Richards cannot afford to repair the damage to his home without the insurance proceeds.

### G.      Plaintiffs Everton Bradshaw and Rodelique Williams-Bradshaw

115.    Everton Bradshaw and Rodelique Williams-Bradshaw own a home on St. Croix at 146 Mary's Fancy. They have a mortgage with BNS secured by their property.

116.    The Bradshaws entered into a mortgage agreement with BNS containing language

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

found in the BNS Mortgage Agreement when they received their home loan.

117.    The Bradshaws paid premiums to BNS and BNS-PR for lender-placed insurance for their property, and believed that their property was covered under BNS's and BNS-PR's lender-placed insurance policy.

118.    BNS and BNS-PR continued to charge the Bradshaws for lender-placed insurance after August 1, 2017, even though their property was no longer covered after that date.

119.    The Bradshaws' home was damaged by Hurricane Maria. The Bradshaws promptly notified BNS of the damage and asked BNS to submit a claim to its lender-placed insurer.

120.    BNS told the Bradshaws to submit an estimate and photos, and that it would process their claim.

121.    When the Bradshaws later inquired about the status of their claim, BNS assured the Bradshaws that their claim was being processed. That statement was false, as there was no insurance covering the property.

122.    The Bradshaws cannot afford to repair the damage to their home without the insurance proceeds.

**H.     Plaintiffs Pamela Greenidge and Winston Greenidge**

123.    Winston and Pamela Greenidge own a home on St. Croix at 28 Mary's Fancy. They have a mortgage with BNS secured by their property.

124.    The Greenidges entered into a mortgage agreement with BNS containing language found in the BNS Mortgage Agreement when they received their home loan.

125.    The Greenidges paid premiums to BNS and BNS-PR for lender-placed insurance for their property, and believed that their property was covered under BNS's and BNS-PR's lender-placed insurance policy.

126.    BNS continued to charge the Greenidges for lender-placed insurance after August 1,

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

2017, even though their property was no longer covered after that date.

127.     The Greenidges' home was damaged by Hurricane Maria. The Greenidges promptly notified BNS of the damage and asked BNS to submit a claim to its lender-placed insurer.

128.     BNS told the Greenidges to submit an estimate and photos, and that it would process their claim.

129.     When the Greenidges later inquired about the status of their claim, BNS assured the Greenidges that their claim was being processed. That statement was false, as there was no insurance covering the property.

130.     The Greenidges cannot afford to repair the damage to their home without the insurance proceeds.

## CLASS ALLEGATIONS

131.     Plaintiffs bring this action against BNS pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following classes:

132.     **Class**. All persons with residential home mortgage loans owned by BNS or serviced by BNS-PR on property in the U.S. Virgin Islands who were charged for lender-placed insurance coverage for the period including August 1, 2017 and thereafter.

133.     **Subclass**. All persons with residential home mortgage loans owned by BNS or serviced by BNS-PR on property in the U.S. Virgin Islands who were charged for lender-placed insurance coverage for the period including August 1, 0017 and thereafter, and who made claims for property damage caused by Hurricanes Irma and Maria under BNS' lender-placed insurance policy.

134.     Plaintiffs reserve the right to modify or amend the definitions of the proposed classes before the court determines whether certification is appropriate.

135.     BNS subjected Plaintiffs and the class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

136.   **Numerosity.** The proposed class is so numerous that joinder of all members would be impracticable. BNS sells hundreds of mortgage loans in the Virgin Islands. The individual class members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by BNS and BNS-PR. There are more than 100 putative class members, and it would be impractical for each member to bring suit individually. Plaintiffs do not anticipate any difficulties in the management of the class action.

