## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| LORETTA S. BELARDO, ANGELA TUITT-SMITH, BERNARD A. SMITH, YVETTE ROSS-EDWARDS, AVON CANNONIER, ANASTASIA M. DOWARD, DARYL RICHARDS, EVERTON BRADSHAW, RODELIQUE WILLIAMS-BRADSHAW, PAMELA GREENIDGE, and WINSTON GREENIDGE on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF NOVA SCOTIA, SCOTIABANK DE PUERTO RICO, INC. <br> Defendants. | **2018-CV-8** <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

This action arises out of corporate conduct that left hundreds of homeowners in the Virgin Islands to face severe property damage in the wake of Hurricanes Irma and Maria without any insurance. In their Second Amended Complaint ("SAC"), Plaintiffs describe in detail the egregious conduct of Bank of Nova Scotia ("BNS") and Scotiabank de Puerto Rico, Inc. ("BNS-PR") (collectively, "Defendants"). Defendants charged Plaintiffs for lender-placed insurance, then failed to purchase the very insurance for which they collected premiums. And when Plaintiffs' homes were left uncovered by insurance in the wake of the Hurricanes, Defendants doubled down on their failure by concocting a misinformation campaign designed to prevent Plaintiffs from knowing the true nature of Defendants' failures. In the end, Defendants have left Plaintiffs without the resources they need to repair their homes, without a reduction in the amount of their mortgage loans, and without accurate information regarding the status of insurance claims.

Despite the SAC's detailed and specific allegations, Defendants have filed a motion to dismiss, primarily arguing that the allegations of the SAC "are false."[1] Of course, disputes regarding the veracity of factual allegations in a complaint are not a basis for dismissal under Rule 12(b)(6). Rather, the Court treats all allegations in a complaint as true, and the Court construes the complaint in the light most favorable to the Plaintiffs. Under the correct standard, the SAC undoubtedly states a claim upon which relief can be granted, and Defendants' motion to dismiss should be denied in its entirety.

## I.      Background

BNS holds thousands of mortgages throughout the Virgin Islands, and issues residential home mortgages on St. Croix, St. Thomas, and St. John.[2] Plaintiffs are homeowners who had mortgages with BNS.[3] As alleged in the SAC, each Plaintiff entered into a standard mortgage agreement (the "BNS Mortgage Agreement") with BNS, which permits BNS to obtain lender-placed insurance coverage in the event that a borrower's hazard insurance policy lapses.[4] However, the BNS Mortgage Agreement permits BNS to collect premiums for lender-placed insurance if, and only if, BNS uses the premiums to obtain insurance coverage for the properties.[5]

At some point prior to August 1, 2017, BNS began collecting premiums for lender-placed insurance from Plaintiffs.[6] By collecting these premiums for lender-placed insurance from Plaintiffs, BNS was contractually bound to use the premiums to obtain insurance coverage for the properties.[7]

---

[1] *See, e.g.*, ECF No. 54 at 6 ("The SAC Relies Upon False Allegations").

[2] ECF No. 45 at ¶ 27.

[3] *See, e.g., id.* at ¶¶ 70-73.

[4] *Id.* at ¶ 30.

[5] *Id.* at ¶ 31.

[6] *Id.* at ¶ 34.

[7] *Id.* at ¶ 35.

BNS generally procures lender-placed insurance by adding each borrower's property to a master policy that BNS already has in place.[8] Prior to August 1, 2017, BNS had a master policy (the "ASIC Policy") through American Security Insurance Policy ("ASIC").[9] However, on August 1, 2017, BNS changed its loan servicer for its Virgin Islands' properties to BNS-PR, at which point the ASIC policy terminated.[10] When the ASIC Policy terminated, Plaintiffs' properties were left without hazard insurance coverage.[11] Thus, when the Hurricanes struck the Territory, Plaintiffs had no insurance covering their properties despite having paid their premiums for the coverage.[12]

Rather than coming clean about their failure to obtain lender-placed insurance, Defendants actively misled Plaintiffs about the availability of coverage.[13] BNS directed borrowers to obtain a damage estimate and advised Plaintiffs that it would forward the estimates to its insurer; this despite the fact that there was no insurer.[14] It refused to provide its borrowers with insurance certificates for an active policy.[15] It even sent a letter to Plaintiffs stating that "we have insured [their] property under our master policy,"[16] and another letter advising Plaintiffs that "[o]nce the insurance company completes its review, they may settle the claim, have an adjuster visit your property for an inspection or request additional information."[17] All this despite the fact that BNS was aware that no insurer had acknowledged a policy covering Plaintiffs' properties.[18]

---

[8] *Id.* at ¶ 36.

[9] *Id.* at ¶ 37.

[10] *Id.* at ¶¶ 38-39.

[11] *Id.* at ¶ 40.

[12] *Id.* at ¶ 42.

[13] *See id.* at ¶¶ 45-52.

[14] *Id.* at ¶ 45.

[15] *Id.* at ¶ 46.

[16] *Id.* at ¶¶ 47-48.

[17] *Id.* at ¶ 49.

[18] *See id.* at ¶ 187.

