IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

LAVERN A. CLAXTON, )
)
      Plaintiff )
)
v. ) Civil Action No. 19-cv-0069 (KAJ)
)
ORIENTAL BANK (formerly BANK OF )
NOVA SCOTIA) and JOHN DOES 1-10, )
)
      Defendants.

MEMORANDUM OPINION

Lee J. Rohn, Lee J. Rohn & Associates, 1101 King Street, St. Croix, VI 00820, *Counsel for Plaintiff*

Carol Ann Rich, Malorie Diaz, Dudley Rich, 5194 Dronningens Gade, Suite 3, St. Thomas, VI 00802, *Counsel for Defendant*

August 25, 2022
Wilmington, Delaware

1

JORDAN, *Circuit Judge*, sitting by designation.

## I. INTRODUCTION

This case arises from a dispute over a mortgage loan between borrower Lavern A. Claxton and lender Oriental Bank, the successor-in-interest to The Bank of Nova Scotia (the "Bank").[1] The Bank has moved to dismiss Claxton's fifteen-count second amended complaint (the "Complaint"), which alleges that the Bank breached the terms of its mortgage agreement with Claxton and violated federal and Virgin Islands law. Claxton's claims all draw on a common core of operative fact, with one fact above all in importance: the Bank purchased insurance for Claxton's property after she neglected to do so. The insurance policy was acquired to protect the Bank's security interest and did not fully protect Claxton financially against the damage her house suffered when Hurricane Maria struck in 2017. Because Claxton's terrible misfortune does not render plausible any of the fifteen counts in the Complaint, I will grant the Bank's motion to dismiss. The dismissal is with prejudice because Claxton's claims remain conclusory, at best, after three rounds of briefing over two and a half years, and she has given no indication of how they would be improved if she were given further leave to amend.

---

[1] For ease of reference, I refer to actions taken by either The Bank of Nova Scotia or Oriental Bank as being taken by the "Bank."

## II.    BACKGROUND[2]

In April 2009, Claxton executed a $233,000 mortgage note with the Bank, secured by property she purchased on St. Thomas. (D.I. 41-1 (mortgage agreement).)[3] The mortgage agreement required, among other things, that Claxton maintain insurance for the mortgaged property to cover loss or damage, including from natural disasters, like hurricanes. (*Id.* § 6.1.) If Claxton did not procure insurance, the mortgage agreement allowed the Bank to obtain coverage to protect its security interest. (*See id.* § 6.4 ("Should Mortgagor fail at any time to maintain such insurance coverage, Mortgagee may, but shall not be required, to obtain such coverage[.]").) In that event, the Bank would pay the premiums and any other fees, which it would then charge to Claxton, along with any penalties or interest. (*See id.* § 6.3 ("Mortgagee may ... make the required premium payment together with any interest and penalties then owing."); D.I. 36 (the Complaint) ¶ 7.) Claxton refers to that arrangement as the Bank "force-plac[ing]" insurance (D.I. 36 ¶ 7), and, understanding that to be common terminology, so do I. If the property was destroyed or damaged while the principal on the mortgage note

---

[2] The following background facts are rendered in the light most favorable to Claxton. *See Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) ("When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a district court must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.")

[3] Although the mortgage agreement was first submitted by the Bank with its motion to dismiss and was not attached to the Complaint, it is properly before me in this procedural posture, as discussed, *infra*, at Section III.B. In dismissing the Complaint, I treat the parties' mortgage agreement – which is public, undisputedly authentic, and central to this dispute – as part of the record.

3

remained outstanding, the Bank could, "in its absolute discretion," apply the proceeds of the force-placed insurance policy to pay off the principal amount of the loan or to fund the repair of the property. (D.I. 41-1 § 6.7.)

Because Claxton did not purchase insurance for the property, the Bank obtained force-placed insurance beginning in 2014 at the latest. (D.I. 36 ¶ 7.) In September 2017, Hurricane Maria devastated the region, causing "substantial damage to [Claxton]'s dwelling and property." (*Id.* ¶ 8.) Six months later, she submitted a claim of loss under the force-placed insurance. (*Id.* ¶ 9.) The insurance provider then sent adjusters to appraise the damage to her home, resulting in a $20,000 estimate. (*Id.* ¶¶ 12-17.) At around the same time, she separately obtained an estimate of $125,000 in damage. (*Id.* ¶¶ 15-16.) The lower figure was ultimately paid on her claim.[4] (*Id.* ¶ 17.) According to Claxton, the unresolved damage to her property resulted in the loss of rental income she had previously had from her home, depriving her of the ability to pay her mortgage. (*Id.* ¶ 28.)

