**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **LORETTA S. BELARDO, ANGELA TUITT-** | ) | |
| **SMITH, BERNARD A. SMITH, YVETTE** | ) | |
| **ROSS-EDWARDS, DARYL RICHARDS,** | ) | |
| **AVON CANNONIER, ANASTASIA M.** | ) | |
| **DOWARD, EVERTON BRADSHAW,** | ) | |
| **PAMELA GREENIDGE, RODELIQUE** | ) | |
| **WILLIAMS-BRADSHAW, and** | ) | |
| **WINSTON GREENIDGE, on behalf of** | ) | |
| **themselves and all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2018-0008** |
| | ) | |
| **BANK OF NOVA SCOTIA and SCOTIABANK** | ) | |
| **DE PUERTO RICO, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————————— | ) | |

**Attorneys:**
**Charles Jacob Gower, Esq.**
**Harry Richard Yelton, Esq.**
**Korey A. Nelson, Esq.**
New Orleans, LA
**Marina Leonard, Esq.**
**Vincent A. Colianni, II, Esq.**
St. Croix, U.S.V.I.
    *For Plaintiffs*

**Carol Ann Rich, Esq.**
St. Thomas, U.S.V.I.
    *For Defendants*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

    THIS MATTER comes before the Court on Defendants Bank of Nova Scotia and

Scotiabank de Puerto Rico, Inc.'s ("Defendants") "Motion to Dismiss Second Amended

Complaint" (Dkt. No. 53); Defendants' Memorandum in Support thereof (Dkt. No. 54); Plaintiffs'

Opposition thereto (Dkt. No. 55); and Defendants' Reply (Dkt. No. 58). For the reasons discussed

below, the Court will grant in part and deny in part Defendants' Motion to Dismiss.

## I.    BACKGROUND

Plaintiffs initiated this action in March 2018 by filing a Class Action Complaint in this

Court against Defendant Bank of Nova Scotia ("BNS"). (Dkt. No. 1). BNS moved to dismiss the

initial Complaint for lack of subject matter jurisdiction and failure to state a claim. (Dkt. No. 3).

Plaintiffs then filed their First Amended Class Action Complaint (Dkt. No. 5), and BNS renewed

its Motion to Dismiss (Dkt. No. 9). Before the Court decided the Motion to Dismiss on the merits,

Plaintiffs moved for leave to file a Second Amended Complaint. (Dkt. No. 42). After the Court

granted leave to amend (Dkt. No. 44), Plaintiffs filed the Second Amended Class Action Complaint

("SAC")—the operative Complaint. (Dkt. No. 45). The SAC amends the Complaint to include,

*inter alia*, Scotiabank de Puerto Rico, Inc. ("SBPR") as a Defendant. *Id.* ¶ 1.

Plaintiffs have brought this putative class action on behalf of Virgin Islands homeowners

who have or had mortgages with Defendant BNS serviced by Defendant SBPR. *Id.* Plaintiffs have

asserted a number of claims stemming from an allegation that Defendants charged them for, but

never purchased, lender-placed hazard insurance. *Id.* Plaintiffs contend that, as a result of

Defendants' purported failure to purchase such insurance, Plaintiffs—along with hundreds of other

Virgin Islands homeowners—were left without hazard insurance when Hurricanes Irma and Maria

wreaked havoc on the Territory. *Id.* ¶ 2. The factual allegations in the SAC are as follows.

BNS issues residential home mortgages across the Virgin Islands. *Id.* ¶ 27. BNS and its

borrowers enter into a standard mortgage agreement ("BNS Mortgage Agreement") and all of its

borrowers' agreements contain substantially the same terms and conditions. *Id.* ¶ 28. The BNS

Mortgage Agreement requires borrowers to maintain hazard insurance on the property securing the mortgage. *Id.* ¶ 29. If the borrower does not maintain hazard insurance, the BNS Mortgage Agreement provides that BNS "may obtain insurance coverage, at Lender's option and Borrower's expense." *Id.* ¶ 30. This type of coverage is known as force-placed insurance ("FPI"). *Id.* The BNS Mortgage Agreement permits BNS to collect premiums under this provision only if it uses the premiums to obtain FPI. *Id.* ¶ 31. If the property becomes damaged while insured under FPI, the BNS Mortgage Agreement requires BNS to apply the insurance proceeds to restoration or repair of the property. *Id.* ¶¶ 32-33. If restoration or repair is not economically feasible or BNS' security would be lessened, BNS must apply the insurance proceeds to the sums secured by the mortgage. *Id.*

Plaintiffs allege that, at some point prior to August 1, 2017, BNS began collecting premiums for FPI from Plaintiffs and putative class members. *Id.* ¶ 34. BNS obtained the FPI for the properties through its master insurance policy with the American Security Insurance Company ("ASIC"). *Id.* ¶ 37. However, on August 1, 2017, BNS changed its loan servicer to Defendant SBPR, which resulted in the termination of its master insurance policy with ASIC. *Id.* ¶¶ 38-39. The termination of the ASIC policy left Plaintiffs' and other putative class members' properties without hazard insurance. *Id.* ¶ 40. Despite this lapse in coverage, Defendants continued to charge—or had already charged—Plaintiffs and other class members for FPI. *Id.* ¶ 42.

Disaster soon struck. On September 6, 2017, Hurricane Irma hit the Virgin Islands. *Id.* ¶ 43. Two weeks later, Hurricane Maria did the same. *Id.* The hurricanes combined to cause widespread destruction across the Territory. *Id.*

After the hurricanes, BNS borrowers who had paid premiums for FPI contacted BNS to make claims for the damage their properties suffered during the storms. *Id.* ¶ 44. BNS directed its

borrowers to provide it with damage estimates and informed the borrowers that it would forward the estimates to its insurer. *Id.* ¶ 45. As borrowers began to inquire about their claims, BNS continued to represent that the borrowers were insured under a master policy with FPI, assuring them that their claims were being processed. *Id.* ¶¶ 46, 48, 50-51. Plaintiffs contend that this representation—that borrowers were insured with FPI when the hurricanes hit the Virgin Islands— was false and misleading because the FPI that Defendants had purchased for borrowers had lapsed on August 1, 2017. *Id.* ¶¶ 45-46, 49, 52.