137.   **Commonality.** There are questions of law and fact that are common to Plaintiffs' and class members' claims. These common questions predominate over any questions that go particularly to any individual member of the class. Among such common questions of law and fact are the following:

a.   Whether BNS or BNS-PR has a reinsurance or other financial obligation with respect to the payment of lender-placed claims;

b.   Whether BNS's and/or BNS-PR's policies and practices of refusing to file claims on behalf of borrowers charged for lender-placed insurance violates the standard mortgage agreement;

c.   Whether BNS and/or BNS-PR violated RESPA by charging Plaintiffs and class members for lender-placed insurance that does not provide coverage for their properties;

d.   Whether BNS and/or BNS-PR breached the implied covenant of good faith and fair dealing by failing to file Plaintiffs' and the class members' claims for damage to their homes;

e.   Whether BNS and/or BNS-PR violated the Virgin Islands Consumer Protection Act ("VICPA") by charging Plaintiffs premiums for insurance and then failing to obtain the insurance for which it accepted premiums;

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

    f.      Whether the conduct of BNS and/or BNS-PR was willful, wanton, fraudulent, an malicious so as to justify an award of punitive damages;

    g.      Whether BNS and/or BNS-PR made negligent misrepresentations to Plaintiffs regarding the availability of coverage in the aftermath of Hurricanes Irma and Maria;

    h.      Whether BNS and/or BNS-PR made negligent misrepresentations to Plaintiffs regarding the availability of coverage in the aftermath of Hurricanes Irma and Maria;

    i.      Whether BNS and/or BNS-PR converted property of Plaintiffs by taking premiums from Plaintiffs for lender-placed insurance and then not providing the insurance;

    j.      Whether BNS and/or BNS-PR was unjustly enriched by Plaintiffs' payments of premiums for lender-placed insurance when it did not use the premiums to purchase the insurance; and

    k.      Whether BNS and/or BNS-PR was negligent in its failure to obtain the lender-placed insurance for which it required Plaintiffs to pay premiums.

138.    **Typicality.** Plaintiffs are members of the class they seek to represent. Plaintiffs' claims are typical of the class members' claims because of the similarity, uniformity, and common purpose of BNS' and BNS-PR's unlawful conduct. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of BNS's wrongful conduct.

139.    **Adequacy of Representation.** Plaintiffs are adequate representatives of the classes they seek to represent and will fairly and adequately protect the interests of those classes. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiffs and

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

the unnamed class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

140.     To prosecute this case, Plaintiffs have chosen the undersigned law firms, experienced in class action litigation and have the financial and legal resources, to litigate this case.

141.     **Predominance.** The questions of law or fact common to Plaintiffs' and each class member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiffs and the unnamed class members are based on BNS's blanket policy and practice of refusing to process or adjust lender-placed claims and on BNS's unnecessary charges for a master insurance policy that does not even cover its own interest in its collateral.

142.     Common issues predominate where, as here, liability can be determined on a class-wide basis, even when there will be some individualized damage determinations.

143.     **Superiority.** A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

        a.     The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

        b.     Individual suits may not be cost-effective or economically maintainable as individual actions; and

        c.     The action is manageable as a class action.

### COUNT I
### Violation of RESPA
### (as to both BNS and BNS-PR)

144.     Plaintiffs repeat and reallege paragraphs 1–143, above.

145.     Beginning August 1, 2017, BNS and BNS-PR began imposing costs for lender-placed insurance on Plaintiffs and class members without providing the insurance for which it charged Plaintiffs and class members.

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

146.    The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(m), provides that all charges related to lender-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable.

147.    BNS' and BNS-PR's charges to Plaintiffs and class members for lender-placed insurance were neither bona fide nor reasonable in that no insurance coverage was obtained or provided in exchange for the charges.

148.    As a result of BNS' and BNS-PR's violation of RESPA, Plaintiffs and class members have suffered actual damages, including mental and emotional distress, and statutory damages in the amount of $2,000 for each class member per violation made by each defendant.

149.    Pursuant to 12 U.S.C. § 2605(f)(3), Plaintiffs and class members are entitled to their reasonable attorneys' fees and costs incurred in connection with this action.

## COUNT II
### Breach of Contract
### (as to both BNS and BNS-PR)

150.    Plaintiffs repeat and reallege paragraphs 1–149, above.

151.    BNS agreed to obtain lender-placed insurance covering Plaintiffs' and class members' properties in exchange for premiums paid by Plaintiffs and class members and agreed to use the insurance proceeds to either repair Plaintiffs' and class members' homes or to pay down their mortgages.