To demonstrate the existence of a dispute over insurance coverage, Plaintiffs make reference in their SAC to *Integrand Assurance Co. v. Scotiabank of Puerto Rico, Inc., and Bank of Nova Scotia* (the "*Integrand* lawsuit"), Civ. No. 5J2018CV01442 (P.R. Super. Ct. Mar. 19, 2018).[19] The *Integrand* lawsuit is a declaratory judgment action filed by the Integrand Assurance Company ("Integrand") seeking a declaration that Integrand does not owe lender-placed insurance coverage under a policy that it issued to BNS and BNS-PR as named insureds.[20]

The SAC asserts, on behalf of the class, nine causes of action.[21] As to both defendants, Plaintiffs allege a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(m), breach of contract, breach of the implied duty of good faith and fair dealing, violation of the Virgin Islands Consumer Fraud and Deceptive Business Practices Act (the "CFDBPA" or "VICPA"), 12 V.I.C. § 331, unjust enrichment, conversion, and general negligence. Plaintiffs also bring negligent misrepresentation and fraudulent misrepresentation claims against BNS. Plaintiffs seek statutory, actual, punitive, and treble damages, as well as attorneys' fees and costs.

## II.    Legal Standards

### A.       Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a pleading, and the Court's role  is to determine whether the plaintiff has alleged a "plausible claim for relief."[22] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[23] The claimant is not required to "set out in detail the facts upon which the claim for relief is based, but must merely

---

[19] *See Id.* at ¶¶ 53-58.

[20] *Id.* at ¶ 54.

[21] *See id.* at ¶¶ 144-196.

[22] *Sprauve v. CBI Acquisitions, LLC*, No. CIV.A 09-165, 2010 WL 3463308, at *3 (D.V.I. Sept. 2, 2010) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678  (2009).

*Belardo et al. v. Bank of Nova Scotia et al.*, 2018-CV-8
Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Complaint

provide a statement sufficient to put the opposing party on notice of the claim."[24] And when engaging in a Rule 12(b)(6) analysis, the Court accepts "all of a pleading's well-pleaded facts as true and draw[s] all reasonable inferences therefrom in the light most favorable to the plaintiff."[25]

Under Rule 9(b), a party that alleges fraud or mistake must state with particularity the circumstances constituting fraud or mistake, while malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. However, courts are to "apply Rule 9(b) with some flexibility and should not require plaintiffs to plead issues that may have been concealed by defendants."[26] Rule 9(b)'s requirements are satisfied when "the complaint describes the circumstances of the alleged fraud with precise allegations of date, time or place or by using some means of injecting precision and some means of substantiation into their allegations of fraud."[27]

### B. Rule 12(b)(1)

When considering a motion made pursuant to Rule 12(b)(1), the question is "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court."[28] All material allegations in the complaint are taken as true.[29] "Indeed, the 'standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6).'"[30]

### III.   Argument

---

[24] *Foulk v. Donjon Marine Co.*, 144 F.3d 252, 256 (3d Cir. 1998) (internal citations omitted).

[25] *Id.* (internal citations omitted).

[26] *Fin. Tr. Co. v. Citibank, N.A.,* 351 F. Supp. 2d 329, 331 (D.V.I. 2004) (quoting *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 658 (3d Cir. 1998)).

[27] *Kiskidee, LLC v. Certain Interested Underwriters at Lloyd's of London Subscribing To Policy No. NB043060b*, No. CIVILACTION2009077, 2012 WL 952752, at *3 (D.V.I. Mar. 21, 2012) (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 (3d Cir. 2002)).

[28] *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

[29] *DiGregorio v. Starwood Hotel & Resorts Worldwide, Inc.*, No. CV 2017-23, 2018 WL 1249273, at *1 (D.V.I. Mar. 9, 2018)

[30] *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1(3d Cir. 2006)).

### A.      Whether the SAC's allegations of are "false" is irrelevant on Rule 12(b) review.

Defendants' primary argument is that the allegations of the SAC are false.[31] But whether all allegations in a complaint are indisputably accurate is not the standard at the Rule 12(b)(6) stage. *Twombly* counseled that on Rule 12(b)(6) the Court assume "'the allegations in the complaint are true (even if doubtful in fact).'"[32]  Of course, it is Plaintiffs' contention that the allegations in the SAC are true. But the veracity of those allegations is not presently at issue before the Court. **This is not summary judgment or trial.**[33]

Defendants have resorted to attacking the SAC as "false" at several points, knowing that the appropriate legal standard is whether the complaint states a claim upon which relief can be granted. Plaintiffs allege that Defendants charged them lender-placed insurance by deducting premiums from their escrow accounts, but then failed to actually purchase insurance with that money. Plaintiffs also allege that, in the wake of the Hurricanes, BNS engaged in a systematic disinformation campaign which caused Plaintiffs to have an inaccurate understanding of the insurance coverage available, which caused Plaintiffs to forgo, among other things, non-insurance disaster assistance.

Under this set of *accepted-as-true* facts, the law invariably provides a remedy. When you charge a customer for a product, you have to buy the product. If you don't buy the product you promised,

---

[31] *See* ECF No. 54 at 6 ("The SAC Relies Upon False Allegations").

[32] *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007), *as amended* (Nov. 20, 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  *See also Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) ("We take as true all the factual allegations of the Third Amended Complaint and the reasonable inferences that can be drawn from them, *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n. 27 (2010), but we disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 129 S.Ct. at 1949. "To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sheridan,* 609 F.3d at 262 n. 27 (quoting *Iqbal,* 129 S.Ct. at 1949). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*").