She filed suit, and the latest version of her Complaint sets out fifteen counts: (I) misrepresentation, (II) breach of express and implied contract; (III) estoppel; (IV) negligence, sounding in negligent misrepresentation; (V) fraud; (VI) illegal tying under the Bank Holding Company Act (the "BHCA"), 12 U.S.C. § 1972; (VII) breach of fiduciary duties; (VIII) breach of implied covenant of good faith and fair dealing; (IX)

---

[4] The Bank appended materials to its motion to dismiss evidencing that, contrary to the Complaint, Claxton was paid approximately $30,000. D.I. 41, Ex. G. We, however, accept as true the facts as alleged in the Complaint. *See infra* Section III.B.

4

violation of the Real Estate Settlement Procedures Act (the "RESPA"), 12 U.S.C. § 2601, *et seq.*; (X) unjust enrichment; (XI) tortious interference with a business relationship; (XII) conversion of chattels or personal property; (XIII) intentional or negligent infliction of emotional distress; (XIV) breach of mortgage agreement; and (XV) deceptive trade practices under 22 V.I.C. § 1201 *et seq.*

### III. DISCUSSION

Each of Claxton's claims depends on either conclusory allegations or an incorrect interpretation of the law.

#### A. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for failure to state a claim. "In considering a Rule 12(b)(6) motion, courts must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016). Under Rule 9, claims for fraud are held to a higher pleading standard: "the circumstances constituting fraud" must be stated "with particularity." Fed. R. Civ. P. 9(b). That requires the plaintiff "to place the defendant on notice of the precise misconduct with which it is charged." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018). Such precision includes "the date, time and place of the alleged fraud" or, in the alternative, "some measure of substantiation[.]" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Still, a defendant moving to dismiss

5

for failure to state a claim has the burden of persuasion. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

### B. The Mortgage Agreement Is Incorporated into the Pleadings

The Bank's briefing on its motion to dismiss begins by asking that I consider the many documents appended to its motion to dismiss, which the Bank says refute Claxton's narrative.[5] (D.I. 41 at 5-11.) Claxton argues that those materials, including the mortgage agreement, are outside the pleadings and that the "Complaint does not refer to a particular 'mortgage loan agreement' and does not reference duties owed by a residential mortgage lender." (D.I. 43 (opposition to motion to dismiss) at 4.) Hence, she says, nothing outside the Complaint can be considered. (D.I. 43 at 2-7.) She is wrong about the mortgage agreement, for the reasons explained below. As for the other materials, this motion can be resolved without reference to them, and I do not need to decide whether taking them into account is permissible.

District courts may rely on documents appended to a motion to dismiss that are "integral to ... the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). That remains true so long as such documents are part of the public

---

[5] The Bank includes with its motion to dismiss numerous documents that all relate, in some degree, to the mortgage agreement. Those include a notice to Claxton of the Bank's renewal of insurance coverage dated January 30, 2018 (Exhibit B); a similar notice from May 9, 2014 (Exhibit C); documentation showing that, in 2014, Claxton purchased insurance, so the Bank canceled the force-placed insurance (Exhibit D); notices of renewed insurance coverage from August 2015 and July and September 2016 (Exhibits E and F); insurance disbursement checks for just under $30,000 (Exhibit G); a signed settlement agreement between Claxton and the Bank (Exhibit H); and a home inspection report from June 2018 (Exhibit I).

6

record or are "undisputedly authentic[.]" *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *accord Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

The mortgage agreement here defines the relationship between Claxton and the Bank, along with their rights and responsibilities with respect to obtaining insurance – a fact Claxton readily admits. (*See* D.I. 43 at 8 (referencing "a contractual agreement by which [the Bank] agreed to enter into a real property mortgage loan transaction with [her] and to provide for servicing of the mortgage loan").) It is obviously integral to Claxton's claims, and indeed she represents in her answering brief that there was a breach of the mortgage agreement. (*Id.*); *cf. In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("Because the complaint directly challenged the prospectus, the district court properly considered the prospectus in deciding whether to grant the Rule 12(b)(6) motion."). Further, because title 33, section 2362 of the Virgin Islands Code requires that mortgages be publicly recorded, the mortgage agreement at issue here is a matter of public record. *See United States v. Real Estate-Land Title & Tr Co.*, 102 F.2d 582, 586 (3d Cir. 1939), *aff'd*, 309 U.S. 13 (1940) (treating mortgage agreements as part of the public record). Lastly, Claxton does not challenge its authenticity. I will therefore rely on it in deciding this motion.