Plaintiffs make several allegations in support of their contention that Defendants had failed to purchase FPI. First, BNS refused to provide borrowers with insurance certificates for the purported coverage, even though they had done so for the expired ASIC policy. *Id.* ¶ 46. Second, on March 19, 2018, Integrand Assurance Company ("Integrand") filed suit against Defendants in the Superior Court of Puerto Rico alleging that Defendants illegally and unilaterally added a portfolio of $67.6 million to their FPI coverage with Integrand in September 2017. *Id.* ¶¶ 53-57. Third, prior to Plaintiffs' initiation of this action, no adjusters had inspected any of Plaintiffs' properties in connection with the damage from the hurricanes. *Id.* ¶ 59. Fourth, when adjusters finally inspected Plaintiffs' properties, BNS did not rely on the adjusters of its FPI insurer, but instead hired its own adjusters. *Id.* ¶ 60. Fifth, the adjusters hired by BNS conducted inspections that did not comport with industry standards for the inspection of residential properties after natural disasters, relying on erroneous assumptions regarding material and labor costs in the Virgin Islands and wildly undervaluing repair costs. *Id.* ¶¶ 61, 62. Sixth, BNS provided its adjusters with its expired ASIC policy rather than a FPI policy that actually covered the damage to Plaintiffs' property. *Id.* ¶ 63. Seventh, as late as fourteen months after Hurricanes Irma and Maria made landfall on the Virgin Islands, most Plaintiffs and class members had still not received sufficient

insurance money to either repair their homes or pay down their mortgages. *Id.* ¶¶ 58, 67. Eighth, after submitting insurance claims to BNS, certain Plaintiffs were directed by BNS to contact insurance carriers—including Marsh Saldana and ASIC—who informed those Plaintiffs that they did not have any FPI coverage. *Id.* ¶¶ 83, 96-97.

Despite Defendants' alleged failure to maintain FPI coverage for Plaintiffs' properties, Plaintiffs assert that Defendants continued to charge Plaintiffs and putative class members premiums for FPI. *Id.* ¶ 68. Further, BNS has not reduced the total loan amount for most Plaintiffs and putative class members. *Id.* Plaintiffs allege that, as a result of Defendants' failure to maintain FPI coverage, borrowers who paid premiums for such coverage have suffered damages, including the cost of repairs to their homes, the loss of use of their homes, payment for mortgages that should have been extinguished, emotional distress, annoyance, and inconvenience. *Id.* ¶ 69.

Based on these allegations, Plaintiffs bring seven counts against both Defendants: Violation of RESPA (Count I); Breach of Contract (Count II); Breach of the Implied Duty of Good Faith & Fair Dealing (Count III); V.I. Consumer Protection Act ("VICPA") (Count IV); Unjust Enrichment (Count V); Conversion (Count VIII); and General Negligence (Count IX). *Id.* ¶¶ 144-177, 190-196. Plaintiffs also bring two counts against Defendant BNS only: Negligent Misrepresentation (Count VI) and Fraudulent Misrepresentation (Count VII). *Id.* ¶¶ 178-189.

Defendants have moved to dismiss the SAC for lack of subject-matter jurisdiction[1] and failure to state a claim upon which relief can be granted. (Dkt. No. 53 at 1). Plaintiffs oppose this motion. (Dkt. No. 55).

---

[1] Defendants' subject matter jurisdiction argument is intertwined with their Rule 12(b)(6) argument, as they contend that (1) the SAC fails to state a plausible claim for relief under RESPA, the only claim arising under federal law and (2) as such, the Court must decline to exercise supplemental jurisdiction over the local law claims. (Dkt. No. 54 at 12-13). The subject matter jurisdiction argument is rejected because Defendants have offered no explanation for why the

## II.    APPLICABLE LEGAL PRINCIPLES

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). As stated in *Connelly v. Lane Construction Corp.*, the Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Mamouzette v. Jerome*, No. CV 13-0117, 2024 WL 2271880, at *2-3 (D.V.I. May 20, 2024) (reviewing the applicable Rule 12(b)(6) analysis).

"When assessing the merits of a Rule 12(b)(6) motion, we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis*., 961 F.3d 203, 208 (3d Cir. 2020). Further the district court must accept "all reasonable inferences that can be drawn from [well-pleaded factual allegations] after construing them in the light most favorable to the nonmovant." *Boseman v. Upper Providence Twp*., 680 Fed. App'x 65, 66 (3d Cir. 2017) (internal citation and quotation omitted).  "To survive

---

Court would lack diversity jurisdiction in the event that the RESPA claim was dismissed. *See* (Dkt. No. 45 ¶ 23) (asserting diversity jurisdiction exists over this action under 28 U.S.C. 1332(d)). Moreover, as discussed in Section III.A, *infra*, Defendants' Rule 12(b)(6) argument as it relates to the RESPA claim lacks merit.

a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" *Nekrilov v. City of Jersey*, 45 F.4th 662, 668 (3d Cir. 2022) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boseman*, 680 Fed. App'x at 67 (internal citation and quotation omitted).

A heightened standard applies to claims alleging fraud or mistake, which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9(b), "the complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("To satisfy [Rule 9(b)], the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."); *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)) ("A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story— that is, the who, what, when, where and how of the events at issue.'"). "But even if falsity is pleaded with the requisite particularity, those factual allegations must still satisfy the plausibility standard, which requires a 'reasonable expectation that discovery will reveal evidence' of the necessary elements of the claim." *City of Warren*, 70 F.4th at 681 (quoting *Twombly*, 550 U.S. at 556).

## III.    DISCUSSION

Defendants seek the dismissal of each of Plaintiffs' nine counts. Defendants assert that false allegations undergird the SAC and that they *did* purchase FPI for Plaintiffs' properties. (Dkt. No. 54 at 6-11). Moreover, Defendants argue that Plaintiffs have failed to state any claims for relief because they rely on conclusory allegations to establish any wrongdoing by Defendants. *Id.* at 11. Plaintiffs oppose Defendants' Motion to Dismiss, asserting that they have included "detailed and specific" allegations regarding Defendants' misconduct and that, accepting these allegations as true, the SAC "undoubtedly" states claims upon which relief can be granted. (Dkt. No. 55 at 2).

As a preliminary matter, the Court finds that it cannot consider a number of exhibits attached to Defendants' Memorandum in support of dismissal. (Dkt. Nos. 54-10, 54-11, 54-12, 54-13, 54-14, 54-15, 54-16, 54-17, 54-18, 54-19, 54-20, 54-21). These exhibits purport to be letters from Defendants to Plaintiffs spanning a number of years, indicating that: (1) certain Plaintiffs were informed that, because of their failure to purchase insurance for their properties, Defendants purchased FPI for their properties and (2) Defendants paid out proceeds from FPI coverage to certain Plaintiffs following Hurricanes Irma and Maria.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The letters attached by Defendants do not fall within any of these categories. Plaintiffs' SAC makes no reference to the letters and Defendants have not offered any explanation as to why the letters would somehow be a matter of public record. Further, Plaintiffs dispute the authenticity of all of the exhibits appended to Defendants' Memorandum. (Dkt. No. 55 at 7) (asserting that "none of [Defendants'] exhibits are authenticated"). In light of Defendants' failure

to identify a basis for the consideration of these exhibits, the Court is precluded from considering the letters in its Rule 12(b)(6) analysis. *See Wagner v. City of Newark*, Civil Action No. 23-731, 2024 U.S. Dist. LEXIS 93188, at *10 (D.N.J. May 24, 2024) (refusing to consider an external document at the motion to dismiss stage where the proponent had failed to identify a basis for its consideration).