152.    BNS-PR agreed to obtain lender-placed insurance covering Plaintiffs' and class members' properties by requiring Plaintiffs and Class members to make and accepting said payments.

153.    Plaintiffs and class members paid premiums to BNS and BNS-PR for the lender-placed insurance and otherwise performed their contractual obligations.

154.    BNS and BNS-PR breached their contracts with Plaintiffs and class members by failing to enroll Plaintiffs' and class members' properties under their lender-placed insurance policy beginning

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

August 1, 2017 and by failing to repair Plaintiffs' and class members' homes or pay down their mortgage.

155.    As a result of BNS' and BNS-PR's breach of contract, Plaintiffs and class members received nothing in return for their payment of premiums and each Plaintiff's and class member's property was not covered by insurance when Hurricanes Irma and Maria struck the Virgin Islands in September 2017.

156.    Plaintiffs and class members have suffered damages, including cost of repairs to their property, the loss of use of their property, delay damages, and the amount paid in premiums for illusory insurance coverage.

## COUNT III
### Breach of the Implied Duty of Good Faith & Fair Dealing
### (as to both BNS and BNS-PR)

157.    Plaintiffs repeat and reallege paragraphs 1–156, above.

158.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

159.    BNS and BNS-PR breached their duty of good faith and fair dealing by misleading Plaintiffs and class members as to the nature and extent of their insurance coverage after Hurricanes Irma and Maria.

160.    In addition, BNS has breached the duty of good faith and fair dealing by refusing to ensure that Plaintiffs' and class members' claims were timely investigated and failing to timely assess the loss to Plaintiffs' and class members' properties.

161.    BNS and BNS-PR repeatedly provided Plaintiffs and class members with misinformation regarding the status of their claims and the availability of coverage effective August 1, 2017.

162.    BNS and BNS-PR also required Plaintiffs and class members to pay premiums for

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

lender-placed insurance and then failed to ensure that Plaintiffs' and class members' properties were continuously covered by BNS's lender-placed insurance master policy. As a result, Plaintiffs' and class members' properties were not covered under BNS's master policy as of August 1, 2017.

163.    In addition, neither BNS nor BNS-PR disclosed to Plaintiffs or class members that it failed to maintain lender-placed insurance coverage on August 1, 2017 when the ASIC Policy was terminated, leaving Plaintiffs' and class members' properties without insurance coverage.

164.    Through the aforementioned conduct, BNS and BNS-PR have acted arbitrarily, capriciously, and in a manner inconsistent with the reasonable expectations of Plaintiffs and class members.

165.    The failure of BNS and BNS-PR to obtain the insurance for which it charged Plaintiffs and class members and its deceptive practices in the wake of the Hurricanes defeat the underlying purpose of the contract between BNS and Plaintiffs and class members regarding lender-placed insurance.

166.    The conduct of BNS and BNS-PR was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement between the parties and the reasonable expectations of the parties.

**COUNT IV**
**V.I. Consumer Protection Act**
**(as to both BNS and BNS-PR)**

167.    Plaintiffs repeat and reallege paragraphs 1–166, above.

168.    The Virgin Islands Consumer Protection Act ("VICPA"), 12A V.I.C. § 331, prohibits a corporation from engaging in deceptive trade practices in connection with the sale of goods or services.

169.    BNS and BNS-PR violated the VICPA by charging Plaintiffs and class members premiums for insurance that did not provide coverage for their homes and by falsely representing that Plaintiffs' and class members' properties were insured under BNS' and BNS-PR's lender-placed

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

insurance policy.

170.    As a result of BNS's and BNS-PR's violations of the VICPA, Plaintiffs and class members have suffered compensatory, consequential, and equitable damages.

171.    BNS's and BNS-PR's violations of the VICPA were willful, wanton, fraudulent and malicious, justifying an award of punitive damages. Plaintiffs and class members are also entitled to treble damages under the VICPA.