[33] *See Sprauve v. CBI Acquisitions, LLC*, No. CIV.A 09-165, 2010 WL 3463308, at *1 n.1, *5 (D.V.I. Sept. 2, 2010) (accepting plaintiff's allegations as true for purposes of Rule 12(b)(6) analysis and reserve[ing] summary judgment consideration for another day").

you are responsible for the losses sustained as a result. And then when you mislead them after the fact, you are responsible for their further injury.

### B.      The exhibits attached to Defendants' motion cannot and should not be considered.

Defendants argue that the mortgage contracts entered into between Plaintiffs and BNS are different than the BNS Mortgage Agreement attached as Exhibit A to the SAC.[34] In support, Defendants attach eight documents which they claims are mortgage contracts entered into by Plaintiffs and BNS.[35] Never mind that none of these exhibits are authenticated as required by Rule 901 of the Federal Rules of Evidence; they **are not integral to and are not explicitly relied upon** in the SAC. Whether the documents attached to Defendants' memorandum constitute the agreements between Plaintiffs and BNS is a quintessential question of fact, to be determined after the parties have engaged in discovery, and not in a motion to dismiss. Accordingly, these attached exhibits should not be considered in this motion to dismiss analysis.

When analyzing a motion to dismiss, courts are generally limited to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."[36] Only in very narrow circumstances will a court consider documents extrinsic to the complaint on Rule 12(b) review.[37] The extrinsic document must be "*integral to or explicitly relied* upon in the complaint."[38] But in this case, the exhibits attached to Defendants' motion are neither integral to nor explicitly relied upon in the SAC. Plaintiffs allege that Defendants breached the BNS Mortgage Agreement, a

---

[34] *See* ECF No. 54 at 6–7.

[35] ECF Nos. 54-1 through 54-8.

[36] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *see also* Fed. R. Civ. P. 10(c) ("A copy of the written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[37] *See id.* at 249–50 (finding improper the district court's reliance on extrinsic documents).

[38] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).

*Belardo et al. v. Bank of Nova Scotia et al.*, 2018-CV-8
Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Complaint

copy of which is attached as Exhibit A to the SAC.[39] The documents proffered by Defendants are entirely different from those presented by Plaintiffs and are not relied upon by Plaintiffs.

Pursuant to Rule 12(d),[40] if a court considers matters outside the pleadings, it must treat a motion to dismiss as "one for summary judgment under Rule 56." However, courts are understandably reluctant to convert a motion to dismiss into a motion for summary judgment when the case is in its early stages and no discovery has yet been propounded;[41] in such a case, it is better to "reserve summary judgment considerations for another day."[42] By asking the Court to consider exhibits extrinsic to the SAC, Defendants are attempting to convert their motion to dismiss into a motion for summary judgment, which is not appropriate at this stage. Thus, the Court should (1) not convert this proceeding into a motion for summary judgment, and (2) not consider BNS's twenty-one exhibits when analyzing Plaintiffs' motion to dismiss.

> **C.** **The *Integrand* lawsuit simply confirms the existence of a coverage dispute, and that Defendants were aware of this dispute when they misled Plaintiffs about coverage for their homes.**

---

[39] *See* ECF. 36-1 at 3-4; ECF No. 36-3.

[40] Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

[41] *See Capitol First Corp. v. Todd*, No. CIV A 04-6439 MLC, 2006 WL 3827329, at *6 (D.N.J. Dec. 27, 2006) ("The Court also declines, in light of the absence of discovery in the case, to convert OMS and Troster's [Rule 12(b)(6)] motion into a motion for summary judgment."); *King v. Doe*, No. CIV. 10-573 JBS/AMD, 2011 WL 2669221, at *4 (D. Del. July 6, 2011) ("A lack of discovery may direct the Court against conversion.") (citation omitted)); *Aruanno v. Booker*, No. CIV A 08-305 (JLL), 2008 WL 5070540, at *3 (D.N.J. Nov. 24, 2008) ("Here, the Court follows the lead of the *Harvey* and *Sindram* courts and decides against converting the present motion into one for summary judgment. Given that the plaintiff is proceeding *pro se* and that no discovery has yet taken place, the Court looks only to the face of the complaint and evaluates the present motion under Fed. R. Civ. P. 12(b)(6)."); *Black v. N. Hills Sch. Dist.*, No. CIV.A. 06-807, 2007 WL 2728601, at *1 (W.D. Pa. Sept. 17, 2007) ("However, courts have held that exercise of the court's discretion is not warranted where there has been little or no discovery conducted by the parties.").

[42] *Sprauve v. CBI Acquisitions, LLC,* No. CIV.A 09-165, 2010 WL 3463308, at *5 (D.V.I. Sept. 2, 2010).