## IV. The Breach of Contract Claims (Counts II, VIII, and XIV)

Claxton has failed to state a claim for breach of contract. She alleges that the Bank "breached its duties by failing to properly secure insurance for [her] property in an arms-length, good faith transaction, from an insurer that was not insolvent for a

7

reasonable price that properly covered [her] property." (D.I. 43 at 9.) Those contentions are not adequately supported by factual allegations, and they seek to impose a duty on the Bank that simply does not exist. Although it owed certain obligations to Claxton, those did not include purchasing an insurance policy that fully covered the value of her property.

"Courts in the Virgin Islands have historically recognized four elements underlying a claim for breach of contract: (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Watson v. LPP Mortgage, Ltd.*, 2019 WL 123878, at *3 n.4 (D.V.I. Jan. 7, 2019) (quoting *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 620 (2017)). The duty of good faith and fair dealing "applies to the performance of a contract[.]" *Id.* at *3 n.4.

Claxton was required by the mortgage agreement to maintain insurance for the mortgaged property. If she did not do so, the agreement allowed the Bank to obtain coverage and elect an insurance provider of its own choosing, to protect its security interest in the property. (D.I. 41-1 § 6.3.) A comparable mortgage term was at issue in *Ebner v. Bank of Nova Scotia*, 2019 WL 404969, at *1 (D.V.I. Jan. 31, 2019). There, the court held that, if a mortgage lender exercises its right to obtain insurance coverage, its only duty is to pay insurance premiums on time. *Id.* at *6-*7. As has also been observed, however, lenders have no duty to obtain coverage of a particular value, because the purpose of such an insurance arrangement is to allow the mortgage lender to protect its own interest, not to protect the borrower's interest. *See Morris v. Wells Fargo Bank N.A.*, 2012 WL 3929805, at *4 (W.D. Pa. Sept. 7, 2012) ("[T]he mortgage[] … properly is

8

interpreted to give W.F. Bank the authority to determine the necessary amount of flood insurance, ... [a]s a result, there can be no claims that are premised on a breach of the mortgage[.]"). Thus, by purchasing coverage that did not fully protect the value of the home, the Bank did not breach any duty owed to Claxton.

Claxton's additional arguments against dismissal of her breach of contract claims are conclusory at best. She argues, among other things, that the Bank was negligent in its duties, overcharged her for premiums while taking kickbacks from the insurance provider, and misrepresented the insurance policy. (D.I. 43 at 8-9.) As framed in the Complaint, "the premiums [charged to her] were not the actual amount that the [Bank] paid [to the insurance provider], because a substantial portion of the premiums were refunded through various kickbacks and/or unwarranted commissions." (D.I. 36 ¶ 7.) Similarly, she challenges the legitimacy of the home appraisal, stating the adjuster undervalued the damage. (*Id.* ¶ 22.) She attributes that undervaluation to the Bank, stating that it was obligated to investigate the validity of the insurer's appraisal. (*Id.* ¶ 9.) She speculates that the Bank "deliberately misinterpreted policy provisions in [her] insurance contract for the nefarious purpose of reducing coverage[.]" (*Id.* ¶ 18.) Finally, she states that the Bank neglected its duties by selecting an insolvent insurer. (*Id.* ¶¶ 26-27.) The Complaint provides no details explaining or supporting any of those statements. Although I must accept as true all factual assertions at the motion to dismiss stage, I am equally obligated to "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d

9

675, 681 (3d Cir. 2012). Claxton's allegations are just that. There is nothing beyond her conclusory denunciations.

Because she fails to make out plausible claims for breach of contract (Count II) and breach of the mortgage agreement (Count XIV), her claim for breach of covenant of good faith and fair dealing (Count VIII) must also be dismissed. Where there is no duty, there can be "no breach of ... a duty of good faith and fair dealing." *Watson*, 2019 WL 123878, at *3 n.4.

## V. Breach of Fiduciary Duty (Count VII)

Claxton has also failed to state a claim for breach of fiduciary duty. She alleges that the Bank misappropriated and misused her funds. (D.I. 36 ¶¶ 65-69.) The Complaint, however, fails to state any facts that might render such an allegation plausible, and any fiduciary duty that the Bank might have owed Claxton was not breached.

A claim for breach of fiduciary duty must begin by establishing a fiduciary relationship. *Watts v. Blake-Coleman*, No. 2011-61, 2012 WL 1080323, at *4 (D.V.I. Mar. 29, 2012). A fiduciary relationship exists where one of the parties is under a duty to act "for the benefit of another upon matters within the scope of the relation." *Roebuck v. V.I. Hous. Auth. & Gov't of the V.I.*, 60 V.I. 137, 147 (Super. Ct. 2014). "Virgin Islands courts have been cautious in finding the existence of a fiduciary relationship even as between a bank and one of its customers." *Watts*, 2012 WL 1080323, at *5.