In addition to the letters, Defendants have attached a number of other exhibits—comprised of Plaintiffs' mortgage agreements with BNS and a court filing made by Defendants in the Superior Court of San Juan—to its Memorandum requesting dismissal. (Dkt. Nos. 54-1, 54-2, 54-3, 54-4, 54-5, 54-6, 54-7, 54-8, 54-9). The Court will not consider these documents because it has concluded that their consideration would not affect its Rule 12(b)(6) analysis. *See Claxton v. Oriental Bank*, Civil Action No. 19-cv-0069, 2022 U.S. Dist. LEXIS 153027, at *6 (D.V.I. Aug. 25, 2022) (refraining from considering materials appended to a motion to dismiss because the motion could be resolved without reference to these materials); *Ainger v. Great Am. Assurance Co.*, Civil Action No. 2020-0005, 2022 U.S. Dist. LEXIS 171487, at *13 (D.V.I. Sep. 22, 2022) (same).

Having made these determinations, the Court will now address the viability of each of Plaintiffs' claims.

### A.    Violation of RESPA — Count I

In Count I, Plaintiffs claim that Defendants BNS and SBPR violated the Real Estate Settlement Procedures Act ("RESPA"), specifically, 12 U.S.C. § 2605(m). In support of this claim, Plaintiffs allege that Defendants imposed FPI costs on Plaintiffs and class members. *Id.* ¶ 145. However, Plaintiffs allege that, beginning on August 1, 2017, no insurance coverage was obtained

or provided in exchange for these FPI charges. *Id.* ¶¶ 145, 147. As such, Plaintiffs allege that the charges were not bona fide nor reasonable. *Id.* ¶ 147.

Defendants argue that any FPI obtained was obtained for the benefit of Defendant SBPR—not Plaintiffs—leaving it within SBPR's sole discretion of whether to cancel the coverage. (Dkt. No. 54 at 11). Defendants also maintain that SBPR did, in fact, obtain FPI for Plaintiffs' properties, and that Plaintiffs' factual allegations are not sufficient to allow the Court to draw a reasonable inference that FPI was not purchased. *Id.* at 12. Specifically, Defendants argue that there "is nothing in the SAC besides Plaintiffs' speculation and repeated self-serving statements—none of which are based on personal knowledge—to support the core allegation that Defendants failed to procure insurance." (Dkt. No. 58 at 5). Defendants similarly contend that Plaintiffs have not properly alleged that they have suffered any harm, as Plaintiffs' own allegations acknowledge that the claims for losses to Plaintiffs' properties had been adjusted and paid. (Dkt. No. 54 at 12-13). In opposition, Plaintiffs argue that the Court must accept their factual allegations regarding Defendants' failure to purchase insurance as true at this stage in the litigation, and that such a failure to purchase insurance would violate RESPA. (Dkt. No. 55 at 10-11).

"RESPA is a consumer protection statute that regulates the real estate settlement process." *Iaffaldano v. Sun W. Mortg. Co., Inc.*, 768 F. App'x 907, 912 (11th Cir. 2019). To state a RESPA claim, a plaintiff must allege (1) a substantive violation of a provision of Section 2605 and (2) damages that they suffered as a result of the violation. *Farrington v. Freedom Mortg. Corp.*, Civil Action No. 20-4432, 2022 U.S. Dist. LEXIS 197464, at *27-28 (D.N.J. Oct. 31, 2022); *Hill v. DLJ Mortg. Capital, Inc.*, No. 15-CV-3083, 2016 U.S. Dist. LEXIS 138526, at *36 (E.D.N.Y. Sep. 30, 2016). Plaintiffs base their RESPA claim on 12 U.S.C. § 2605(m). This provision requires that "[a]ll charges, apart from charges subject to State regulation as the business of insurance, related

10

to force-placed insurance imposed on the borrower by or through the servicer shall be *bona fide and reasonable*." 12 U.S.C § 2605(m) (emphasis added). "A bona fide and reasonable charge is a charge for a service actually performed that bears a reasonable relationship to the servicer's cost of providing the service, and is not otherwise prohibited by applicable law." *Farrington,* 2022 U.S. Dist. LEXIS 197464, at *27 (quoting 12 C.F.R. 1024.37(2)(h)(2)). It stands to reason then, that a charge for a service *not* actually performed would be unreasonable.

The second prong of a RESPA claim is established when a plaintiff sufficiently alleges "one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605." *Hill*, 2016 U.S. Dist. LEXIS 138526, at *36 (quoting *Kapsis v. American Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 444-45 (E.D.N.Y. 2013)). To establish a pattern or practice of noncompliance, a plaintiff must allege that the defendant "routinely operates in this way [such that it is] a wide-ranging, institutionalized practice." *Farrington,* 2022 U.S. Dist. LEXIS 197464, at *28.

Here, Plaintiffs allege that Defendants charged them for FPI coverage but did not purchase FPI for their properties after August 1, 2017. (Dkt. No. 45 ¶ 42). Plaintiffs have thus alleged that Defendants charged them for a service that Defendants did not "actually perform[]," *Farrington,* 2022 U.S. Dist. LEXIS 197464, at *27, which would render those charges unreasonable under Section 2605(m). Further, Plaintiffs allege that, because of Defendants' failure to purchase the FPI, Plaintiffs "did not receive sufficient insurance money to either repair their homes or pay down their mortgage." (Dkt. No. 45 ¶ 58). Thus, Plaintiffs have identified actual damages that they suffered as a result of Defendants' alleged violation of Section 2605.

Plaintiffs have alleged facts allowing the Court to reasonably infer that (1) Defendants' FPI charges were not bona fide and reasonable and (2) Plaintiffs suffered actual damages as a result of Defendants' alleged failure to purchase FPI. Accordingly, Plaintiffs have stated a plausible RSEPA claim under Section 2605(m), and the Court will deny Defendants' request to dismiss Count I.

**B.     Breach of Contract and Breach of the Implied Duty of Good Faith and Fair Dealing — Counts II and III**

In Counts II and III, Plaintiffs claim that Defendants BNS and SBPR breached their contracts with Plaintiffs and their contractual duty of good faith and fair dealing. In support of these claims, Plaintiffs allege that Defendants agreed to purchase FPI for Plaintiffs' properties in exchange for premiums paid by Plaintiffs. (Dkt. No. 45 ¶¶ 151-52). However, despite paying these premiums, Plaintiffs allege that, beginning on August 1, 2017, Defendants did not purchase FPI for their properties. *Id.* ¶¶ 153-54. Further, Plaintiffs allege that Defendants misled Plaintiffs as to the nature and extent of their insurance coverage, including the status of their claims. *Id.* ¶¶ 159, 161, 163. Plaintiffs similarly allege that BNS refused to ensure that Plaintiffs' claims were timely investigated and failed to timely assess the loss to Plaintiffs' properties. *Id.* ¶ 160. Plaintiffs allege damages as a result of Defendants' purported breach, including cost of repairs to their property, the loss of use of their property, delay damages, and the amount paid in premiums for illusory insurance coverage. *Id.* ¶ 156.