### COUNT V
### Unjust Enrichment
### (as to both BNS and BNS-PR)

172.    Plaintiffs repeat and reallege paragraphs 1-171, above.

173.    BNS and BNS-PR were enriched by Plaintiffs' and class members' payment of premiums for lender-placed insurance.

174.    Additionally, BNS and BNS-PR were enriched by mortgage payments made by Plaintiffs and class members after the Hurricanes because Plaintiffs' properties were not covered by lender-placed insurance and, therefore, coverage did not exist for Plaintiffs' and class members' claims of property damage in connection with the Hurricanes.

175.    BNS' and BNS-PR's enrichment came at the expense of Plaintiffs and class members.

176.    BNS and BNS-PR had appreciation or knowledge of the benefit they received through Plaintiffs' and class members' payment of premiums for lender-placed insurance.  Furthermore, BNS and BNS-PR had appreciation or knowledge of their failure to procure insurance for Plaintiffs' and class members' properties effective August 1, 2017.

177.    The circumstances were such that in equity or good conscience BNS and BNS-PR should return premiums to Plaintiffs and Class members.

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

## COUNT VI
### Negligent Misrepresentation
### (as to BNS only)

178.    Plaintiffs repeat and reallege paragraphs 1–177, above.

179.    BNS supplied Plaintiffs and class members with false information in several ways, including: 1) directing Plaintiffs and class members to provide damage estimates in the wake of Hurricanes Irma and Maria and advising that BNS would forward the estimates to its insurer when lender-placed insurance was not available for the properties; 2) repeatedly making false representations to Plaintiffs and class members advising that they were insured and assuring Plaintiffs and class members that their claims were being processed when, in fact, Plaintiffs' properties were not insured; 3) sending the January 30, 2018 form letter to Plaintiffs and class members providing misinformation regarding the coverage available at the time of the hurricanes; and 4)  sending Plaintiffs and class members the February 21, 2018 letter which fails to disclose the lack of available lender-placed coverage.

180.    The misrepresentations made by BNS were supplied in the course of BNS's business.

181.    BNS failed to exercise reasonable care or competence in making the false representations to Plaintiffs and class members.

182.    Plaintiffs and class members justifiably relied upon BNS's multiple and repeated misrepresentations regarding the acquisition of lender-placed insurance coverage.  Plaintiffs and class members were justified in this reliance because BNS is in the business of issuing mortgages and is responsible for acquiring lender-placed insurance on properties when it collects premiums for same from its borrowers.

183.    Based on their justifiable reliance, Plaintiffs and class members 1) continued making mortgage payments on the properties under the false but justified belief that BNS had acquired insurance on the properties; 2) refrained from attempting to take ameliorative action to repair damage

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

to their homes until learning what would be covered by insurance; and 3) continued to pay premiums for lender-placed insurance under the false but justified belief that BNS had purchased the insurance it was contractually obligated to purchase.

184.     Plaintiffs and class members have suffered pecuniary loss as a result of their justifiable reliance upon the misrepresentations of BNS.

## COUNT VII
## Fraudulent Misrepresentation
## (as to BNS only)

185.     Plaintiffs repeat and reallege paragraphs 1–184, above.

186.     BNS made several misrepresentations of fact to Plaintiffs and class members, including the following:

a.     Directing Plaintiffs and class members to provide damage estimates in the wake of Hurricanes Irma and Maria and advising that it would forward the estimates to its insurer when lender-placed coverage was not available for the properties;

b.     Repeatedly making false representations to its borrowers that they were insured and assuring the borrowers that their claims were being processed when, in fact, Plaintiffs' and class members' properties were not insured;

c.     Sending the January 30, 2018 form letter to its borrowers providing misinformation regarding the coverage available at the time of the hurricanes; and

d.     Sending to borrowers the February 21, 2018 letter which fails to disclose the lack of available lender-placed coverage.

187.     At the time that BNS made its several misrepresentations of fact, BNS knew or had reason to know its misrepresentations of fact were false.

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

188.    BNS made its fraudulent misrepresentations with the intention of inducing Plaintiffs and class members to act or refrain from acting on it by:  1) continuing to make mortgage payments under the false but justified belief that BNS had acquired insurance on the properties; 2) refraining from attempting to take ameliorative action to repair damage to their homes until learning what would be covered by insurance; and 3) continuing to pay premiums for lender-placed insurance under the false but justified belief that BNS had purchased the insurance it was contractually obligated to purchase.