*Belardo et al. v. Bank of Nova Scotia et al.*, 2018-CV-8
Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Complaint

Defendants devoted nearly four pages of their motion to dismiss to litigating the merits of the *Integrand* lawsuit,[43] even though Plaintiffs have only included a reference to it in their SAC to demonstrate that (a) a coverage dispute exists regarding the availability of lender-placed coverage for Plaintiffs' properties; and (b) BNS was aware of a coverage dispute at the very same time that it was telling Plaintiffs that their properties were covered.[44] Plaintiffs are not asking this Court to rule on the merits of the *Integrand* lawsuit or even, as Defendants assert, to "assume the truth of factual allegations made in another judicial proceeding."[45] Plaintiffs have simply alleged the existence of a lender-placed coverage-related lawsuit involving Defendants to put to bed any denial by Defendants regarding the existence of a coverage dispute.[46] Despite Defendants' protestations to the contrary, the Court is well-within its authority to take judicial notice of the existence of the *Integrand* lawsuit.[47]

The very cases cited by Defendants emphasize that Plaintiffs' reference to the *Integrand* lawsuit was proper.  For instance, Defendants cite to *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, where the Seventh Circuit found that the district court erred when it dismissed certain claims after taking "judicial notice of **facts** from a prior unrelated proceeding … without determining that the

---

[43] *See* ECF No. 54 at 7-11.

[44] *See* ECF No. 45 at ¶ 58 ("The *Integrand* First Amended Complaint confirms that there is a dispute regarding the availability of coverage for Plaintiffs' and class members' claims and that, as a result, most Plaintiffs and class members did not receive sufficient insurance money to either repair their homes or pay down their mortgages.").

[45] *See* ECF No. 54 at 7.

[46] *See* BNS's renewed motion to dismiss the First Amended Complaint., Rec. Doc. 10, at p. 13 ("Plaintiffs ask this Court to accept their wholly unsupported and bizarre conclusion that the only possible explanation for the delay in the processing of Scotiabank's FPI claims must be a plot to cover up the inexplicable failure to place the FPI coverage.") (emphasis removed from original).

[47] *See, e.g.*, *Allied Nut & Bolt, Inc. v. NSS Indus., Inc.*, 920 F. Supp. 626, 629 (E.D. Pa. 1996) (taking judicial notice of a complaint filed in a separate state court action and noting that "this court may take judicial notice of it as it is a pleading in a court proceeding and as neither party has disputed its authenticity"); *In re Advanced Packaging & Prod. Co.*, 426 B.R. 806, 824 (C.D. Cal. 2010) (taking judicial notice of a docket in a separate matter); *Nero AG v. MPEG LA, L.L.C.*, No. 10-CV-3672-MRP-RZ, 2010 WL 4366448, at *8 (C.D. Cal. Sept. 14, 2010) (taking judicial note, for purposes of a motion to dismiss, of several documents including a complaint in a separate action).

*Belardo et al. v. Bank of Nova Scotia et al.*, 2018-CV-8
Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Complaint

**facts** were undisputed."[48] But the *Lease* court also acknowledged that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records."[49] Here, Plaintiffs aren't asking the Court to take judicial notice of any facts derived from the *Integrand* lawsuit; Plaintiffs merely make reference to the *Integrand* lawsuit so that the Court can take judicial notice of the lawsuit's very existence.[50] That the *Integrand* lawsuit exists, and that it involves a coverage dispute involving Integrand and Defendants is a "universal truth" which is entirely capable of being judicially noticed.[51]

> **D.   Plaintiffs' allegations in the SAC adequately plead each claim.**
>
> > **i.   Real Estate Settlement Procedures Act**

It is difficult to imagine a more adequately pled violation of RESPA [12 U.S.C. § 2605(m)] than the factual allegations made by Plaintiffs in this action. Plaintiffs do not merely allege a coverage dispute. Rather, they allege that Defendants failed to obtain lender-placed insurance for their properties beginning on August 1, 2017 when the ASIC Policy was terminated.[52] Further, Plaintiffs allege that despite not purchasing lender-placed insurance coverage for Plaintiffs' properties after August 1, 2017, Defendants continued to charge Plaintiffs for lender-placed coverage.[53]

---

[48]128 F.3d 1074, 1076 (7th Cir. 1997) (emphasis added).

[49] *Id.* at 1082.

[50] *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("To determine what issues were actually litigated in the *Wal–Mart* courts, we take judicial notice of Plaintiffs' briefs in those courts and the transcript of the *Wal–Mart* fairness hearing.").

[51] *See Lease*, 128 F.3d at 1081 (noting that judicial notice is "an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence").

[52] *See* ECF No. 45 at ¶¶ 38–41.

[53] *Id.* at ¶ 42.

*Belardo et al. v. Bank of Nova Scotia et al.*, 2018-CV-8
Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Complaint

RESPA demands that all charges related to lender-placed insurance be "bona fide and reasonable."[54] Plaintiffs allege that Defendants took premiums from Plaintiffs for lender-placed insurance that Defendants never actually purchased. **Insurance that does not exist is not bona fide**.[55] And if the insurance is non-existent, premiums charged to the borrower for the non-existent insurance cannot be reasonable. Plaintiffs' factual allegations, accepted as true on Rule 12(b)(6) review, more than plausibly state a claim that Defendants' charges were neither *bona fide* nor *reasonable*.

Defendants attempt to divert the Court's attention away from their own RESPA violations by blaming Plaintiffs in two ways, arguing that (1) Plaintiffs breached their mortgages, and (2) Plaintiffs were "on notice that [lender-placed insurance] was placed only for Scotiabank's protection."[56] The former attempt at blame fails, as any breach by Plaintiffs was cured when Defendants debited their escrow accounts for insurance. And the latter fails because "notice" does not permit Defendants to simply fail to purchase the insurance *after* they charge the borrower premiums for same. If the lender-placed insurance has not been purchased, it is simply not bona fide.