Once more, I follow the court's holding in *Ebner*. The Bank owed Claxton, at most, "a duty of care with respect to the handling of [her] funds including the duty to pay

10

insurance premiums in a timely manner as they became due." *Ebner*, 2019 WL 404969, at \*6. That is precisely what the Bank did. Any allegation that it misused Claxton's funds is without the support of plausibly alleged facts. Again, it is merely a matter of conclusory denunciation.

## VI. The Tying and RESPA Claims (Counts VI and IX)

Claxton has also failed to state a claim based either on tying under the BHCA, 23 U.S.C. § 1972, or on RESPA, 12 U.S.C. § 2607. Claxton alleges first that she was required to accept the terms of the mortgage agreement on a "take it or leave it basis[,]" which included the Bank's force-placed insurance rights. (D.I. 36 ¶ 63.) I will dismiss that tying claim because the facts in the Complaint disprove the alleged tying arrangement. "[T]he essential characteristic of an invalid tying arrangement" is that the defendant, through its market power, forced the plaintiff "into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 34-35 (2006) (quoting *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984)) (construing tying doctrine under federal antitrust law); *see also Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 659 (9th Cir. 1988) ("[T]he purpose and effect of the BHCA are similar to those of the antitrust laws, and have been construed similarly[.]"). That "essential characteristic" is not present here because the Bank only purchased insurance *after* Claxton declined to do so herself. She was certainly not forced to accept the Bank's chosen insurance.

11

Those facts do not offend the BHCA, which "prohibit[s] anti-competitive practices by banks which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire." *Bank of Nova Scotia v. Roy*, No. 2010-29, 2013 WL 684452, at *11 (D.V.I. Feb. 25, 2013). Requiring mortgage protection "is well within the scope of the traditional-banking-practices exception to section 1972[,]" *id.* at *12, and the Bank's ability to select insurance once Claxton chose not to was eminently reasonable as a means of protecting its security interest. Its actions thus do not violate the BHCA. Claxton even acknowledges that one requirement of a tying claim is that there be "an actual tying arrangement[,]" and she does not dispute that she was permitted to purchase her own insurance. (D.I. 43 at 14.)

She alleges further that the Bank "violated RESPA by charging premiums that are unfairly and egregiously costly[,]" while "receiving kickbacks for the procurement of such insurance policies." (D.I. 36 ¶ 80.) Claxton bases her claim on RESPA's proscription against "any fee, kickback, or thing of value pursuant to any agreement … involving a federally related mortgage loan[.]" 12 U.S.C. § 2607(a) (2018). She makes the repeated and unsupported allegation that the Bank "took premiums from Plaintiff to pay for the insurance in order to collect kickbacks/commissions for the insurance policy[.]" (D.I. 43 at 12; *see* D.I. 36 ¶¶ 7, 10, 80.) But mere repetition of the elements of the RESPA claim – and particularly of the statute's requirement that the defendant receive a kickback or other thing of value – does not establish the grounds for a cause of action, nor does it save Claxton's claim from dismissal. The Complaint does not

plausibly allege any facts in support of the charge that the Bank accepted kickbacks or otherwise extracted illegal premiums, and so Claxton's RESPA claim fails.

### VII. Misrepresentation, Estoppel, Negligent Misrepresentation, Fraud, Unjust Enrichment, Tortious Interference with a Business Relationship, Conversion of Chattels or Personal Property, and Intentional or Negligent Infliction of Emotional Distress (Counts I, III, IV, V, X, XI, XII, XIII)

Claxton raises numerous claims sounding in common law tort and contract principles. Most of them, the Bank rightly says, arise from allegations of "fraud, reliance, or intentional torts." (D.I. 41 at 17.) But the Complaint does not support any of those claims with facts that might render them plausible. And, to the extent fraud is implicated, Claxton does not point to any statement by the Bank that was false or misleading, such as would meet the heightened pleading standard for fraud. *See Frederico*, 507 F.3d at 200 (requiring that, for fraud, the plaintiff plead "the date, time and place").

Claxton argues that the Bank's briefing was not specific enough to warrant the dismissal of any of her tort claims. (D.I. 43 at 16.) But the problems with specificity begin with her Complaint. Each of Claxton's tort claims depend on conclusory allegations, which cannot survive the Bank's motion dismiss. First, numerous of Claxton's state law claims depend on her allegation that the Bank made false or misleading statements or omissions. For instance, Count I, misrepresentation, and Count IV, negligent misrepresentation, each "requires an express representation which is false or misleading at the time it is made." *See Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 568 (D.V.I. 2004). Count III, estoppel, depends on the victim's