Defendants argue that Plaintiffs have not stated plausible claims for breach of contract or breach of the duty of good faith and fair dealing. (Dkt. No. 54 at 13). Defendants contend that Plaintiffs have no standing to assert breach of contract claims regarding FPI insurance contracts, as Defendant SBPR was the only named insured party. *Id.* As such, Defendants argue that Plaintiffs can only assert contractual claims regarding their mortgages. *Id.* at 14. And, Defendants maintain that SBPR's election to purchase FPI coverage complied with the terms of the mortgages. *Id.* In

12

opposition, Plaintiffs clarify that they have alleged a breach of their mortgage contracts with BNS. (Dkt. No. 55 at 12). Plaintiffs maintain that, pursuant to these mortgage agreements, after Defendants charged Plaintiffs for FPI, they were contractually obligated to purchase FPI for Plaintiffs' properties. *Id.* at 13-14. Thus, when Defendants allegedly failed to purchase FPI, Plaintiffs argue they breached their contractual duties. *Id.* at 13.

"To sufficiently allege a breach of contract claim under Virgin Islands law, the plaintiff must allege four elements: (1) an agreement between the parties; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *O'Reilly Plumbing & Constr., Inc. v. Lionsgate Disaster Relief, LLC*, No. CV 2019-0024, 2022 WL 4547536, at *5 (D.V.I. Sept. 28, 2022); *see also Phillip v. Marsh-Monsanto*, 66 V.I. 612, 620 (V.I. 2017) (outlining the four elements of a breach of contracts claim under Virgin Islands law). As for breach of the implied duty of good faith and fair dealing, this duty "arises by implication through the existence of a contract itself." *Moore v. U.S. Virgin Islands Dep't of Tourism*, No. CV 2014-0081, 2020 WL 5219533, at *18 (D.V.I. Aug. 31, 2020) (quoting *Chapman v. Cornwall*, 58 V.I. 431, 441 (V.I. 2013)). The duty of good faith and fair dealing operates to "limit[] the parties' ability to act unreasonably in contravention of the other party's reasonable expectations." *Chapman*, 58 V.I. at 441. "A successful claim . . . requires proof of acts amounting to fraud or deceit on the part of the [defendant]." *Id.* (quoting *Pennick v. V.I. Behavioral Serv., Inc.*, No. 2006–0060, 2012 WL 593137, at *3 (D.V.I. App. Div. Feb. 22, 2012).

The Court will start its analysis by addressing Plaintiffs' claims for breach of contract and breach of the implied duty of good faith and fair dealing against Defendant BNS. Plaintiffs allege that they, along with putative class members, have mortgage agreements with BNS, (Dkt. No. 45 ¶ 28), satisfying the first requirement for a breach of contract claim. Plaintiffs further allege that

their mortgage agreements "permit[] BNS to collect premiums for lender-placed insurance on its borrowers' properties if, and only if, BNS uses the premiums to obtain insurance coverage for the properties." *Id.* ¶ 31. As alleged by Plaintiffs, this provision would create a duty for BNS to apply any FPI premiums towards the purchase of FPI coverage. However, Plaintiffs allege that Defendants charged them for FPI but did not actually purchase FPI coverage for Plaintiffs' properties after August 1, 2017. *Id.* ¶ 42. As such, Plaintiffs have sufficiently alleged a breach of BNS' contractual duty, satisfying the second and third requirements for a breach of contract claim. Lastly, Plaintiffs have identified damages resulting from this alleged breach, including "the amount paid in premiums for illusory insurance coverage." *Id.* ¶ 156. Accordingly, Plaintiffs have sufficiently pleaded each of the four elements of a breach of contract claim against Defendant BNS.

Moreover, Plaintiffs have alleged that BNS attempted to deceive them into believing they had FPI coverage. *E.g., id.* ¶¶ 46-52 (alleging that BNS, on multiple different occasions, falsely represented to borrowers that the borrowers were insured with FPI and that their insurance claims were being processed even though no such FPI coverage existed). Because Plaintiffs have alleged that BNS attempted to deceive them in connection with its alleged breach of contract, Plaintiffs have plausibly stated a claim for breach of the duty of good faith and fair dealing against BNS.

While Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing survive against Defendant BNS, Plaintiffs have failed to plausibly state either of these claims against Defendant SBPR. Specifically, Plaintiffs have not alleged the existence of a contract between themselves and SBPR. While Plaintiffs included SBPR in their allegations regarding breach of contract and breach of the implied duty of good faith and fair dealing (Dkt. No. 45 ¶¶ 150-166), they have not alleged exactly what contract SBPR has breached. In their Opposition,

14

Plaintiffs explain that they have alleged a breached of their mortgage agreements, (Dkt. No. 55 at 12), but nowhere do Plaintiffs allege that SBPR was a party to their mortgage agreements with BNS. Thus, Plaintiffs have not satisfied the first requirement of a breach of contract claim against SBPR—an agreement between the parties. And, in light of the fact that the implied duty of good faith and fair dealing only arises "through the existence of a contract itself," *Chapman*, 58 V.I. at 441, Plaintiffs have similarly failed to state a plausible claim against SBPR for breach of this duty. *See Clark v. Virgin Islands Hous. Auth.*, 2021 WL 8566762, at *3-4 (V.I. Super. Dec. 23, 2021) (finding that the plaintiff failed to state a claim for breach of contract and for breach of the implied duty of good faith and fair dealing because he failed to plausibly allege the existence of a contract).

For these reasons, the Court will grant Defendants' request to dismiss Counts II and III as to Defendant SBPR, but deny Defendants' request to dismiss those Counts as to Defendant BNS.

### C.     Virgin Islands Consumer Protection Act — Count IV

#### 1.     Applicability of Rule 9(b)

Defendants argue that Rule 9(b) governs the pleading standard for Plaintiffs' VICPA claim. (Dkt. No. 54 at 5). Plaintiffs contest the application of Rule 9(b) to their VICPA claim, maintaining that the statute itself does not require proof that a defendant acted with fraudulent intent. (Dkt. No. 55 at 14 n.71).