189.    Plaintiffs and class members have suffered pecuniary loss as a result of their justifiable reliance upon the misrepresentations of BNS.

### COUNT VIII
### Conversion
### (as to both BNS and BNS-PR)

190.    Plaintiffs repeat and reallege paragraphs 1–189, above.

191.    By collecting premiums for lender-placed insurance without using said premiums to purchase the required insurance, BNS and BNS-PR have intentionally exercised dominion or control over money belonging to Plaintiffs and class members in a manner that so seriously interferes with the right of Plaintiffs and class members to control said money that BNS should be required to pay Plaintiffs and class members the full value of the premiums for lender-placed insurance with interest beginning on the date that Plaintiffs' property was converted.

192.    Additionally, BNS and BNS-PR have continued to require Plaintiffs and class members to make mortgage payments when the insurance that BNS failed to obtain was to be used to either satisfy Plaintiffs' and class members' debts or repair the property.  As such, BNS and BNS-PR have converted Plaintiffs' and class members' money through their collection of mortgage payments and lender-placed insurance premiums in a manner that so seriously interferes with Plaintiffs' and class members' right to control the money that BNS and BNS-PR should be required

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

to pay Plaintiffs and class members the full value of all mortgage payments made by Plaintiffs and class members from August 1, 2017 through the present with interest beginning on the date that Plaintiffs' property was converted.

## COUNT IX
### General Negligence
### (as to both BNS and BNS-PR)

193.    Plaintiffs repeat and reallege paragraphs 1–192, above.

194.    BNS and BNS-PR owed Plaintiffs and class members the duty of the utmost good faith, honesty, and equity upon accepting the premiums for lender-placed insurance.  In addition, BNS and BNS-PR owed Plaintiffs and class members a duty to use the premiums collected for lender-placed insurance to purchase lender-placed insurance.  BNS and BNS-PR also owed Plaintiffs and class members a duty to refrain from misrepresenting the nature and amount of insurance purchased by BNS and BNS-PR and to refrain from misrepresenting the available coverage for Plaintiffs' and class members' properties.

195.    BNS and BNS-PR breached those duties by:

   a.    Failing to procure lender-placed insurance for Plaintiffs' and class members' properties effective August 1, 2017; and

   b.    Failing to disclose to Plaintiffs and class members that BNS and BNS-PR had failed to procure lender-placed insurance for Plaintiffs' properties effective August 1, 2017.

196.    As a direct and proximate result of BNS' and BNS-PR's conduct, Plaintiffs and class members have suffered damages for which BNS and BNS-PR are liable.

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

      WHEREFORE, Plaintiffs, on behalf of themselves and all class members similarly situated,

seek a judgment in their favor against BNS and BNS-PR, awarding statutory damages, actual damages,

punitive damages, treble damages, attorneys' fees, and costs.

**DATED:** February 18, 2019             Respectfully submitted,

/s/ Korey A. Nelson
Korey A. Nelson (V.I. Bar No. 2012)
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com

/s/ Vincent Coliann, II
Vincent Colianni, II (V.I. Bar No. 768)
Vincent A. Colianni (V.I. bar No. 13)
**COLIANNI & COLIANNI**
1138 King Street
Christiansted, VI 00820
Telephone: (340) 719-1766
Facsimile: (340) 719-1770
mailbox@colianni.com

/s/ J. Russell B. Pate
J. Russell B. Pate, Esq. (V.I. Bar No. 1124)
**THE PATE LAW FIRM**
P.O. Box 890
St. Thomas, USVI 00804
Telephone: (340) 777-7283
Facsimile: (888) 889-1132
pate@sunlawvi.com

Plaintiffs' Second Amended Complaint
*Belardo et al. v. Bank of Nova Scotia*, 2018-CV-8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day February, 2019, a copy of the foregoing was served by email and CMECF on all counsel of record.

*Attorneys for Plaintiffs*

/s/ Korey A. Nelson