Defendants also attempt to rebut Plaintiffs' RESPA claim by noting that BNS had purchased lender-placed insurance for the period prior to August 1, 2017.[57] That's a red herring, because the SAC alleges that Defendants failed to obtain lender-placed insurance **effective August 1, 2017**, when BNS switched mortgage servicers to BNS-PR.[58]

---

[54] 12 U.S.C. § 2605(m).

[55] Black's Law Dictionary contains the following definition of bona fide: "1. Made in good faith; without fraud or deceit. 2. Sincere; genuine." Black's Law Dictionary (10th ed. 2014).

[56] *See* ECF. No. 54 at 11.

[57] *See* ECF. No. 54 at 12.

[58] In support of this claim, Plaintiffs have made the following factual allegations: a) BNS switched loan servicers on August 1, 2017; b) when BNS switched loan servicers, the ASIC Policy terminated; c) when the ASIC Policy terminated, Plaintiffs' properties were left without insurance coverage; and

*Belardo et al. v. Bank of Nova Scotia et al.*, 2018-CV-8
Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Complaint

Finally, Defendants' argument that Plaintiffs have failed to allege an injury under RESPA is disingenuous on two fronts. First, **RESPA provides for statutory damages** and costs to be paid by "[w]hoever fails to comply with any provision of [§ 2605]."[59] As described above, Plaintiffs have adequately alleged that Defendants failed to comply with § 2605(m).  Second, Plaintiffs have undeniably alleged injury; namely, the lack of bona fide insurance has made it difficult if not impossible to make home repairs and that Plaintiffs paid money for a product they did not receive.[60]

### ii.   Breach of the Mortgage Agreements and the implied duty of good faith and fair dealing.[61]

Defendants spent more than a page of their motion persuading the Court that BNS is the only insured on any lender-placed insurance policy, and that, accordingly, Plaintiffs lack standing to seek damages based upon a breach of the lender-placed insurance policy.[62] This was unnecessary because Plaintiffs are *not* alleging a breach of any insurance policy; they are alleging a **breach of the mortgage contracts that Plaintiffs entered into with BNS.** The mortgage agreements obligated Defendants to use Plaintiffs premiums for lender-placed insurance to actually purchase lender-placed insurance, and Defendants failed to do so. And Defendants were obligated to fulfill this obligation in good faith.[63]

At the outset, Plaintiffs note that a dispute exists here regarding which contracts were breached.  Plaintiffs allege breach of contracts containing language found in the BNS Mortgage

---

d) despite this lack of coverage, Defendants continued to charge Plaintiffs or had already charged them. *See* ECF No. 45 at ¶¶ 39-42.

[59] 12 U.S.C. § 2605(f).

[60] *See* ECF 45 at ¶¶ 42, 147, 148, 4.

[61] Defendants claim–without any explanation–that Plaintiffs' breach of the implied duty of good faith and fair dealing claim is deficient "for the same reasons" as the breach of contract claims. But because Plaintiffs' breach of contract claim is perfectly viable, their breach of the duty of good faith and fair dealing claim is similarly viable.

[62] *See* ECF No. 54 at 13-14.

[63] *See Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 562 (D.V.I. Feb. 27, 2004).

Agreement.[64] Defendants, by contrast, have attached exhibits to their motion to dismiss which they claim are the operative mortgage contracts. For the reasons described above, Plaintiffs allege that the breach of contract is the breach of the BNS Mortgage Agreement—*not* a breach of any of the unauthenticated documents attached to Defendants' motion.

Momentarily setting aside the distinctions between the language of the BNS Mortgage Agreement and the documents attached to Defendants' motion, Plaintiffs emphasize that no version of the contracts contain language that would permit Defendants to charge borrowers for lender-placed insurance and then simply not use the collected funds to purchase insurance.

The main thrust of Defendants' argument is that the mortgage contracts entered into by BNS afforded BNS "the option, but not the obligation, to purchase FPI coverage."[65] This may be true, and Plaintiffs do not quibble with Defendants' position that once a borrower's insurance coverage lapsed, BNS had the discretion to choose whether to take Plaintiffs' money for lender-placed insurance.   However, once Defendants charged BNS's borrowers, they lacked the discretion to decide whether to actually purchase the coverage. Plaintiffs' central allegation is that Defendants charged Plaintiffs for a product they did not procure. No provision of any of the various contractual provisions permit such a result. **Theft is neither a contractual right nor an exercise of discretion.[66]**

The cases cited by Defendants are consistent with Plaintiffs' position that the discretion enjoyed by the lender is limited to deciding whether to require the borrower to pay for lender-placed

---

[64] *See* ECF No. 36-3.

[65]  ECF No. 54 at 14.

[66]  Any interpretation of the mortgage agreements that would permit Defendants to take premiums and not purchase the promised policy would be unconscionable, and unenforceable as a matter of Virgin Islands public policy. *See* 11A V.I.C. § 2-302. If the Court is inclined to accept Defendants' construction, then Plaintiffs pray they be "afforded a reasonable opportunity to present evidence as to [the mortgage agreements'] commercial setting, purpose and effect to aid the court in making the determination." *Id.* at (2).

insurance upon the lapse of borrower-purchased coverage.[67] Moreover, Defendants' reliance on *Ebner v. Bank of Nova Scotia* is entirely misplaced.[68] First, *Ebner* considered the matter on summary judgment. More importantly, *Ebner* stands for the unremarkable proposition (which Plaintiffs have never disputed) that the burden to maintain insurance is the borrower's, and that once the borrower fails obtain the insurance, the is free to decide whether to purchase lender-purchased insurance.[69] Here, by contrast, Defendants **opted to charge Plaintiffs for lender-purchased insurance**, at which point Defendants became obligated to actually obtain the insurance.