"[T]he Third Circuit Court of Appeals has held that 'where the plaintiff grounds [his] claims in allegations of fraud—and the claims thus sound in fraud—the heightened pleading requirements of Rule 9(b) apply.'" *Bonomo v. Nova Fin. Holdings, Inc.*, No. CIV.A. 11-4762, 2012 WL 2196305, at *13 (E.D. Pa. June 15, 2012) (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006)); *see also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3d Cir. 1992), *as amended* (May 27, 1992) (holding that Rule 9(b) applies where "neither fraud

nor mistake is a necessary element" of the cause of action but the claim itself nonetheless is "grounded in fraud"). A claim is said to be "grounded in fraud" or "sound in fraud" when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *see also Garfield v. Shutterfly, Inc.*, 857 F. App'x 71, 79 (3d Cir. 2021) (finding that a complaint sounded in fraud where "the gravamen" of the Complaint was intentional deception by the defendants).

Here, Plaintiffs' VICPA claim is grounded in fraud. Plaintiffs have alleged throughout the SAC that Defendants engaged in a unified course of fraudulent conduct related to their alleged failure to purchase FPI. *E.g.* (Dkt. No. 45 ¶ 42) (alleging that Defendants continued to charge Plaintiffs for FPI even though they failed to purchase FPI); *id.* ¶ 45 (alleging that BNS told borrowers it would forward their damage estimates to its insurer even though BNS had not enrolled the borrowers under an insurance policy); *id.* ¶¶ 46-52 (alleging that BNS, on multiple different occasions, falsely represented to borrowers that the borrowers were insured with FPI and that their insurance claims were being processed even though no such FPI coverage existed); *id.* ¶ 64 (alleging that BNS "has perpetrated a cover-up and charade for more than one year"); *id.* ¶ 65 (alleging that BNS made both false statements and omissions); *id.* ¶ 68 (alleging that, despite Defendants' "egregious failures" in maintaining FPI coverage, they continued to charge Plaintiffs for FPI). Plaintiffs then rely entirely on this fraudulent course of conduct as the basis for their VICPA claim. *See id.* ¶ 169 (emphasis added) ("[Defendants] violated the VICPA by charging Plaintiffs and class members premiums for insurance that did not provide coverage for their homes and by *falsely representing* that Plaintiffs' and class members' properties were insured under BNS' and BNS-PR's lender-placed insurance policy."); *id.* ¶ 171 (emphasis added) ("[Defendants']

16

violations of the VICPA were willful, wanton, *fraudulent* and malicious . . . ."). Accordingly, the heightened pleading standard of Rule 9(b) applies to Plaintiffs' VICPA claim. *Vess*, 317 F.3d at 1103.

Plaintiffs argue that Rule 9(b)'s heightened pleading standard applies only to claims that require them to "prove that a defendant acted with fraudulent intent." (Dkt. No. 55 at 14 n.71). But this is not the case where, as here, a claim "brims with references to defendants' intentional and reckless misrepresentation of material facts." *Shapiro*, 964 F.2d at 288 (applying Rule 9(b) to two causes of action even though it was "clear that neither fraud nor mistake is a necessary element of either statutory cause of action"); *see also Diaz v. FCA US LLC*, No. 21-CV-00906, 2022 WL 4016744, at *21 (D. Del. Sept. 2, 2022) ("[P]laintiffs may subject even non-fraud claims to the heightened pleading standard of Rule 9(b) when they substantiate a cause of action with allegations of the defendant's fraudulent conduct.").

In light of the Court's conclusion that Plaintiffs' VICPA claim is grounded in fraud, this claim is subject to the heighted pleading requirements of Rule 9(b).

### 2. Failure to State a Claim Analysis

Having concluded that Rule 9(b) applies here, the Court now moves to the merits of Defendants' request to dismiss Plaintiffs' VICPA claim. In Count IV, Plaintiffs claim that Defendants BNS and SBPR violated the Virgin Islands Consumer Protection Act. (Dkt. No. 45 ¶¶ 168-69). In support of this claim, Plaintiffs again allege that Defendants charged Plaintiffs for insurance that did not provide coverage for their homes and falsely represented that Plaintiffs' properties were insured. *Id.* ¶ 169. Plaintiffs allege that, as a result of Defendants' purported violation of VICPA, Plaintiffs have suffered compensatory, consequential, and equitable damages. *Id.* ¶ 170.

Defendants argue that Plaintiffs have failed to plead facts that could plausibly give rise to a VICPA claim. (Dkt. No. 54 at 14). Defendants maintain that Plaintiffs' VICPA claim fails because they have alleged no injury, as Plaintiffs have not suggested that the alleged deception about FPI had an impact on their original decision to enter into the mortgage agreement with BNS or influenced their decisions as reasonable and objective consumers. *Id.* at 15-16. Defendants also contend that, in the context of FPI coverage, Plaintiffs are not "consumers" under the meaning of VICPA, as SBPR is the named insurer who purchased the FPI policy for its own interest. *Id.* Defendants also argue that Plaintiffs' VICPA claim is preempted by RESPA. *Id.* at 17.

In opposition, Plaintiffs argue that they have adequately alleged that Defendants engaged in deceptive business practices in the distribution of services and property, satisfying the required elements of a VICPA claim. (Dkt. No. 55 at 14-15). Plaintiffs contend that they have adequately pleaded several injuries related to BNS' allegedly false statements, including their inability to obtain government disaster relief assistance and their continued payment of their mortgages and FPI premiums. *Id.* at 15-16. Further, Plaintiffs argue that BNS' false statements did not have to impact Plaintiffs' decision to enter into the mortgage agreements in order for Plaintiffs to maintain VICPA claims, as the VICPA claims rest on Defendants' conduct *after* Plaintiffs entered into the agreements. *Id.* at 16. Plaintiffs also maintain that they are consumers under VICPA—regardless of whether they have contractual privity with the provider of FPI—because they paid premiums for FPI to Defendants for Plaintiffs' own benefit. *Id.* at 17-18. Lastly, Plaintiffs dispute Defendants' assertion that VICPA is preempted by federal law. *Id.* at 18.

To state a claim under 12A V.I.C. § 304,[2] "a plaintiff must establish the following elements: (1) defendant is a 'person' under [VICPA]; (2) defendant is engaged in unfair methods of competition, unfair, or deceptive trade acts or practices; and (3) [] the unfair method of competition or deceptive trade act or practice occurred in the conduct of any trade or commerce." *Gov't of United States Virgin Islands v. Takata Corp.*, 67 V.I. 316, 396 (V.I. Super. 2017). For the second prong under VICPA, a "deceptive business practice" includes "any false, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind made in connection with the sale, lease, rental, or loan of consumer goods or services, or in the extension of consumer credit or in the collection of consumer debts which has the capacity, tendency or effect of deceiving or misleading consumers." *Id.* at 396 n.4 (quoting 12A V.I.C. § 303(e)).