### iii. Virgin Islands Consumer Fraud and Deceptive Business Practices Act

The CFDPBA (or "VICPA") makes it "unlawful for any person to engage in unfair methods of competition or unfair or deceptive trade acts or practices in the conduct of any trade or commerce."[70] A plaintiff states a CFDPBA claim by pleading the following three elements:

> (1) defendant is a "person" under CFDBPA; (2) defendant is engaged in unfair methods of competition, unfair, or deceptive trade acts or practices; and (3) that the unfair method of competition or deceptive trade act or practice occurred in the conduct of any trade or commerce.[71]

---

[67] *See Custer v. Homeside Lending, Inc.*, 858 So. 2d 233, 240 (Ala. 2003) (noting that, unlike in the instant matter, plaintiffs alleged that the lender "force-plac[ed] flood insurance in amounts that exceeded outstanding mortgage loan balances"); *Thomas & Cheryl Koziol, Inc. v. Lasalle Nat. Bank*, No. A-0849-12T2, 2014 WL 1660381, at *1 (N.J. Super. Ct. App. Div. Apr. 28, 2014) (unpublished) (where the servicer only placed property insurance, but not flood insurance, while the mortgaged property was in foreclosure proceedings, the borrower was not in possession of the premises, and there is no mention of whether the borrower's escrow account had been debited premiums for flood insurance).

[68] No. 1:18-CV-00002, 2019 WL 404969, at *8 (D.V.I. Jan. 31, 2019).

[69] *Id.* at *7.

[70] 12A V.I.C. § 331.

[71] *Gov't of United States Virgin Islands v. Takata Corp.*, No. ST-16-CV-286, 2017 WL 3390594, at *36 (V.I. Super. June 19, 2017). Nothing in the language of *Takata* or the CFDPBA requires a plaintiff to prove that a defendant acted with fraudulent intent. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("Because [New York's deceptive trade practice act] extends well beyond common-law fraud to cover a broad range of deceptive practices, and because a private action under [the Act] does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under [the Act]is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the barebones notice-pleading requirements of Rule 8(a)."). Nor does plaintiffs' claim under the Act depend on allegation that Scotiabank acting with an

*Belardo et al. v. Bank of Nova Scotia et al.*, 2018-CV-8
Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Complaint

The SAC adequately pleads all three elements. First, Defendants are "persons" under the CFDBPA, as that definition includes corporations, companies, and business entities or associations.[72] Second, Plaintiffs allege in great detail that Defendants have engaged in, and are currently engaged in, "deceptive business practices," which definition explicitly includes "false, falsely disparaging, or misleading oral or written statements."[73] Finally, Plaintiffs have alleged that Defendants' deceptive business practice occurred in the conduct of "trade or commerce," which definition expressly includes "the distribution of any services and any property."[74] Defendants do not once argue that Plaintiffs failed to allege these three elements. Nonetheless, Defendants make three arguments seeking dismissal of the CFDBPA, all which rely on cases and statutes from other jurisdictions.

### a.   Plaintiffs adequately plead an injury.

Defendants argue that Plaintiffs have not alleged an injury. This is simply not true as detailed above.[75] And as a result of BNS's false statements, Virgin Islands borrowers delayed taking legal action against BNS and either did not attempt to obtain other sources of funds—such as not applying for government disaster relief assistance—or could not obtain such assistance because of

---

intent to defraud. Thus, plaintiffs were not required to plead their claim under the Act with particularity.

[72] 12A V.I.C. § 303(h) defines a "person" as "any natural person or his legal representative, partnership, corporation, domestic or foreign, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof."

[73] *See, e.g.,* ECF No. 45 at ¶¶ 178-189 (setting forth detailed allegations of fraudulent and negligent misrepresentations). 12AV.I.C. § 303(e) defines a "deceptive business practice" as:

> any false, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind made in connection with the sale, lease, rental, or loan of consumer goods or services, or in the extension of consumer credit or in the collection of consumer debts which has the capacity, tendency or effect of deceiving or misleading consumers.

[74] 12A V.I.C. § 303(k) defines "trade or commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated."

[75] *See, e.g., supra,* Section III(D)(i).

requirements that they first exhaust their homeowner's insurance benefits.[76] Moreover, Plaintiffs allege that BNS's misrepresentations have caused Plaintiffs to a) continue making mortgage payments under the false but justified belief that BNS had acquired insurance on the properties, b) refrain from attempting to take ameliorative action to repair damage to their homes until learning what would be covered by insurance, and c) continue to pay premiums for lender-placed insurance under the false but justified belief that BNS had purchased the insurance it was contractually bound to purchase.[77]

Defendants also argue that BNS's alleged false statements did not impact Plaintiffs' original decision to enter into the mortgage agreements. That argument must fail, as Plaintiffs' complaint is not with the *contracting*, but on Defendants' *conduct* after they took Plaintiffs' escrowed money. Plaintiffs "paid premiums to BNS and BNS-PR for lender-placed insurance [for their properties], and believed that [their properties were] covered under BNS' and BNS-PR's lender-placed insurance policy."[78]

### b.    Plaintiffs are "consumers".

Defendants' second argument is that Plaintiffs are not consumers. "Consumer" is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."[79]

---

[76] ECF No. 45 at ¶¶ 65, 178-189.