Plaintiffs have plausibly stated a VICPA claim. Corporations, like Defendants, are "persons" under VICPA, *Takata*, 67 V.I. at 396, thus satisfying the first element. Plaintiffs have alleged that Defendants repeatedly represented to Plaintiffs that their properties had FPI coverage when Defendants had, in fact, failed to purchase FPI coverage. *E.g.,* (Dkt. No. 45 ¶¶ 45-52). Further, Plaintiffs allegations indicate that these allegedly false representations occurred in the conduct of a trade or commerce—specifically, in connection with the collection of consumer debts in the form of residential mortgages. *Id.* ¶ 31, 42 (alleging that Defendants collected FPI premiums pursuant to their mortgage agreements with Plaintiffs). Accordingly, the SAC plausibly satisfies the second and third elements of a VICPA claim.

Moreover, as required by Rule 9(b), Plaintiffs have alleged with particularity the time, place, and contents of the allegedly false representations by Defendants which constitute a

---

[2] Plaintiffs cite to 12A V.I.C. § 331 as the basis for their VICPA claim. (Dkt. No. 45 ¶ 168). Section 331 authorizes a private right of action for "[a]ny person or business that is injured by a deceptive trade practice." 12A V.I.C. § 304 provides the substantive prohibition on deceptive trade practices.

deceptive trade practice. *E.g.,* (Dkt. No. 45 ¶¶ 47-49) (alleging that BNS sent Plaintiffs a letter on January 30, 2018 suggesting their properties had FPI coverage); (Dkt. No. 45 ¶¶ 50-52) (alleging that BNS sent Plaintiffs a letter on February 21, 2018 suggesting their properties had FPI coverage). Plaintiffs further allege, with specificity, false representations made to certain individual class members. *E.g.,* (Dkt. No. 45 ¶¶ 82, 83) (alleging that, in a letter dated November 13, 2017, BNS informed Plaintiffs Angela Tuitt-Smith and Bernard A. Smith that their property was insured through FPI with Marsh Saldana, but that Marsha Saldana told them they were not insured). Plaintiffs have also alleged why each of these statements was false or misleading— namely, that Defendants had not truly purchased the FPI coverage that they claimed to have purchased. Accordingly, Plaintiffs' VICPA claim satisfies the requirements of Rule 9(b) in pleading, with particularity, the falsity of certain of Defendants' statements regarding FPI coverage. *See State Farm Guar. Ins. Co. v. Tri-Cnty. Chiropractic & Rehab. Ctr., P.C.*, No. CV224852, 2023 WL 4362748, at *12 (D.N.J. July 6, 2023) (holding that a claim satisfied the requirements of Rule 9(b) because the plaintiffs pleaded the existence of specific instances of fraudulent conduct, including "what fraud occurred, who was involved in the fraudulent scheme, [and] the period during which [the scheme] occurred . . . .").

Plaintiffs have stated a plausible claim under VICPA arising out of Defendants' allegedly false representations related to FPI coverage and have alleged the existence of those false representations with particularity. Thus, Plaintiffs' VICPA claim satisfies the requirements of both Rule 12(b)(6) and Rule 9(b). Defendants' request to dismiss Count IV will therefore be denied.

### D.    Unjust Enrichment — Count V

In Count V, Plaintiffs claim that Defendants BNS and SBPR were unjustly enriched by Plaintiffs' payment of the FPI premiums. (Dkt. No. 45 ¶ 173). In support of this claim, Plaintiffs

allege that Defendants were enriched by the mortgage payments made by Plaintiffs after Hurricanes Irma and Maria because Plaintiffs' properties did not have FPI coverage for the property damage they sustained in connection with these Hurricanes. *Id.* ¶ 174. Further, Plaintiffs allege that Defendants had knowledge of the benefit they received from the FPI premiums as well as knowledge of their own failure to procure FPI for Plaintiffs' properties effective August 1, 2017. *Id.* ¶ 176.

Defendants argue that Plaintiffs have failed to state a plausible claim for unjust enrichment. (Dkt. No. 54 at 17). Defendants assert that their mortgage agreements prohibit an extension or postponement of mortgage payments in the event of a loss or damage. *Id.* at 18. As such, Defendants maintain that Plaintiffs are contractually barred from asserting unjust enrichment regarding mortgage payments, as they were obligated to make these payments to Defendants. *Id.* In opposition, Plaintiffs argue that they are seeking unjust enrichment in the alternative, which they maintain is appropriate when there is a question regarding the validity of the underlying contract. (Dkt. No. 55 at 19). Here, Plaintiffs argue that a dispute exists as to whether the mortgage agreements speak to this particular situation, warranting pleading in the alternative in the event that the mortgage agreements do not apply. *Id.*

"Unjust enrichment is an equitable quasi-contract cause of action, imposing liability where there is no enforceable contract between the parties but fairness dictates that the plaintiff receive compensation for services provided." *Cacciamani & Rover Corp. v. Banco Popular De Puerto Rico*, 61 V.I. 247, 251 (V.I. 2014) (internal quotations omitted). Unjust enrichment "will ordinarily lie in a case where the defendant 'receive[s] something of value to which he is not entitled and which he should restore' to the plaintiff." *Walters v. Walters*, 60 V.I. 768, 776 (V.I. 2014) (quoting *Maso v. Morales*, 57 V.I. 627, 635 n.9 (V.I. 2012)). Under Virgin Islands law, a plaintiff states a

claim for unjust enrichment by proving "(1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff." *Walters*, 60 V.I. at 779-80.

For Defendant BNS, Plaintiffs have failed to state a claim for unjust enrichment because they have alleged the existence of contracts between themselves and BNS—their mortgage agreements—governing the circumstances under which BNS can purchase FPI. (Dkt. No. 45 ¶¶ 27-33). BNS does not dispute that it entered into mortgage agreements with Plaintiffs and acknowledges that the mortgage agreements governed its collection of FPI premiums. (Dkt. No. 54 at 6). Further, Plaintiffs have alleged no facts that would suggest that their mortgage agreements with BNS are unenforceable. In light of this, the Court finds Plaintiffs' argument—that the mortgage agreements are not applicable to the present situation—to be meritless. Because there is—undisputedly—an enforceable and applicable contract between Plaintiffs and BNS, Plaintiffs' claim for unjust enrichment against BNS fails. See *High Times VI Enters., LLC v. Rahhal*, 74 V.I. 304, 313 (V.I. Super. Ct. 2021) (finding that the plaintiff did not have a claim for unjust enrichment because there was an enforceable contract between the parties); *see also Cacciamani & Rover Corp. v. Banco Popular de P.R.*, 61 V.I. 247, 253 (V.I. 2014) (explaining that the "barred by contract rule" prohibits unjust enrichment claims in the Virgin Islands when there is a contract between the parties).