[77] ECF No. 45 at ¶ 188.

[78] *See* ECF No. 45 at ¶¶ 72, 80, 87.

[79] 12A V.I.C. § 303(d) defines "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." Though not addressed in Defendants' brief, Plaintiffs note that the lender-placed insurance at issue in this case satisfies the definition of "merchandise."[79] Under the CFFPBA, "merchandise" is defined as "any article of commerce usually sold directly to the consumer." The *Takata* court explicitly rejected an interpretation of the definition where the "items of commerce are ordinarily sold immediately, *without deviation*, to consumers.[79] In *Takata*, this meant that the plaintiff could qualify as a consumer of merchandise even though the consumer item

According to Defendants, "Scotiabank is the FPI consumer [because it] negotiated for and is the named insured under the FPI policy."[80] Thus, Defendants take the unsupported position that Plaintiffs cannot be considered consumers of the lender-placed insurance **for which they paid premiums**.

Unsurprisingly, Defendants do not cite to the only Virgin Islands case addressing the scope of "consumer" under the CFDPBA: *Government of United States Virgin Islands v. Takata Corp.*[81] In *Takata*, the Superior Court addressed the scope of the definition head-on, ultimately concluding "that the [Virgin Islands] Legislature did not intend for an individual to qualify as a 'consumer' only where contractual privity exists between the individual and defendant."[82] The *Takata* court considered several factors, noting that "CFDPBA affords 'any person or business that is injured by a deceptive trade practice' the right to 'bring a class action to protect the rights of Virgin Islands consumers' for damages," and does not explicitly require contractual privity.[83] The *Takata* court also acknowledged that the legislative intent of the CFDPBA was that it "be liberally construed to protect the consuming public from deceptive and unfair acts or practices in the conduct of any trade or commerce."[84]

As in *Takata*, Plaintiffs are "consumers". They paid premiums to Defendants for lender-placed insurance, and Defendants were responsible for obtaining the insurance. The lack of contractual privity between Plaintiffs and the insurer providing the lender-placed insurance is of no moment.

---

was not sold directly to the consumer.  The same goes here: lender-placed insurance is still merchandise, even if it is not sold directly to Plaintiffs.

[80] ECF No. 54 at 16.

[81] No. ST-16-CV-286, 2017 WL 3390594, at *37 (V.I. Super. June 19, 2017).

[82] *Id.* at *39.

[83] *Id.*

[84] *Id.* at *40 (quoting 12A V.I.C. § 302).

In any event, Plaintiffs are still the consumers of the lender-placed insurance under the CFDPBA, as the lender-placed insurance ultimately redounds to their benefit. But even more fundamentally, Plaintiffs are consumers of the mortgage contracts which they entered, several provisions of which explicitly set forth the protocol for purchasing the lender-placed coverage for which Plaintiffs paid premiums but did not receive. They are "consumers" on this basis alone.

### c.   Defendants present no evidence that CFDPBA is preempted.

Defendants' final argument is a one-paragraph, scattershot claim that preemption somehow applies to bar application of the CFDPBA. Plaintiffs do not believe this preemption argument merits a response, other than to say that Defendants have provided absolutely no explanation for how or why preemption would apply in this case. Defendants refer to 12 U.S.C. § 2616, which itself prohibits the Bureau of Consumer Protection from finding that a state law is inconsistent with RESPA provisions if the law "gives greater protection to the consumer." Moreover, "In the context of a narrow preemption provision which strikes only state law which is 'inconsistent,' the state law must actually interfere with the operation of federal law for it to become preempted—a state law is not preempted merely because it is different from the federal law."[85] Defendants have made no such claim.

### iv.   Unjust enrichment.

Defendants argue that Plaintiffs' claims are governed by RESPA and the mortgage contracts, and therefore, an unjust enrichment claim cannot also be pursued.[86] However, courts in the Virgin Islands recognize that "a court may not construe a [plaintiff's] first claim as an admission against another alternative or inconsistent claim."[87] That includes unjust enrichment.[88]

---

[85] *Briggs v. Countrywide Funding Corp.*, 949 F. Supp. 812, 814 (M.D. Ala. 1996).

[86] *See* BNS Opposition, Rec. Doc. 36, at p. 19.

[87] *Jefferson v. Bay Isles Assocs., L.L.L.P.*, No. ST-09-CV-186, 2011 WL 3853332, at *12 (V.I. Super. Feb. 1, 2011).

*Belardo et al. v. Bank of Nova Scotia et al.*, 2018-CV-8
Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Complaint

The SAC satisfies the elements of an unjust enrichment claim, and Plaintiffs seek this relief in the alternative.[89] Alternative pleading is appropriate when "there is a question as to the validity of the contract in question." Here, a dispute exists as to whether the governing contracts speak to this particular situation—whether Defendants can contractually take premiums but not buy insurance. This case is in too nascent a stage for dismissal of the alternative claim of unjust enrichment, and dismissal risks delay if discovery reveals that Plaintiffs' claims do not lie in contract.