However, the existence of the mortgage agreements with BNS presents no barrier to Plaintiffs' unjust enrichment claim against Defendant SBPR. As discussed in Section III.B, *supra*, Plaintiffs have failed to identify a contract between themselves and SBPR. Plaintiffs allege that SBPR collected premiums from Plaintiffs for FPI coverage without actually purchasing FPI

coverage (Dkt. No. 45 ¶ 42), enriching themselves at Plaintiffs' expense and satisfying the first two elements of an unjust enrichment claim. Plaintiffs also allege that, as a loan servicer, SBPR was responsible for ensuring that Plaintiffs received FPI coverage in exchange for their premiums. *Id.* ¶¶ 38, 41. From these allegations, the Court can reasonably infer that SBPR knew that they were collecting FPI premiums from Plaintiffs for non-existent insurance coverage, satisfying the third element of an unjust enrichment claim. Lastly, as Plaintiffs have alleged that Defendants' scheme resulted in their properties being uninsured when Hurricanes Irma and Maria hit the Virgin Islands, *id.* ¶ 49, it is plausible that the circumstances are such that equity requires appropriate compensation for Plaintiffs. Accordingly, Plaintiffs have sufficiently pleaded all four elements of an unjust enrichment claim against SBPR.

For these reasons, the Court will grant Defendants' request to dismiss Count V as to Defendant BNS, but deny Defendants' request to dismiss Count V as to Defendant SBPR.

### E. Negligent Misrepresentation and Fraudulent Misrepresentation — Counts VI and VII

In Counts VI and VII, Plaintiffs claim that Defendant BNS is liable for negligent misrepresentation and fraudulent representation. In support of these claims, Plaintiffs cite several examples of purportedly false information provided by BNS to Plaintiffs in BNS' course of business. (Dkt. No. 45 ¶¶ 179-80, 186). This includes: BNS' statement that it would forward estimates to its insurer; BNS' representations that Plaintiffs were insured and that Plaintiffs' claims were being processed; and BNS' failure to disclose the alleged lack of FPI. *Id.* ¶¶ 179, 186. Plaintiffs allege that they relied on these misrepresentations by continuing to make mortgage payments on their properties, by continuing to make FPI premium payments, and by refraining from taking ameliorative action to repair damage to their homes—resulting in pecuniary losses. *Id.* ¶¶ 183-84, 188. Plaintiffs allege that this reliance was justifiable because BNS is in the business

of issuing mortgages and acquiring FPI for its properties. *Id.* ¶ 182. Further, Plaintiffs allege that BNS knew or had reason to know that these misrepresentations were false and that BNS made the representations with the intention of inducing Plaintiffs to act or refrain from acting on them. *Id.* ¶¶ 187-88.

Defendants argue that neither of Plaintiffs' misrepresentation claims are plausible because there is no factual basis to support the claim that Defendants made false representations. (Dkt. No. 54 at 19). In opposition, Plaintiffs argue that they have adequately pleaded, with particularity, the required elements for both claims of misrepresentation. (Dkt. No. 55 at 19). Plaintiffs maintain that Defendants' contention that Plaintiffs' allegations are false remains irrelevant during the Rule 12(b)(6) analysis. *Id.* There is no dispute that Rule 9(b)'s more stringent pleading standards apply to both Counts VI and VII. (Dkt. No. 54 at 5, Dkt. No. 55 at 19).

To sustain a claim for negligent misrepresentation in the Virgin Islands, a plaintiff must plead that: "(1) the defendant made a representation that was false; (2) the defendant should have known that the representation was false; (3) the plaintiff relied on the representation; (4) the plaintiff suffered pecuniary loss due to its justifiable reliance on the representation; and (5) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information contained in the representation." *Weiss v. Maccaferri, Inc.*, No. CV 14-46, 2016 WL 1451530, at *7 (D.V.I. Apr. 12, 2016) (quoting *Hodge v. Nat'l Rural Utilities Coop. Fin. Corp.*, No. 13-0032, 2014 WL 1757229, at *6 (D.V.I. Apr. 28, 2014)); *see also Chestnut v. Goodman*, 59 V.I. 467, 475 (V.I. 2013) (describing five similar elements that support a claim of negligent misrepresentation). As for fraudulent misrepresentation, a plaintiff must plead "(1) a knowing misrepresentation of a material fact, (2) intent by the defendant that the plaintiff would rely on the

false statement, (3) actual reliance, and (4) detriment as a result of that reliance." *Weiss*, 2016 WL 1451530, at *7 (quoting *Hodge*, 2014 WL 1757229, at *6).

Plaintiffs have satisfied the requirements to plead a claim for negligent misrepresentation. First, as previously explained in Section III.C, *supra*, Plaintiffs have plausibly alleged that Defendant BNS falsely represented to them that their properties were covered by FPI during Hurricanes Irma and Maria when there was, in fact, no such coverage. Further, Plaintiffs pleaded the existence of these false representations with particularity, satisfying the requirements of Rule 9(b). Second, Plaintiffs have alleged that BNS, along with SBPR, was responsible for purchasing FPI coverage with the premiums they collected (Dkt. No. 45 ¶ 41), allowing the Court to reasonably infer that BNS should have known the alleged falsity of their representations that Plaintiffs were covered. Third and fourth, Plaintiffs alleged that they did not seek government disaster relief assistance because this relief assistance was not available to those who had not exhausted their insurance coverage and Plaintiffs believed they were covered by FPI. *Id.* ¶ 65. These allegations plausibly indicate that Plaintiffs suffered pecuniary losses as a result of their justifiable reliance on BNS' alleged representations that they were covered by FPI. Fifth, Plaintiffs have alleged the existence of an insurance dispute regarding whether Plaintiffs' properties had FPI coverage during Hurricanes Irma and Maria and that BNS was responsible for purchasing Plaintiffs' FPI coverage, *id.* ¶¶ 41, 58, from which the Court can reasonably infer that, at least according to Plaintiffs' allegations, BNS did not exercise reasonable care when communicating to Plaintiffs that their properties were covered by FPI.

Plaintiffs have also sufficiently alleged a claim of fraudulent misrepresentation against BNS. First, as discussed above, Plaintiffs have plausibly alleged that BNS misrepresented a material fact—the status of Plaintiffs' FPI coverage. Further, Plaintiffs' allegation that BNS was

responsible for purchasing FPI coverage with the premiums they collected (Dkt. No. 45 ¶ 41)—which the Court concluded was sufficient to establish that BNS *should have* known that its alleged misrepresentations regarding Plaintiffs' FPI coverage were false—is similarly sufficient for the Court to infer that BNS *knew* that these representations were false. As such, Plaintiffs have satisfied the first element of their fraudulent misrepresentation claim. Second, Plaintiffs have offered numerous examples of BNS representing that they had FPI coverage and have alleged that BNS "continues" to represent that their properties had FPI coverage. *Id.* ¶ 64. These allegations plausibly indicate that BNS intended for Plaintiffs to rely on BNS' representations regarding FPI coverage. Lastly, as discussed above, Plaintiffs have alleged facts demonstrating an actual, detrimental reliance on BNS' alleged misrepresentations. Accordingly, Plaintiffs have alleged facts to support all four elements of a fraudulent misrepresentation claim.