Finally, Defendants claim, without citation, that the mortgage agreements bar Plaintiffs from bringing an unjust enrichment claim. As explained above, Defendants should be precluded from referring to documents extrinsic to the SAC on Rule 12(b)(6) review. Any potential contractual bar to an unjust enrichment claim must be dealt with after the commencement of discovery.

### v.   Negligent and fraudulent misrepresentation.

Defendants' sole argument in favor of dismissing Plaintiffs' negligent and fraudulent misrepresentation claims is that "Plaintiffs' allegations are not supported by the facts." With risk to being redundant, the veracity of Plaintiffs' allegations is simply not part of the Rule 12(b)(6) analysis. Notably, Defendants do not once argue in their motion-to-dismiss memorandum that Plaintiffs failed to allege their negligent and fraudulent misrepresentations with particularity as required by Rule 9(b). Nor can they.[90] Thus, Plaintiffs' fraudulent and negligent misrepresentation claims are not subject to dismissal on Rule 12(b)(6) grounds.

### vi.   Conversion

---

[88] *Id.*

[89] *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012) (alternative to breach of contract claim); *see also Charleswell*, 308 F. Supp. 2d at 561 (same, but in context of promissory estoppel).

[90] *See* ECF No. 45 ¶¶ 178-184 (adequately pleading all elements of the fraudulent misrepresentation claim) and ¶¶ 185-189 (adequately pleading all elements of the negligent misrepresentation claim).

Defendants' curt conversion argument must fail. "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."[91] Plaintiffs allege that Defendants have intentionally exercised, and continue to intentionally exercise, dominion or control over money belonging to Plaintiffs by collecting premiums for lender-placed insurance without using said premiums to purchase the required insurance.[92] By collecting premiums from Plaintiff without actually purchasing the insurance, Defendants converted Plaintiffs' money.

### vii.   Negligence

Defendants argue that the SAC fails to allege any of the elements of a negligence claim, despite the fact that all elements are present. Defendants also argue that they had no duty to procure lender-placed insurance. But as this Court has counseled, "A company that undertakes to procure insurance for another and through fault or neglect fails to do so can be held liable in negligence."[93]

Defendants arguments here are similar to those made in *Charleswell v. Chase Manhattan Bank, N.A.*, where the court addressed another case involving the defendant-mortgagee's failure to procure lender-placed insurance for its borrowers.[94] The *Charleswell* court recognized that under the allegations of the complaint, the defendant-mortgagee "owed plaintiffs a duty to procure or provide the agreed upon insurance as brokers or insurers.[95]

Here, as in the *Charleswell*, Plaintiffs allege Defendants owed them the duty of utmost good faith, honesty, and equity upon taking premiums for lender-placed insurance.[96] Plaintiffs also allege

---

[91] *Ross v. Hodge,* No. S.CT.CIV. 2010-0089, 2013 WL 942746, at *8 (V.I. Mar. 7, 2013).

[92] ECF No. 45 at ¶190.

[93] *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 571 (D.V.I. 2004).

[94] *Id.*

[95] *Id.* at 525-26.

[96] ECF No. 45 at 194.

*Belardo et al. v. Bank of Nova Scotia et al.*, 2018-CV-8
Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Complaint

that Defendants breached their duties by failing to procure lender-placed insurance effective August

1, 2017 and by failing to disclose this failure to Plaintiffs.

## IV. Conclusion

When a bank deducts money from a lender's escrow account for the purpose of buying

insurance, it must by the insurance. The SAC pleads more than sufficient factual matter, accepted as

true, and drawing all reasonable inferences therefrom, that Defendants acted contrary to the law and

owe Plaintiffs recompense.

**COLIANNI & COLIANNI, LLC**
Attorneys for Plaintiffs


DATED: March 29, 2019          By:      /s/Vincent Colianni, II
                                        Vincent Colianni, II
                                        V.I. Bar No. 768
                                        Vincent A. Colianni
                                        V.I. bar No. 13
                                        Marina Leonard
                                        V.I. Bar R2058
                                        1138 King Street
                                        Christiansted, VI 00820
                                        Telephone: (340) 719-1766
                                        Facsimile: (340) 719-1770


**BURNES CHAREST LLP**
Attorneys for Plaintiffs


DATED: March 29, 2019          By:      /s/Korey A. Nelson
                                        Korey A. Nelson
                                        V.I. Bar No. 2012
                                        C. Jacon Gower (*Pro Hac Vice*)
                                        365 Canal Street, Suite 1170
                                        New Orleans, LA 70130
                                        Telephone: (504) 799-2845
                                        Facsimile: (504) 881-1765

*Belardo et al. v. Bank of Nova Scotia et al.*, 2018-CV-8
Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Complaint

**THE PATE LAW FIRM**
Attorneys for Plaintiffs

DATED: March 29, 2019                    By:    /s/J. Russell B. Pate
                                                J. Russell B. Pate
                                                V.I. Bar No. 1124
                                                P.O. Box 890
                                                St. Thomas, VI 00804
                                                Telephone: (340) 777-7283
                                                Facsimile: (888) 889-1132

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of March, 2019, I electronically filed the foregoing with the Clerk of the Court using CM/ECF System, which will send a notification of such filing (NEF) to the following:

Carol A. Rich, Esq.
Malorie Winne Diaz, Esq.
5194 Dronningens Gade, Suite 3
St. Thomas, VI 00802
crich@dudleylaw.com
mdiaz@dudleylaw.com                    /s/Vincent Colianni, II