In light of the fact that Plaintiffs have plausibly stated claims for both negligent and fraudulent misrepresentation against BNS, Defendants' request to dismiss Count VI and Count VII is denied.

### F.    Conversion — Count VIII

In Count VIII, Plaintiffs claim that Defendants BNS and SBPR unlawfully converted Plaintiffs' property. Specifically, Plaintiffs allege that Defendants unlawfully converted Plaintiffs' premium payments for FPI by collecting these premiums without purchasing FPI. (Dkt. No. 45 ¶ 191). Plaintiffs also allege that Defendants unlawfully converted Plaintiffs' mortgage payments by continuing to require Plaintiffs to make these mortgage payments even though the FPI—that Defendants were required to purchase—was supposed to satisfy Plaintiffs' mortgages or repair Plaintiffs' properties. *Id.* ¶ 192.

Defendants argue that Plaintiffs have failed to state a plausible claim for conversion because, pursuant to the parties' mortgage agreements, SBPR was permitted to charge Plaintiffs for FPI coverage. (Dkt. No. 54 at 19). Defendants contend that there are no factual allegations to reasonably support the conclusion that Plaintiffs were charged premiums for nonexistent FPI. *Id.* In opposition, Plaintiffs argue that Defendants intentionally exercised dominion and control over money belonging to Plaintiffs by collecting FPI premiums from Plaintiffs. (Dkt. No. 55 at 20). Plaintiffs maintain that conversion occurred because Defendants did not use those premiums to purchase insurance. *Id.*

Under Virgin Islands law, a conversion claim requires a showing that (1) the defendant intentionally exercised ownership, control or dominion over personal property, (2) the defendant had no right of possession over the property, and (3) the defendant's exercise of ownership seriously interfered with the right of another to control the property such that the defendant must be required to repay the full value of the property to the rightful owner. *Harthman Leasing III, LLLP v. FirstBank Puerto Rico*, No. 3:22-CV-0025, 2023 WL 3020209, at *6 (D.V.I. Apr. 20, 2023) (subsequent history omitted) (outlining definition of conversion under Virgin Islands law); *Isaac v. Crichlow*, 63 V.I. 38, 58-59 (V.I. Super. Ct. 2015) (applying a *Banks* analysis to determine the elements of conversion under Virgin Islands law).

The Court concludes that Plaintiffs' allegations plausibly state a claim for conversion. First, money is "personal property" such that its collection satisfies the first element of conversion. *See Firstbank P.R. v. Webster*, 77 V.I. 291, 301 n.32 (V.I. Super. Ct. 2023) (explaining that a plaintiff can state a conversion claim based on an exercise of control over money). Thus, the first requirement of a conversion claim is satisfied here because, according to Plaintiffs' allegations, Defendants collected premiums from Plaintiffs for FPI coverage. *Id.* ¶ 34. Second, a conversion

claim can succeed if the defendant "misused" the personal property that it collected from the plaintiff, even if the defendant could have collected the property for a lawful purpose. *Cf. Claxton v. Oriental Bank*, Civil Action No. 19-cv-0069, 2022 U.S. Dist. LEXIS 153027, at *16 (D.V.I. Aug. 25, 2022) (finding that the plaintiff had not stated a conversion claim because the plaintiff failed to allege that the defendant "misused" the funds that it collected from her). Plaintiffs have sufficiently alleged that Defendants had no right to possess the premiums because Plaintiffs have alleged that Defendants did not use the premiums to purchase FPI, plausibly indicating that Defendants "misused" the premiums. Third, Plaintiffs' allegations regarding the collection of the premiums plausibly support the conclusion that Defendants' actions constitute such a serious interference with Plaintiffs' right to possess the premiums such that Defendants should be required to return the premium payments to Plaintiffs.

Accordingly, Plaintiffs have alleged facts that plausibly support each of the three elements of a conversion claim. For this reason, the Court will deny Defendants' request to dismiss Count VIII.

### G.    General Negligence — Count IX

In Count IX, Plaintiffs claim that Defendants BNS and SBPR were negligent. In support of this claim, Plaintiffs allege that Defendants' failure to purchase FPI and Defendants' misrepresentations regarding FPI coverage breached their duties owed to Plaintiffs, directly resulting in Plaintiffs suffering damages. (Dkt. No. 45 ¶ 195). Defendants argue that Plaintiffs' negligence claim is not plausible because Defendants did not have a duty to procure FPI, and that even if such a duty existed, there is no factual basis to suggest that Defendants have breached it. (Dkt. No. 54 at 20). In opposition, Plaintiffs argue that, by collecting premiums for FPI, Defendants took on a duty to Plaintiffs of good faith, honesty, and equity. (Dkt. No. 55 at 20). Plaintiffs contend

that Defendants breached this duty by failing to purchase FPI and by refusing to disclose this failure to Plaintiffs. *Id.* at 20-21.

"In the Virgin Islands, '[a] negligence claim requires (1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff.'" *Robinson v. Island Time Watersports (Caribbean) LLC*, No. 3:23-CV-0053, 2024 WL 1211932, at *3 (D.V.I. Mar. 20, 2024) (quoting *Robbins v. Port of \$ale, Inc.*, No. ST-12-CV-90, 2018 WL 5024920, at *4 (V.I. Super. Oct. 10, 2018)); *see also Machado v. Yacht Haven U.S.V.I.*, LLC, 61 V.I. 373, 380 (V.I. 2014) (outlining the four elements of negligence under Virgin Islands law).

Here, Plaintiffs' allegation that Defendants collected premiums from Plaintiffs for FPI coverage without purchasing FPI coverage—all while representing to Plaintiffs that their properties were covered by FPI—plausibly gives rise to the inference that BNS and SBPR breached certain duties owed to Plaintiffs. Moreover, Plaintiffs have identified damages that are plausibly the factual and proximate cause of Defendants' alleged breach, including, as discussed in Section III.E, *supra*, Plaintiffs' inability to access government disaster relief funds. As such, Plaintiffs have stated a plausible claim for negligence and Defendants' request to dismiss Count IX will be denied.

## IV.    CONCLUSION

In view of the foregoing, Defendants' Motion to Dismiss will be granted to the extent that it seeks the dismissal of: (1) Counts II and III against SBPR and (2) Count V against BNS. Defendants' Motion will otherwise be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: October 4, 2024                              _____/s/_____
                                                   WILMA A. LEWIS
                                                   District Judge